## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **XINUOS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-0031** |
| | ) | |
| **INTERNATIONAL BUSINESS MACHINES** | ) | |
| **CORP. & RED HAT, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**APPEARANCES:**

**Gabriel M. Ramsey, Esq.**
**Jacob S. Canter, Esq.**
**Kayvan Ghaffari, Esq.**
**Warrington S. Parker, Esq.**
Crowell & Moring LLP
San Francisco, CA
    *For Plaintiff Xinuos, Inc.,*

**Mark A. Klapow, Esq.**
Crowell & Moring LLP
Washington, D.C.
    *For Plaintiff Xinuos, Inc.,*

**J. Daryl Dodson, Esq.**
Moore, Dodson, and Russel
St. Thomas, U.S.V.I.
    *For Plaintiff Xinuos Inc.,*

**Adam Wolfson, Esq.**
QuinnEmanuel Urquhart & Sullivan LLP
Los Angeles, CA
    *For Defendants International Business Machines Corporation and Red Hat, Inc.,*

**Alexander Rudis, Esq.**
QuinnEmanuel Urquhart & Sullivan LLP
New York, NY
    *For Defendants International Business Machines Corporation and Red Hat, Inc.,*

*Xinuos, Inc. v. International Business Machines Corp. et al.*
Case No. 3:21-cv-0031
Memorandum Opinion
Page 2 of 21

**David A. Nelson, Esq.**
QuinnEmanuel Urquhart & Sullivan LLP
Chicago, IL
        *For Defendants International Business Machines Corporation and Red Hat, Inc.,*

**Debra D. Bernstein, Esq.**
QuinnEmanuel Urquhart & Sullivan LLP
Atlanta, GA
        *For Defendants International Business Machines Corporation and Red Hat, Inc.,*

**Stefan B. Herpel, Esq.**
Dudley Newman Feuerzeig LLLP
St. Croix, U.S.V.I.
        *For Defendants International Business Machines Corporation and Red Hat, Inc.*

<u>**MEMORANDUM OPINION**</u>

**MOLLOY, Chief Judge.**

        **BEFORE THE COURT** is Defendants International Business Machines ("IBM") and Red Hat, Inc.'s ("Red Hat") (Collectively known as "Defendants") Motion for Transfer of venue to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a) (ECF No. 41.) For the reasons stated below, the Court will grant the motion and transfer this case to the Southern District of New York.

**I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        This case involves a dispute between Xinuos, Inc. ("Xinuos") (formerly known as (Unxis, Inc."), IBM, and IBM's subsidiary, Red Hat, all of whom are software companies that develop operating systems for computers. (ECF No. 1 at 4-5.) Xinuos is a corporation organized and existing under the laws of the U.S. Virgin Islands and which has its principal place of business in St. Thomas, U.S. Virgin Islands. (ECF Nos. 1-7 amd 51-1.) Xinuos' predecessor in interest, SCO Group Inc. ("SCO"), was a Delaware Corporation with its principal place of business in Utah. *See* ECF No. 42-3 at 6. IBM is a New York Corporation with a principal place of business in Armonk, New York, and Red Hat is a Delaware Corporation with its principal place of business in Raleigh, North Carolina. (ECF No. 42-1.) In

2019, Red Hat and IBM merged and as a result, Red Hat is now a wholly owned subsidiary of IBM. (ECF No. 42-9.)

On October 23, 1998, The SCO Group, Inc. (Xinuos' predecessor in interest) and IBM entered into a Joint Development Agreement (the "JDA") "to facilitate the development of a new UNIX Operating System." (ECF No. 42-1 at 1 and 51-1.) This project was known as "Project Monterey." *Id.* The IBM team working on Project Monterey was primarily located in Austin Texas, while the SCO team was primarily located in Santa Cruz, California. *Id.*

According to IBM, the IBM employees and former employees most knowledgeable about the negotiations that led to the Project Monterey JDA are: John Kelly who currently resides in New York City Metropolitan area; Haig McNamee, a current resident of New York City; Ron Lauderdale, a resident of Greenwich, Connecticut; Ross Mauri, a resident of Poughkeepsie, New York; and Sharon Dobbs, William Sandve, and Robert LeBlanc, all of whom are residents of Austin Texas. *Id.*

In May of 2001, IBM withdrew from Project Monterey and the project ended. *Id.* Two years later, SCO sued IBM for breaching their licensing agreements and infringing on SCO's UNIX copyrights that had existed prior to the JDA. (ECF No. 42-3.) The Crux of SCO's Complaint alleged that IBM had used Project Monterey as a means of accessing SCO's propriety code and developing IBM's own Linux platform, known as AIX. *Id.* at 3.

Around 2011, SCO entered into chapter 11 bankruptcy. (ECF Nos. 42-5 and 51-1.) During that same time, Xinuos (known as "unXis" at the time) purchased certain assets of SCO, specifically, the copyrighted code at issue in the lawsuit between SCO and IBM. *Id.* However, Xinuos did not file a copyright infringement lawsuit against IBM for eight years.

On October 28, 2018, IBM made an announcement from its headquarters in New York that it planned to acquire Red Hat. (ECF No. 42-8.)

On March 26, 2019, counsel for Xinuos sent a letter to IBM claiming that IBM had engaged in the unauthorized use of Xinuos' copyrighted code by allegedly incorporating Xinuos' code into IBM's AIX and Linux-based operating system products. (ECF No. 42-7 at 2.) At the time of the letter, Xinuos was a Delaware Corporation headquartered in Berkeley,

California. *See* ECF Nos. 42-7 and 1-2. IBM subsequently closed its merger with Red Hat on July 9, 2019. (ECF No. 42-9.)

Before Xinuos ever relocated to the Virgin Islands, the corporation filed their initial Complaint in this Court against Defendants IBM and Red Hat on March 31, 2021. (ECF Nos. 1, 51-1 and 42-10.) Xinuos included seven counts in the Complaint: Count I of the Complaint alleges that IBM has engaged in copyright right infringement in violation of 17 U.S.C. § 101; Count II alleges that the merger of IBM and Red Hat violates section 2 of the Sherman Act (15 U.S.C. §§ 2, 3); Count III claims IBM and Red had violated sections one and three of the Sherman Act (15 U.S.C. §§ 1, 3); Count IV asserts that IBM and Red Hat's conduct violates section 7 of the Sherman Act (15 U.S.C. § 7); Count V alleges that IBM and Red Hat's conduct violates the Virgin Islands Antimonopoly Law (11 V.I. St. [sic] § 1501); Count VI claims IBM engaged in unfair competition; and Count VII claims IBM and Red Hat were unjustly enriched at Xinuos' expense by entering into the merger. (ECF No. 1.)

Following the Complaint, Xinuos relocated to the Virgin Islands on May 21, 2019. (ECF No. 42-10.) Defendants subsequently filed this instant motion to change venue along with a motion to dismiss on June 7, 2021.[1] (ECF Nos. 41 and 43.) Xinuos then filed a response to the motion to change venue on July 28, 2021, to which Defendants filed a reply on August 11, 2021. *See* ECF Nos. 51 and 56.

## II.    LEGAL STANDARD

While it is generally the plaintiff's prerogative to determine amongst the available proper venues where the proceedings shall take place, under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The provision makes clear that section 1404(a) may only be relied upon to transfer to another venue if the plaintiff "had an unqualified right to bring the claim in the transferee forum at the time of the commencement of the action." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d

---

[1] Defendants' motion to change venue and motion to dismiss were both timely as the Court granted the Defendants' motion for extension and extended the initial response deadline to respond to June 7, 2022. (ECF No. 26.)

Cir. 1970). In other words, a transfer under section 1404(a) may only be permitted when venue is proper in the jurisdiction that is ruling on the pending motion to transfer.[2]

If the Court finds that venue is proper in the forum jurisdiction, the Court may use its discretion pursuant to section 1404(a) to determine whether transferring the case to another proper forum would be appropriate. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017). When deciding whether transferring the case from one proper venue to another, the Court must consider "'all relevant factors to determine whether on balance the litigation would more conveniently proceed[,] and the interests of justice be better served[,] by transfer to a different forum.'" *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 n. 5 (3d Cir. 2001) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The Third Circuit has identified the following twelve factors a district court may consider when deciding whether to transfer venue under section 1404(a):

> (1) plaintiff's choice of forum as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6)[] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum);... (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (quotations and citations omitted); *see also In re Amendt*, 169 Fed. Appx. 93, 96 (3d Cir. 2006); *In re: Howmedica Osteonics Corp.*, 867 F.3d at 402 (restating the *Jumara* factors).

It is well established that weighing these factors necessarily requires an "individual, case-by-case consideration of convenience and fairness," and thus, the "district court has

---

[2] If Court deems venue in the transferee court improper, the defendant must instead proceed under 28 U.S.C § 1406 in order to move for a transfer of venue. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) Because the Defendants in this case are not challenging whether venue in this forum is proper, the Court will focus on the requirements of section 1404(a).

broad discretion in deciding a motion for transfer of venue." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 458-59 (E.D. Pa. 2013); *see also In re: Howmedica Osteonics Corp.*, 867 F.3d at 401 (asserting that the balancing of the various private and public interests in a 1404(a) analysis are in the district court's discretion) (citation omitted).

Notwithstanding the Court's broad discretion, a defendant must generally "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" because the Third Circuit has emphasized that "it is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte*, 431 F.2d at 25 (quoting *Ungrund v. Cunningham Bros., Inc.*, 300 F. Supp. 270, 272 (N.D. Ill. 1969); *see also Kressen v. Fed. Ins. Co.*, 122 F. Supp. 2d 582, 589 (D.V.I. 2000) ("Plaintiff's choice of forum will not be disturbed unless the balance of the above factors strongly weighs in favor of transfer.").

However, a plaintiff's choice of forum will carry less weight "where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit." *Tischino v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998); *Benjamin v. Exxon Mobil Corp.*, No. 2008-CV-0106, 2009 WL 959868, at *2 (D.V.I. Apr. 6, 2009).

### III.   DISCUSSION

### A.  The District of the Virgin Islands is a Proper Venue

Before the Court may conduct a section 1404(a) factor analysis, the Court must first determine whether this district is the proper venue for the instant action. *See Kressen*, 122 F. Supp. 2d at 588. Plaintiff asserts that venue is proper in the District of the Virgin Islands under both 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). Under section 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

\*\*\*

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Under section 1400(a), a civil action related to copyrights "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). While section 1400(a) reasonably includes the district where the defendant is domiciled, the courts have also established that section 1400(a) includes "any judicial district in which the corporate defendant in an infringement action would be subject to personal jurisdiction." *Health Grades, Inc. v. Decatur Memorial Hosp.*, 190 Fed. Appx. 586, 588 n. 1 (10th Cir. 2006). Therefore, under both sections 1391(b) and 1400(a), venue is proper as to a corporation as long as the court has personal jurisdiction over the defendant. Defendants IBM and Red Hat are both corporations, and thus, venue is proper in any place where the corporations are subject to personal jurisdiction.

"Personal jurisdiction is the authority of a court to exercise jurisdiction over a party before it." *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 172 (2012) (quoting Black's Law Dictionary 930 (9th ed. 2009)). While there are two types of personal jurisdiction, general and specific, the focus of this analysis will be on the specific variety as there is no evidence suggesting that continuous and systematic contacts sufficient to satisfy the general personal jurisdiction requirements exist in the U.S. Virgin Islands. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, n. 9 (1984) (explaining the difference between general and specific jurisdiction);[3] *See also Pennzoil Prods. Co. v. Colelli & Associate, Inc.*, 149 F.3d 197, 200-01 (3d. Cir. 1998) ("No party in this case contends that there is a basis for general jurisdiction in Pennsylvania—so we are free to consider whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").

---

[3] The Court has general jurisdiction when the plaintiff's claim arises out of the defendants "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 416. Specific jurisdiction exists when the plaintiff's claim "'arises from the defendant's forum related activities.'" *Vetrotex Certainteed Corp. v. Consolidate Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d. Cir. 1990), *cert denied*, 498 U.S. 847 (1990)).

Specific personal jurisdiction exists over a non-resident defendant in the Virgin Islands if there is both (1) a "statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long-Arm Statute, V.I. Code Ann. Tit. 5, § 4903," and (2) the non-resident defendant has "minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process." *Metcalf v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009) (citing *In re Kelvin Manbodh Asbesto Litig. Series*, 47 V.I. 267, 279 (Super. Ct. 2005)).

The Court must first consider the applicability of the Virgin Islands long-arm statute because if the Court finds that the statutory requirement is not satisfied, then the Court need not conduct the due process analysis. *See Pennzoil Products Co.*, 149 F.3d at 203 ("a court must engage in the due process analysis after it concludes that a state's long arm statute extends jurisdiction to the defendant"). The statutory requirement is satisfied here because sections 4903(1) and 4903(2) of the Virgin Islands code states that a Virgin Islands court may exercise personal jurisdiction over anyone who is "transacting business in this territory" or "contracting to supply services or things in this territory." It is undisputed by IBM and Red Hat that "IBM has directed marketing of and/or has sold its AIX for Power, z/OS mainframe, and i midrange server operating systems, and Red Hat has directed marketing of and/or sold its RHEL operating system, to U.S. Virgin Islands entities, including but not limited to multiple agencies of the U.S. Virgin Islands government, and commercial institutions." (ECF No. 1.) These undisputed allegations demonstrate that IBM and Red Hat have either transacted business in the Virgin Islands or contracted to supply services or products in the Virgin Islands, and thus, are subject to the territories' long-arm statute.

Subjecting the Defendants to this Court's personal jurisdiction also satisfies constitutional due process. The defendants have sufficient "minimum contacts" in the forum [jurisdiction] so as not to offend "our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 320 (1945); *see also Burger King Corp. v. Rudewicz*, 471 U.S. 462, 476 (1985) (restating the standard). For Defendants to have minimum contacts, three elements must be satisfied:

> First, the defendant must have "purposefully directed its activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85

L.Ed.2d 528 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154).

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

The Defendants have purposely availed themselves to the forum jurisdiction by directing marketing and selling software to entities in the Virgin Islands and allegedly infringing on copyrighted property that resides in the Virgin Islands. *See* ECF No. 1 at 7; *see also Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (establishing minimum contacts requires a demonstration of "'some act by which the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.'") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Additionally, Xinuos assert that IBM and Red Hat's conduct in the U.S. Virgin Islands gives rise to the claims in its Complaint because Defendants have allegedly engaged in copyright infringement and anticompetitive conduct in the Virgin Islands by selling their software in the territory. *See* ECF No. 1 at 7. Because Defendants do not dispute the existence of minimum contacts, personal jurisdiction over Defendants is constitutional.[4] *See O'Connor*, 496 F.3d at 324 ("The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Burger King*, 471 U.S. at 477). Since the two-prong test for personal jurisdiction is satisfied, the Court may assert personal jurisdiction over the Defendants. Thus, venue is proper in this forum.

Even if the Court lacked personal jurisdiction over IBM and Red Hat, Defendants waived their personal jurisdiction defense by not raising the defense in their motion to

---

[4] At no point in either the motion to transfer venue or the motion to dismiss did Defendants challenge personal jurisdiction let alone that Xinuos' claim of minimum contacts did not comport with traditional notions of substantial justice and fair play. *See generally* ECF Nos. 41 and 43.

transfer venue or their motion to dismiss. *See generally* ECF Nos. 41 and 43; *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F. 3d 98, 105 (3d Cir. 2019) (stating that "the defense of lack of personal jurisdiction can be waived if a defendant fails to raise it in a timely fashion."); *see also* Federal Rule of Civil Procedure 12(h) (providing that a party's failure to challenge personal jurisdiction in certain motions, including a motion asserting improper venue, or in responsive pleadings, effects a waiver of the defense of personal jurisdiction). Because Defendants have waived their personal jurisdiction defense, Defendants would still be subject to this Court's personal jurisdiction even if the statutory or constitutional personal jurisdiction requirements were not met.  As such, the District of the Virgin Islands is a proper venue for this case.

### B.  The Southern District of New York is a Proper Venue

Under section 1404(a) the Court may only consider transfer from one proper venue to *another* proper venue. *See In re: Howmedica Osteonics Corp.*, 867 F.3d at 401 (emphasis added). Thus, this Court must also determine if the Southern District of New York would be a proper venue before the Court may consider transferring the case there. As already noted, venue is appropriate wherever a defendant corporation is subject to general personal jurisdiction. *See* 28 U.S.C. § 1391(c). A corporation will be subject to a court's general personal jurisdiction if the defendant resides or is incorporated in the district. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). IBM's principal place of business is in the Southern District of New York. Therefore, venue is appropriate as to IBM. *See* ECF No. 42-1 at 1 and ECF No. 1 at 6.

New York has general jurisdiction over Red Hat as well because Red Hat is a wholly owned subsidiary of IBM,[5] or Red Hat's affiliations with New York are so "'continuous and

---

[5] If a subsidiary is the alter ego of the parent company, "a court may exercise personal jurisdiction over either the parent or the subsidiary based on the other's connections to the forum." *See Simeone ex rel. Est. Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (citation omitted); *see also Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). As a wholly owned subsidiary of IBM, Red hat meets the requirements to be considered an alter ego of IBM. As such, New York has general jurisdiction.

systematic' as to render them essentially at home in the forum state.[6]'" *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S., at 317). Therefore, given that the Southern District of New York has personal jurisdiction over both corporate defendants in this case, venue is proper in the proposed transferee court as well.

### C. *Jumara* Factors

Similar to the circumstances in *Kressen*, the only relevant factor in favor of preserving the District Court of the Virgin Islands as the forum for Plaintiff's claim is that Plaintiff recently relocated to the Virgin Islands prior to filing the Complaint; however, that fact alone is insufficient to deny Defendants' motion for transfer of venue. *See* 122 F. Supp. 2d at 589-90 ("In sum, the only relevant factor in favor of the Virgin Islands as the forum for Plaintiff's claim, is the fact that Plaintiff now resides in the Virgin Islands. This one fact is not enough to overcome the factors cited by Defendant in support of transfer."). Therefore, as will be explained below, the Court finds that the *Jumara* Factors support transferring this case to the Southern District of New York.

### 1. Plaintiff's Choice of Forum

In a section 1404(a) analysis, the first factor the Court must consider is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. While "it is black letter law that a plaintiff's choice of forum is a paramount consideration in any determination of a transfer request," *Shutte*, 431 F.2d at 25, a "[p]laintiff's preference alone is not controlling." *Benjamin v. Esso Standard Oil Co.,* No. 1:09-CV-17, 2009 WL 2044628, at *2 (D.V.I. July 9, 2009) (citing *Jumelis v. Southern Motors Express Inc.*, 169 F. Supp. 345, 346 (E.D. Pa. 1959)). A plaintiff's choice of forum is "neither dispositive of the transfer analysis nor is it the only factor considered." *AT& T v. MCI Communications Corp.,* 736 F. Supp. 1294, 1306 (D.N.J. 1990). Moreover, Plaintiff's choice of forum is entitled to less deference when the operative facts did not occur within that forum. *See Tischio*, 16 F. Supp. 2d at 521; *Bostic v. AT & T of the Virgin Islands,* No. 1999/191–F/B., 2000 WL 34627712, at * 1 (D.V.I. February

---

[6] Red Hat does regular business in New York including the merger at issue in this case, and also has direct sales in New York. *See Daimler AG*, 571 U.S. 117 at 151 (Sotomayor, J. concurring) (noting factors to consider for general personal jurisdiction are whether defendant had "offices, employees, direct sales, and business operations within the State.")

2, 2000) (citations omitted); *Roberts Metals, Inc. v. Florida Prop. Mktg. Grp., Inc.*, 138 F.R.D. 89, 93 (N.D. Ohio 1991) (the weight given to plaintiff's choice of forum diminished because acts occurred outside the forum but accorded at least some weight because plaintiff was headquartered in Ohio), *aff'd* 22 F.3d 1104 (6th Cir. 1994).

In light of these considerations, the Court must give some weight to Xinuos' choice to have its claims heard in the Virgin Islands; especially since this Court is now Plaintiff's home forum. However, the Court will give less deference to Xinuos' preference given that the operative facts at issue did not occur in the Virgin Islands.

Xinuos asserts that the Xinuos code at issue in this case was developed in California and Texas and IBM's code was developed around the world. (ECF No. 51 at 1.) Xinuos further acknowledges that the alleged misappropriated code was never worked on by anyone residing in the Virgin Islands nor did the IBM-Red Hat merger involve any parties located in the Virgin Islands. (ECF No. 51-1 at 5.) Therefore, the operative facts giving rise to this claim arose somewhere other than the Virgin Islands. Accordingly, the Court will give less weight to Plaintiff's preference to litigate this case in the Virgin Islands.

### 2. Defendants' Choice of Forum

The second factor the Court considers is the defendants' preferred forum. *See Jumara*, 55 F.3d at 879.  Here the Defendants' preferred forum is the Southern District of New York. While the defendants' preferred forum is considered, '"[d]efendant's preference is entitled to considerably less weight than [the] [p]laintiff's."' *Beberman v. U.S. Department of States*, No. 2014-0020, 2016 WL 3014665, at *5 (D.V.I. May 24, 2016); *see also Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018) ("[I]n reality [this factor] does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum."). Because the Defendants' preferred forum is not entitled to meaningful deference, the factor is effectively neutral. *Id.*

### 3. Where the Claim Arose

Determining "whether the claim arose elsewhere" is a factor that carries significant weight in the section 1404(a) analysis. *Jumara*, 55 F.3d at 879. This Court has determined that "only in rare cases is a jurisdiction other than that in which the conduct and injury

occurred more significant" for the purposes of venue. *Perez v. Hyannis Air Serv., Inc.*, No. 1:10-CV-86, 2010 WL 5157135, at *3 (D.V.I. Dec. 1, 2010) (citing *Berry v. American Airlines, Inc.*, No. Civ.1996-0152, 2000 WL 34205757 at *2 (D.V.I. Aug. 28, 2000). Consequently, "a plaintiff's residency is insufficient to establish a "more significant relationship'" that justifies venue in the jurisdiction. *Id.* (quoting *Benjamin v. Eastern Airlines, Inc.*, 18 V.I. 516, 520 (D.V.I. 1981) (*citing Berry*, 2000 WL 34205757 at *2)).

Here, Xinuos' claims incontrovertibly did not "arise" in the U.S. Virgin Islands. None of the culpable conduct is alleged to have happened in the Virgin Islands: (1) all of the relevant software code in question was created on the mainland; (2) Xinuos alleges that IBM, a New York corporation with facilities in Austin, Texas, misappropriated copyright while Xinuos' predecessor in interest resided in Utah and was incorporated in Delaware; (3) IBM and Red Hat's alleged antitrust violations occurred between 2018 and 2019 primarily in New York while Xinuos was a Delaware corporation headquartered in Berkely. (ECF Nos. 42-1, 42-3, 42-7, 42-8, 51, and 1-2.)

Xinuos attempts to avoid this dilemma by arguing that Xinuos is currently suffering injury in the Virgin Islands as a result of IBM and Red Hat's ongoing copyright infringement and antitrust violations given that Xinuos currently resides in the Virgin Islands. This argument; however, cannot survive scrutiny. Xinuos filed the Complaint in this matter on March 31, 2019, but Xinuos did not relocate to the Virgin Islands until May 21, 2019. (ECF Nos. 42-7 at 2). In other words, while located in California, Xinuos tried to allege that it suffered injury here in the Virgin Islands. Coincidently, Xinuos does not once mention in the Complaint when its alleged injuries occurred. Presumably this is because Xinuos recognizes that it would be completely nonsensical for the Court to accept that Xinuos suffered an injury in the Virgin Islands when Plaintiff did not reside here, and no relevant events occurred in the jurisdiction. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) ("events or omissions supporting a claim [must] be 'substantial.'... Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."). In light of these considerations, the Court finds that this factor weighs in favor of transfer.

### 4.   Convenience of the Parties

The next factor for the Court to consider is convenience of the parties, "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. The party convenience factor "ultimately requires the court to determine how much inconvenience each party will suffer should it be forced to litigate in the other party's desired forum as opposed to its own." *Smart Audio Technologies, LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012); *see also Kendricks v. Hertz Corp.*, No. 2005-0164, 2008 WL 3914135, at *4 (D.V.I. Aug. 18, 2008). Here, it appears that neither party would be particularly inconvenienced by litigating in the other's forum. Plaintiff and Defendants are all large well-established computer software corporations represented by large international law firms. Either party would experience essentially the same inconvenience by litigating in the other's preferred forum. Although the Court recognizes that IBM and Red Hat may be larger than Xinuos, and therefore better able to absorb the added cost of litigating in Plaintiff's preferred forum, this fact alone is not significant enough to weigh in favor of maintaining the case in the Virgin Islands. *See Sherwood Med. Co. v. IVAC Med. Sys., Inc.*, 1996 WL 700261, at *3 (D. Del. Nov. 25, 1996) ("The parties are both national companies with sales in the millions of dollars, thereby rendering financial conditions a wash as a factor to be considered in transfer.") Consequently, the Court finds this factor neutral.

### 5.   Convenience of the Witnesses

The next factor for the Court to consider is "the convenience of the witnesses." *Jumara,* 55 F.3d at 879. The Court observes that the "convenience to witnesses weighs heavily in making a decision regarding a motion to transfer venue*." U.S. ex rel. Thomas v. Siemens AG*, No. 1:04-CV-116, 2009 WL 1657429, at *2 (D.V.I. June 12, 2009) (citation and internal quotations omitted); *see also Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("Courts typically regard convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer.") (citations omitted); *Am. Ctr. for Civ. Just. v. Ambush*, 794 F. Supp. 2d 123, 131 (D.D.C. 2011) (explaining that in a § 1404(a) factor analysis "probably the most critical of these factors is the convenience of the witnesses.") (quotations and citations omitted).

While Defendants name several witnesses who reside in New York and will likely be material witnesses for both the copyright claim and the antitrust claims, neither party has identified a single material witness who resides in the Virgin Islands. This Court has repeatedly found that when no key witnesses reside in the forum venue, convenience of the witnesses weighs in favor of transfer. *See Benjamin*, 2009 WL 2044628, at *3; *Siemens AG*, 2009 WL 1657429, at *3 ("Neither Plaintiff Relator nor said Defendants identify any witnesses located in the Virgin Islands. Thus, the Court finds that this factor weighs in favor of transfer."). Additionally, although it appears there are a number of potential key witnesses who primarily reside in Texas, California, and Utah, the Court notes that traveling from these locations to New York is substantially cheaper, faster, and more convenient than traveling to St. Thomas.[7] Therefore, New York is a more convenient venue for all of the likely relevant witnesses not just the ones who reside in and around New York.[8] Therefore, the Court finds that this factor weighs heavily in favor of transferring venue.

### 6. Location of Book and Records

The next consideration is the "location of the books and records." *Jumara,* 55 F.3d at 879. "[T]his factor is often not entitled to much weight, given the combination of the Third Circuit's emphasis on whether the files could be produced in each of the fora at issue and 'recent technological advances.'" *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 758 (D. Del. 2012) (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 207 (D. Del. 1998)); *see also Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. 2009) (where the software code was a key component of each sides case, transferring the venue to the location where the information was stored was not more convenient for anyone given

---

[7] *See infra* note 10.

[8] The Court recognizes that it usually must give consideration to the 100-mile reach of the subpoena power and whether or not the witnesses are employees of a party and their presence can be obtained by that party." *Christensen v. Hyatt Corp.*, No. 1:09-CV-70, 2009 WL 5195772, at *3 (D.V.I. Dec. 21, 2009) (citing *Jackson v. Executive Airlines, Inc.*, 2000-121, 2001 WL 664673, at *4 (D.V.I. June 7, 2001)) (citation omitted). However, such consideration is not relevant in this case as it appears the key witnesses who reside in New York are still current employees of IBM and all other potentially relevant witnesses reside beyond the 100-mile subpoena power of the Southern District of New York. *See Metro. Life Ins. Co. v. Dysart*, No. 2007–116, 2008 WL 5101686, at *5 (D.V.I. Dec. 1, 2008); *see also* WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3851 ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain presence at trial.").

that "electronic information can be accessed conveniently in any number of locations."). Therefore, although much of the relevant records may be located outside of the Virgin Islands, this dispute involves records regarding software technology, copyright infringement, and market analytics—all of which can be easily transferred to any jurisdiction in the country in seconds. Since neither party disputes the ease in which records could be transferred to either venue, this factor is neutral.

### 7. The Enforceability of the Judgment

Next is "the enforceability of the judgment." *Jumara*, 55 F.3d at 879. As a judgment in this Court could be registered in any other district, it is largely immaterial which federal district court issues the judgment. 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."). Thus, because a judgment here is equally enforceable in any other federal district court, this factor is also neutral.

### 8. Practical Considerations that Could Expedite or Simplify Trial

The Court also should consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. Xinuos argues that while some of the witnesses identified are in New York, a vast majority of the IBM developers for Project Monterey reside in Texas. *See* ECF No. 51 at 11. Additionally, Xinuos notes that with the increase in flights from Texas to the Virgin Islands along with the available flights from New York, California, and Utah to St. Thomas, the practical considerations weigh in favor of keeping venue in this Court. *See id.*

However, as Defendants correctly assert, the practical consideration factor is neutral at best. In Xinuos' own brief and exhibits, it acknowledges that many if not all of the key witnesses reside on the mainland and beyond the jurisdiction of this Court. *See* ECF No. 51 and 51-1. Therefore, maintaining the District Court of the Virgin Islands as the venue for this matter would offer no practical benefit given that members of both parties[9] and almost all material witnesses would have to take a flight to St. Thomas to participate in the proceedings. Moreover, it appears that any material non-party witness would be beyond the 100-mile

---

[9] The CEO of Xinuos does not aver to reside in the Virgin Islands (ECF Nos. 51-1, 56.)

subpoena power of this Court. As such, leaving the case in this Court would impose significant logistical and financial burdens on both parties.

Xinuos appears to concede that St. Thomas may not be the most convenient venue for practical purposes. Nevertheless, Xinuos argues that the practicality factor still weighs in favor of denying transfer because this Court is just as inconvenient as the Southern District of New York. Xinuos mischaracterizes the 1404(a) analysis. When a factor neither favors nor disfavors a transfer, the factor is neutral. *See Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 680 (E.D. Pa. 2019) (findings practical considerations in the 1404(a)-analysis neutral); *Intel. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) (finding other 1404(a) factors neutral). However, the practicality factor in this case is not neutral. Instead, this factor weighs in favor of transfer. Traveling to New York City would be significantly more convenient for the witnesses than traveling to St. Thomas. New York City has three airports, all of which are cheaper and faster to fly to from Texas, Utah, and California than Cyril E. King Airport in St. Thomas.[10]   Therefore, the Court finds that the practicality factor weighs in favor of transfer.[11]

### 9.  The Level of Court Congestion in the two fora

---

[10] It is indisputable that flights to the U.S. Virgin Islands are extremely limited as compared to flights to the City of New York and nearby surrounding airports. By way of example, the Court conducted a review of flights to St. Thomas and New York from the three areas of the country the parties allege relevant witnesses reside. The Court found the following:

**Flights to New York**

| Cities | Average Price (Round Trip) | Average Travel Time | Average number of weekly flights |
|---|---|---|---|
| Austin, Texas | $271 | 3hrs 31m | 896 flights |
| Salt Lake City, Utah | $217 | 4hrs 21m | 595 flights |
| San Francisco, California | $358 | 5hrs 11m | 2,570 flights |

**Flights to St. Thomas**

| Cities | Average Price (Round Trip) | Average Travel Time | Average number of weekly flights |
|---|---|---|---|
| Austin, Texas | $563 | 9hrs 19m | 63 flights |
| Salt Lake City, Utah | $385 | 9hs 55m | 21 flights |
| San Francisco, California | $591 | 10hrs | 56 flights |

[11] The Court also notes, that as a result of the catastrophic Category 5 hurricanes of 2017 (Hurricanes Irma and Maria), there is still limited hotel room availability on the island of St. Thomas.

The Court now turns to the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Despite Xinuos' insistence that this factor weighs "heavily" in favor of denying transfer, ECF No. 51 at 12, "docket congestion is not given much weight in a § 1404(a) consideration." *Anderson v. Dow Chemical Co.*, 2007 WL 6027818, at *3 (D.V.I. October 3, 2007) (quoting *IMS Health, Inc. v. Vality Technology Inc.*, 59 F. Supp 2d 454, 471 (E.D. Pa. 1999)(internal quotations omitted); *see also Penda Corp. v. STK, LLC,* 2004 WL 2004439, at *3 (E.D. Pa. Sept. 7, 2004) (collecting cases).

Moreover, the Court is not convinced that any apparent disparity in court congestion between the two venues would be so significant so as to effect whether the case should be transferred. *See Altera Corp.*, 842 F. Supp. 2d at 759-60. Plaintiff attempts to assert that because, on average, judges in the Southern District of New York have more pending cases than judges in this district, the Southern District of New York is more congested than the District of the Virgin Islands. Xinuos' argument is baseless. A simple tally does not provide any insight into the relative congestion of the proposed venues. A raw count of pending cases fails to consider the complexity of the cases and cannot determine whether a pending motion is part of the "congestion" of the court's docket or due to some other unrelated factor.[12] Thus, because Xinuos offers no other evidence to substantiate its argument, the Court will not deviate from its prior decision that the relative congestion of the District of the Virgin Islands and the Southern District of New York does "not favor one venue over the other." *Stanton v. Hyatt Corp.*, 41 V.I. 275, 282-83 (D.V.I. Apr. 29, 1999) ("The 'public interest' factors are neutral and do not favor one venue over the other, nor does the relative congestion of the District of the Virgin Islands and the Southern District of New York"). As such, this factor is neutral.

### 10. The Local Interest in Deciding Local Controversies

The Court is also expected to consider the forum jurisdiction's interest in deciding local controversies. *See Jumara*, 55 F.3d at 879. When considering this factor, "[t]he Court

---

[12] For example, a substantial number of habeas petitions are routinely stayed so that petitioners can exhaust administrative remedies in the state court. Those certainly should not be included in the list of cases contributing to "congestion," yet, those cases remain pending, potentially for years, until the state court remedies are exhausted, and the petitioner is able to proceed in federal court.

must be aware of the local interests implicated by this lawsuit in the respective districts or, more specifically, in the communities in which they sit." *Consolidated Properties, Inc. v. Sherwin-Williams Co.*, No. 2017-13, 2018 WL 4610622, at *6 (D.V.I September 25, 2018) (quoting *Kendricks*, 2008 WL 3914135 at *7). However, when there is no localized interest as stake, the Court should deem this factor neutral.

In copyright and patent litigation, "the local interest factor is typically neutral, "because patent [and copyright] issues do not give rise to a local controversy or implicate local interests." *Altera Corp.*, 842 F. Supp. 2d at 760 (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.,* 537 F. Supp. 2d 635, 643 (D. Del. 2008)); *see also In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"). Xinuos' copyright claim is certainly the type of non-localized claim that should not weigh in favor of either venue. The code was created outside the Virgin Islands, the alleged misappropriation occurred outside the Virgin Islands, and Defendants sell their software around the world. Thus, the citizens of the Virgin Islands have little interest in deciding a case where the only nexus is a plaintiff's current residency in St. Thomas. *See Kressen*, 122 F. Supp. 2d at 590.

Xinuos' antitrust claims also fail to implicate a local interest. Xinuos does not allege that the relevant market is the U.S. Virgin Islands, nor does the company allege that the territory has been uniquely harmed by the merger. Furthermore, there is no suggestion that any negotiations or agreements giving rise to the antitrust claim were made in the Virgin Islands, directly involved parties in the Virgin Islands, or were intended to specifically impact individuals in the Virgin Islands. *Cf. Fin. Tr. Co. v. Citibank N.A.*, 268 F. Supp. 2d 561, 569 (D.V.I. 2003) (noting that the forum was appropriate because defendants contacted plaintiffs about the investment at issue while plaintiffs resided in the Virgin Islands, and "at least one agreement was addressed to the plaintiffs through transmission to the plaintiffs' attorneys in New York, intending that it be sent to the Virgin Islands.").

As such, the Court is not convinced traditional local interests are at stake here. The matter is primarily governed by federal law, it is brought against a large international

corporation, and the matter concerns a product available throughout the world. Consequently, the Court finds this factor neutral.

**11. Familiarity of the two courts with state law and the Public Policies of the fora**

The final two factors courts consider in a section 1404(a) factor analysis are "the public policies of the fora," "and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80. "Factors such as . . . public policies, and the familiarity of the trial judge with the applicable law are neutral when the causes of action at issue arise under federal law." *Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 504 (E.D. Pa. 2019). This case is primarily before the Court based on federal question jurisdiction, specifically, Xinuos' federal copyright and federal antitrust claims. Thus, these two factors are not particularly applicable as both courts are equally capable of applying federal law. While Xinuos does raise several state claims,[13] those claims are both ancillary and subsumed by the federal claims.

For example, Xinous' Virgin Islands Antimonopoly claim does not require specialized knowledge of Virgin Islands law or implicate public policy issues of the fora given that the "Virgin Islands Antimonopoly Law 'evidences the intention that [it] be applied in a manner consistent with the Sherman Act and other federal antitrust claims.'" *Sunny Isle Shopping Ctr., Inc. v. Xtra Super Food Centers, Inc.*, 237 F. Supp. 2d 606, 610 (D.V.I. 2002) (quoting *Sea Air Shuttle Corp. v. Virgin Islands Port Auth.*, 782 F. Supp. 1070, 1077 (D.V.I. 1991); *see also* 11 V.I.C. § 1518 ("When the language of this chapter is the same or similar to the language of a Federal Antitrust Law, the District Court in constructing this chapter shall follow the construction given to the Federal Law by the Federal Courts."). Therefore, because judges in the Southern District of New York are more than capable of applying federal antitrust law, the court would have no issue applying the Virgin Islands Antimonopoly Law as the language is substantially similar to federal antitrust law.

Furthermore, the courts of the Virgin Islands have said that a claim of unfair competition is covered by statute under section 1503 of the Virgin Islands Antimonopoly

---

[13] Count V of the Complaint alleges a violation of Virgin Islands Antimonopoly Law, 11 V.I.C. §§ 1501-1518, and Count VI and VII allege Defendants engaged in unfair competition and received unjust enrichment in violation of Virgin Islands common law. (ECF No. 1.)

Law. Therefore, Xinous' claim of unfair competition would similarly follow the construction given to similar federal antitrust law provisions.

Thus, after consideration of the circumstances, the claims at issue in this case are primarily federal in nature, and therefore, the forum's familiarity with Virgin Islands law and the public policies of the Virgin Islands are irrelevant in this matter. Consequently, both factors are neutral.

### D. CONCLUSION

Although the Court finds venue is proper in this forum, after carefully weighing the *Jumara* factors, the Court finds that the only factor in favor of maintaining the venue in the Virgin Islands is Plaintiff's choice of forum. Consequently, the Court is persuaded that the convenience to the parties and witnesses and the interest of justice weigh overwhelmingly in favor of transfer to New York. Accordingly, Defendants' motion to transfer venue is granted. Therefore, the Court will, pursuant to 28 U.S.C. §1404(a), transfer this case to the United States District Court for the Southern District of New York.

An appropriate Order follows.

**Dated:** November 14, 2022          */s/ Robert A. Molloy*
                                   **ROBERT A. MOLLOY**
                                   **Chief Judge**