**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

XINUOS, INC.,

Plaintiff,

-against-

INTERNATIONAL BUSINESS MACHINES
CORP. and RED HAT, INC.,

Defendants.

Case No. 7:22-cv-09777-CS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

LEGAL STANDARD.............................................................................................................6

ARGUMENT ..........................................................................................................................7

I.  XINUOS LACKS STANDING TO ASSERT ITS PURPORTED PROJECT
    MONTEREY CLAIM. .................................................................................................7

    A.  The APA Is Clear That SCO Did Not Sell, But Rather Expressly Retained,
        All Claims, Rights and Remedies Against IBM. .....................................................8

    B.  SCO's Conduct and Xinuos's Silence Confirm SCO Retained the Right to
        Sue IBM. ................................................................................................................10

    C.  Xinuos's New Litigation Theory Ignores both the APA and the JDA and
        Misreads the Case Law. .........................................................................................13

II. SCO RETAINED AND RELEASED XINUOS'S PURPORTED CLAIM WITH
    BANKRUPTCY COURT APPROVAL.....................................................................19

III. ANY CLAIM RELATED TO PROJECT MONTEREY IS TIME-BARRED. ................21

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Indus. Sys. v. Prime Tech.*,
120 F.3d 351 (2d Cir. 1997)..................................................................................................23

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991)...........................................................................................17, 18

*Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*,
296 F. Supp. 3d 627 (S.D.N.Y. 2017)...................................................................................15

*Am. Stock Exchange, LLC v. Mopex, Inc.*,
215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................................................18

*Ashland, Inc. v. Achiever Business Solutions Inc.*,
No. C2-05-247, 2005 WL 8161380 (S.D. Ohio Dec. 20, 2005).............................................22

*Bardy Diagnostics, Inc. v. Hill-Rom, Inc.*,
2021 WL 2886188 (Del. Ch. July 9, 2021)...........................................................................10

*Bathla v. 913 Mkt., LLC*,
200 A.3d 754 (Del. 2018) ..............................................................................................9, 10

*Bernstein v. TractManager, Inc.*,
953 A.2d 1003 (Del. Ch. 2007).............................................................................................14

*Big East Entmt., Inc. v. Zomba Enters.*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006)...................................................................................16

*Bong v. Alfred S. Campbell Art Co.*,
214 U.S. 236 (1909)..............................................................................................................17

*Breeden v. Kirkpatrick & Lockhart, LLP*,
268 B.R. 704 (S.D.N.Y. 2001)................................................................................................7

*Complex Systems, Inc. v ABN Ambro Bank N.V.*,
979 F. Supp. 2d 456 (S.D.N.Y. 2013)....................................................................................6

*Davis v. Norwalk Econ. Opportunity Now, Inc.*,
534 F. App'x 47 (2d Cir. 2013) ............................................................................................18

*Digital Dynamics Software, Inc. v. Eclipse Gaming Sys., LLC*,
No. 18 C 892, 2018 WL 2463378 (N.D. Ill. June 1, 2018) ....................................................19

*Entous v. Viacom Int'l, Inc.*,
151 F. Supp. 2d 1150 (C.D. Cal. 2001) ...........................................................................15, 22

*Fernandez v. City of New York*,
    No. 1:19-CV-04021 (MKV), 2020 WL 4605238 (S.D.N.Y. Aug. 11, 2020) ........................20

*Gamble v. Tyson*,
    No. 17-CV-06635 (LAK)(SN), 2019 WL 5722129 (S.D.N.Y. Jan. 4, 2019) ..........................7

*GRT, Inc. v. Marathon GTF Tech., Ltd.*,
    No. CIV.A 5571-CS, 2012 WL 2356489 (Del. Ch. June 21, 2012) .......................................13

*Harbor Court Assocs. v. Leo A. Daly Co.*,
    179 F.3d 147 (4th Cir. 1999) ................................................................................................15

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
    780 F.2d 189 (2d Cir. 1985) .................................................................................................17

*In re Capmark Fin. Grp. Inc.*,
    438 B.R. 471 (Bankr. D. Del. 2010) .....................................................................................21

*Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*,
    336 B.R. 87 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462
    (D. Del. Oct. 2, 2006) ...........................................................................................................21

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011) .................................................................................................16

*L'Objet, LLC v. Limited*,
    No. 11 CIV 3856 LBS, 2011 WL 4528297 (S.D.N.Y. Sep. 29, 2011) ...................................15

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018) .....................................................................................................7

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ...................................................................................................7

*Mason v. AmTrust Financial Servs., Inc.*,
    No. 19 Civ. 8364 (DLC), 2020 WL 6365448 (S.D.N.Y. Oct. 29, 2020) ...............................22

*Matthews v. Groove Networks, Inc.*,
    No. CIV.A. 1213-N, 2005 WL 3498423 (Del. Ch. Dec. 8, 2005) ...................................19, 20

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
    390 F. Supp. 3d 461 (S.D.N.Y. 2019) ...................................................................................23

*My Play City, Inc. v. Conduit Ltd.*,
    589 Fed. App'x. 559 (2d Cir. 2014) ......................................................................................15

*NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*,
    No. 1:12-CV-02808-AT, 2013 WL 12098772 (N.D. Ga. Aug. 29, 2013) ........................15, 22

*Newsome v. Brown*,
　　209 Fed. App'x. 11 (2d Cir. 2006)..........................................................................24

*Novellino v. Life Ins. Co. of N. Am.*,
　　216 A.2d 420 (Del. 1966) ..............................................................................10, 13

*Nuance Commc'ns, Inc. v. Int'l Bus. Mach. Corp.*,
　　544 F. Supp. 3d 353 (S.D.N.Y. 2021)..................................................................23

*Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*,
　　615 N.Y.S.2d 160 (App. Div. 1994) .....................................................................14

*Paysys Int'l, Inc. v. Atos SE*,
　　226 F. Supp. 3d 206 (S.D.N.Y. 2016)...................................................................15

*Peekskill Sch. Dist. v. Colonial Sur. Co.*,
　　6 F. Supp. 3d 372 (S.D.N.Y. 2014)......................................................................22

*Pickwick Communications, Inc. v. Weinberg*,
　　No. 91 CIV 1642 (AGS), 1994 WL 620950 (S.D.N.Y. Nov. 8, 1994) ................20

*Pickwick v. Weinberg*,
　　89 F.3d 825 (2d Cir. 1995)....................................................................................20

*Powers v. Ohio*,
　　499 U.S. 400 (1991).................................................................................................7

*Price v. Cushman & Wakefield, Inc.*,
　　808 F. Supp. 2d 670 (S.D.N.Y. 2011).....................................................................6

*Putrelo Const. Co. v. Town of Marcy*,
　　964 N.Y.S.2d 812 (App. Div. 4th Dept. 2013) .....................................................14

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
　　757 F.3d 79 (2d Cir. 2014).......................................................................................7

*Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*,
　　616 A.2d 1192 (Del. 1992) ....................................................................................14

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
　　55 A.3d 330 (Del. 2012) ....................................................................................9, 10

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp*,
　　879 F.3d 1062 (10th Cir. 2018) ..................................................................... passim

*Segovia v. Equities First Holdings, LLC*,
　　No. CIV.A.06C09-149-JRS, 2008 WL 2251218 (Del. Super. Ct. May 30, 2008).................19

*Umbach v. Carrington Inv. Partners (US), LP*,
   851 F.3d 147 (2d Cir. 2017)............................................................................7

*Umbrino v. L.A.R.E Partners Network, Inc.*,
   585 F. Supp. 3d 335 (W.D.N.Y. 2022).........................................................7

*Wechsler v. HSBC Bank USA, N.A.*,
   674 Fed. Appx. 73 (2d Cir. 2017)..................................................................22

**Statutes & Rules**

17 U.S.C. § 205(e) ...........................................................................................17

Copyright Act...................................................................................................22

Fed. R. Civ. P. 56(a) .........................................................................................6

Local Civil Rule 56.1 ........................................................................................2

Defendants International Business Machines Corporation ("IBM") and Red Hat, Inc. ("Red Hat") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for partial summary judgment with respect to the copyright claim asserted by Plaintiff Xinuos, Inc. ("Xinuos" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's copyright claim arises out of Project Monterey, a joint development agreement concerning certain UNIX-like, computer operating systems. Xinuos had nothing to do with Project Monterey, but it claims to have purchased copyrights involved in the project from the bankruptcy estate of The SCO Group, Inc. ("SCO"). Xinuos alleges IBM has infringed those copyrights by using (without permission) source code made available to IBM as part of Project Monterey (the "Monterey Code"). Not so. IBM has had a license to the Monterey Code for more than two decades. But, even if it did not, SCO did not sell any rights it had to sue IBM concerning Project Monterey or the Monterey Code (or anything else). That is plain on the face of the asset purchase agreement (the "APA") pursuant to which Xinuos purports to have acquired rights from SCO. On the contrary, SCO not only retained the right to sue IBM, but also exercised that right openly for nearly a decade after the APA without any objection whatsoever from Xinuos. Xinuos said nothing until SCO requested bankruptcy-court approval to settle its dispute with IBM in 2021, when the bankruptcy court overruled Xinuos's objection and approved a settlement expressly releasing Xinuos's claim (the "Settlement Agreement" or "Settlement"). Xinuos's contention that it can nonetheless relitigate here what IBM and SCO litigated for nearly two decades is contrary to the plain language of both the APA and joint development agreement ("JDA") that governed Project Monterey. What's more, the claim is long time-barred. Partial summary judgment should be entered against Xinuos and in favor of Defendants.

**BACKGROUND**

The factual background of this motion, and the facts pertinent to its resolution, are set out in Defendants' Local Civil Rule 56.1 Statement of Facts in support of the motion, incorporated herein by reference, and can be briefly summarized as follows:[1]

Project Monterey was a joint development project between IBM and The Santa Cruz Operation, Inc.  (¶ 3.)  The purpose of Project Monterey was to develop and market a "family" of UNIX-like operating system products, including (i) a "Monterey/64" version for the then-forthcoming IA-64 Intel processor, (ii) a version to run on IBM's proprietary "Power" processor architecture, and (iii) a version to run on the IA-32 architecture.  (¶ 5.)  The IA-64 architecture had not been commercialized when Project Monterey began but was under development in a separate collaboration between Intel and HP.  (¶ 6.)  Project Monterey was governed by a joint development agreement (the "JDA"), which the parties entered into on October 26, 1998.  (¶ 4.)  Under the JDA, both Santa Cruz and IBM agreed to provide resources and technology to create a compatible family of products, and each party granted the other a license to use code supplied during the project.  (¶ 7.)

Although IBM and Santa Cruz engaged in development activities, Project Monterey encountered substantial challenges.  Among other things, Intel's IA-64 processor (Itanium) was delayed and did not end up shipping until mid-2001.  (¶ 12.)  Once the Intel processor did arrive, it performed poorly and Intel and HP re-positioned Itanium as primarily an evaluation and development platform.  (¶ 13.)  There was a substantial decrease in market interest and confidence in IA-64 and thus the Monterey/64 product under development in Project

---

[1] Fact citations herein are to Defendants' Local Civil Rule 56.1 Statement of Facts in Support of Their Motion for Partial Summary Judgment on Plaintiff's Copyright Claim, and are given here as "¶ __".

Monterey.  (¶ 14.)  In 2000, Santa Cruz announced that it was selling its Server Software and Professional Services divisions and its UNIX-related assets to Caldera Systems, Inc. ("Caldera"). (¶ 15.)  As a result, IBM exercised its right to terminate the project on June 19, 2001.  (¶ 16.)

In March 2003, Caldera commenced litigation against IBM in the U.S. District Court for the District of Utah, alleging claims for breach of contract, copyright infringement, unfair competition, and tortious interference, among others.  (¶ 17.)  Shortly after filing suit against IBM, Caldera changed its name to SCO, suggesting (incorrectly) an affiliation with the better known Santa Cruz Operation Inc., which continued to exist under a different name (Tarantella, Inc.).  (¶ 18.)  A central theory of SCO's case was its allegation that IBM misappropriated SCO's proprietary source code provided by Santa Cruz to IBM during Project Monterey, and incorporated it into core components of IBM's operating systems.  (¶ 19.)  SCO argued that IBM had no right to use the code outside the context of Project Monterey and that IBM's continued use of the code constituted unfair competition.  (¶¶ 20-21.)  SCO sought leave to amend the complaint to allege that the use of the code was copyright infringement.  (¶ 21.)  IBM opposed SCO's motion to amend as untimely (¶ 21), and the district court denied it (¶ 22), but SCO incorporated its copyright allegations into its unfair competition claim, and the parties actively litigated the principal copyright issue, *i.e.*, whether IBM stole the Monterey Code or had a license to it (the very issue that Xinuos seeks to litigate here) (¶¶ 23-24).

SCO and IBM litigated their disputes, including the Monterey issue Xinuos seeks to litigate here (¶ 24), for nearly two decades, during which SCO filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware.  (¶¶ 27, 78.)  The Utah district court rejected a number of SCO's claims, and entered summary judgment in favor of IBM on several of its counterclaims.  (¶¶ 43, 45.)  SCO appealed to the Tenth Circuit (with IBM's consent as

IBM still had pending counterclaims), challenging many of the district court's rulings including its orders (i) entering summary judgment against SCO on its unfair competition claim concerning Project Monterey and (ii) denying leave to challenge the same conduct as copyright infringement.  (¶ 50.)  In January 2018, the Tenth Circuit affirmed the district court's rulings in all respects, except remanded the Project Monterey unfair competition claim for trial.  (¶ 53.)  Before the parties were able to try the case—which was then focused entirely on whether IBM stole code from Project Monterey or obtained a license under it, and on numerous IBM counterclaims—the case settled in 2021.  (¶ 78.)

As part of the settlement, SCO released any and all claims against IBM, including the Project Monterey claims it had been litigating with IBM for the preceding 18 years.  (¶¶ 80-81.)  Although Xinuos had nothing to do with Project Monterey or SCO's litigation with IBM and raised no objection to SCO's asserting Project Monterey claims against IBM, Xinuos objected to the settlement on the grounds it could be understood to preclude Xinuos from relitigating the same issues with IBM.  (¶ 82.)  The bankruptcy court overruled the objection and approved the settlement "in all respects, including, without limitation, the release of the Estates' claims against IBM".  (¶¶ 87, 90.)

Despite SCO's release of IBM with court approval, Xinuos seeks to relitigate the same issues and claims IBM spent nearly two decades litigating and resolved in *SCO v. IBM*.  (*See* ¶¶ 71-77.)  According to Xinuos, it purchased (from SCO's bankruptcy estate) assets that allow it to sue IBM for infringing copyrights in the Monterey Code.  (ECF No. 107 at 2.)  Xinuos takes the view that IBM did not obtain a license to the code during Project Monterey but rather stole the code from Santa Cruz (Compl. ¶¶ 56-58), notwithstanding the fact that the JDA expressly

granted IBM a license to the code (¶ 7), and IBM and Santa Cruz jointly announced that IBM was using the code in 2001 (¶ 11).

However, the Court need not relitigate whether Santa Cruz licensed the code to IBM or IBM stole it, because Xinuos's claim fails out of the gate.  Xinuos lacks standing to assert the claim, because SCO never sold Xinuos the right to sue IBM for copyright infringement concerning Project Monterey.  While SCO sold parts of its UNIX business to Xinuos's predecessor (UnXis, Inc. ("UnXis")) (¶ 2), SCO retained *all* claims against IBM and Red Hat with respect to Project Monterey (and other issues).  (¶¶ 31-34.)  The asset purchase agreement between SCO and UnXis is unequivocal that it excludes "any rights, claims or causes of action related to Novell, Inc., International Business Machines Corporation, Red Hat, Inc. and SUSE Linux GmbH or other similar claims".  (¶ 32.)  SCO continued to sue IBM for nearly a decade after the APA, including on the same copyright issues that Xinuos seeks to assert here. (¶¶ 40-58.)  And Xinuos's argument that it has the right to sue IBM is at odds with both the APA and the JDA.  (*See* Section I below.)

In addition to the fact that Xinuos lacks standing to sue IBM concerning Project Monterey, Xinuos's purported copyright claim fails because it is inconsistent with the bankruptcy court's approval of both the APA and the Settlement.  In 2011, the bankruptcy court approved SCO's sale of assets to Xinuos for $600,000, based on the understanding, expressly embodied in the APA, that SCO was retaining, and Xinuos was not receiving, the Monterey claim that SCO valued at one hundred times that amount.  (¶¶ 35-38.)  Xinuos's claim that SCO had no such claim to release is also at odds with the bankruptcy court's overruling of Xinuos's objection and approval of the settlement.  It cannot be that the court (or anyone else) intended or understood Xinuos to acquire SCO's Monterey claims, purportedly worth hundreds of millions

5

of dollars, in view of the mere fraction of that amount paid as consideration paid under the APA. Nor can it be that the bankruptcy court approved SCO granting a release it did not have the power to give.  Xinuos's claim, therefore, is inconsistent with the bankruptcy court's orders. (*See* Section II below.)

Finally, even if SCO had not retained any claim against IBM for copyright infringement and then released the claim, it is time-barred.  Under the JDA, IBM and Santa Cruz agreed that "[a]ny legal or other action related to a breach of [the] Agreement must be commenced no later than two (2) years from the date of the breach in a court sited the State of New York." (¶ 8.) With Santa Cruz's (the licensor's) knowledge, IBM incorporated the Monterey Code into IBM products beginning, at the latest, in May 2001.  (¶¶ 10-11.)  Thus, the limitations period for asserting a claim that IBM breached the JDA and therefore lacked a license to the Monterey Code expired no later than May 2003, and Xinuos's purported copyright claim has therefore been time-barred for nearly two decades.  (*See* Section III below.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a).  "'To defeat summary judgment, a party may not rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment' as '[m]ere conclusory allegations or denials . . . cannot themselves create a genuine issue of material fact where none would otherwise exist.'"  *Complex Systems, Inc. v ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 467 (S.D.N.Y. 2013) (alteration in original) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)).  On the contrary, plaintiff "must present affirmative and specific evidence showing that there is a genuine issue for trial."  *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011).

Here, IBM's arguments in favor of summary judgment depend on contracts that are unambiguous, and whose clear terms demonstrate that Xinuos's copyright claim fails as a matter of law. *See, e.g.*, *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) ("The matter of whether the contract is ambiguous is a question of law for the court."); *Gamble v. Tyson*, No. 17-CV-06635 (LAK)(SN), 2019 WL 5722129, at *7 (S.D.N.Y. Jan. 4, 2019) (finding that "the proper interpretation of an unambiguous contract is a question of law for the Court", and dismissing copyright claim on an unambiguous release and license); *Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 157 (2d Cir. 2017) ("Under Delaware law, where contract language is clear and unambiguous, the meaning of the contract is a matter of law for the court.").

## ARGUMENT

## I.   XINUOS LACKS STANDING TO ASSERT ITS PURPORTED PROJECT MONTEREY CLAIM.

It is well-established that a party cannot assert a right or claim it does not have. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("[A] litigant . . . cannot rest a claim to relief on the legal rights or interests of third-parties."); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) ("[O]ne person cannot litigate injuries on behalf of another."); *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 83-87 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (recognizing that a "plaintiff generally must assert his own legal rights and interests"); *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (same); *Umbrino v. L.A.R.E Partners Network, Inc.*, 585 F. Supp. 3d 335, 357 (W.D.N.Y. 2022) (same).

While Xinuos may have acquired certain rights from SCO pursuant to a 2011 Asset Purchase Agreement (the "APA"), which is governed by Delaware law (¶ 30), it did not acquire

the right to pursue a Project Monterey copyright claim against IBM.  That is plain on the face of

the APA and confirmed by SCO's conduct and Xinuos's silence.  In arguing otherwise, Xinuos

ignores the plain language of both the APA and the JDA and misunderstands the caselaw.

> **A.    The APA Is Clear That SCO Did Not Sell, But Rather Expressly Retained, All Claims, Rights and Remedies Against IBM.**

As stated, Xinuos had nothing to do with Project Monterey and was not a party to the

JDA, which was terminated long before Xinuos came into existence.  Xinuos claims to have

acquired the right to assert a copyright claim concerning the Monterey Code under the APA.

However, the APA is clear that SCO did not sell, but rather expressly retained, *all* claims, rights

and remedies against IBM.

The "Sale and Purchase of Acquired Assets" provision of the APA grants Xinuos rights

to the "Acquired Assets", but expressly carves out from the transfer the "Excluded Assets":

> Pursuant to the Sale Order, and subject to the terms and conditions of this Agreement, Seller shall sell, transfer, assign and convey to Buyer, free and clear of any and all Encumbrances and Retained Obligations, and Buyer shall, as of the Closing Date, acquire and purchase, free and clear of any and all Encumbrances and Retained Obligations, all of Seller's right, title and interest in and to all of the assets of the Business, *except for the Excluded Assets set forth in Schedule 2.1(c) hereof* (the "Acquired Assets").

(¶ 31.)

In subsections further defining the scope of the Acquired Assets, the APA provides that

the Acquired Assets do not include any rights, claims or causes of action related to IBM,

RedHat, and SUSE, and reinforces that Excluded Assets are "not part of the transactions

contemplated hereunder":

> All rights and claims of Seller against any third parties, directly arising from or directly related to the Acquired Assets (which, for the avoidance of doubt, *shall not include* any rights and claims of Seller against any third parties, directly arising from or directly related to the Excluded Assets, any rights and claims by Seller against Buyer relating to this Agreement or any agreement entered into pursuant hereto, or *any rights, claims or causes of action related to Novell, Inc., International*

> ***Business Machines Corporation, Red Hat, Inc. and SUSE Linux GmbH or
> other similar claims);***

(¶ 32)

> Notwithstanding anything to the contrary contained in Section 2.1(a) or elsewhere in
> this Agreement, the assets of Seller set forth in Schedule 2.1(c) (collectively, the
> "Excluded Assets") are ***not part of the transactions contemplated hereunder***,
> are ***excluded from the Acquired Assets and shall remain the property of Seller after
> the Closing***.

(¶ 33).

In Schedule 2.1(c) attached to the APA, the Excluded Assets are defined as including,

among other things, any rights and remedies against IBM and Red Hat and relating to claims

arising from Unix or UnixWare intellectual property:

> all of Seller's claims, causes of action and other legal or equitable rights and remedies
> (A) against Buyer with respect to the transactions contemplated by this Agreement
> and (B) ***relating to all rights and interests in all litigation claims pending or that
> may be asserted in the future, against International Business
> Machines Corporation, Novell, Inc., SUSE Linux GmbH or others***, and (C) ***relating
> to every claim of any nature whatsoever, known or unknown that has been or may
> be asserted against RedHat, Inc. or others relating to or arising from all licensing,
> covenant not to sue rights, releases or other claims relating to any allegations
> that Linux violates SCO's Unix or UnixWare intellectual property, contract or
> other rights***;

(¶ 34.)  As plainly stated, all Unix-related claims against IBM and Red Hat were expressly

carved out of the sale transaction and thus remained an asset of the bankruptcy estate.  (*Id.*)

Where, as here, the language of an agreement is clear and unambiguous—in this case

showing that SCO retained any and all rights to sue IBM—it is determinative as to the parties'

intent and justifies the entry of summary judgment.  *See, e.g.*, *Bathla v. 913 Mkt., LLC*, 200 A.3d

754, 759-60 (Del. 2018) (affirming summary judgment based on plain language of purchase

agreement, observing that "[i]n interpreting a contract, the Court must give priority to the parties'

intentions as reflected in the four corners of the agreement", interpreting "clear and unambiguous

terms according to their ordinary meaning" (internal quotations omitted)); *Riverbend Cmty., LLC*

*v. Green Stone Eng'g, LLC*, 55 A.3d 330, 337 (Del. 2012) (affirming grant of summary judgment based on unambiguous language of release between the parties); *Novellino v. Life Ins. Co. of N. Am.*, 216 A.2d 420, 423 (Del. 1966) (affirming summary judgment where contract language was plain on its face).

**B.    SCO's Conduct and Xinuos's Silence Confirm SCO Retained the Right to Sue IBM.**

While extrinsic evidence cannot be used to "vary or contradict the terms of" the APA, *Bathla*, 200 A.3d at 760 (internal alterations and quotation omitted), under Delaware law (which governs the APA), in construing an unambiguous contract, courts can consider contextual factors such as "'[t]he basic business relationship between [the] parties' so that [they] can 'give sensible life' to the agreement", so long as "the background facts" do not "alter the language chosen by the parties".  *Bardy Diagnostics, Inc. v. Hill-Rom, Inc.*, 2021 WL 2886188, at *18, 21 (Del. Ch. July 9, 2021) (quoting *Chi. Bridge & Iron Co. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926–27 (Del. 2017); *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 820 (Del. 2018)).

That SCO retained the right to sue IBM is confirmed by the fact that it openly did so for nearly a decade after the APA.  For example:

- In November and December 2011, SCO urged the Utah district court to reopen the case (which had been administratively closed due to SCO's bankruptcy) so that it could proceed with litigating its claims that "IBM misappropriated SCO's valuable UNIX technologies in connection with . . . Project Monterey."  (¶ 41.)

- In June 2013, the Utah district court reopened the case, and in August 2013, SCO explained that the "core allegation" of its "remaining claims" included that "[i]n connection with Project Monterey, IBM misappropriated into its AIX for Power operating system UnixWare source code that SCO provided to IBM subject to strict restrictions that IBM did not follow."  (¶¶ 42, 44.)

- In March 2015, the parties agreed that SCO's claim that IBM had misappropriated the Monterey Code was "ripe for adjudication".  (¶ 47.)

- In July 2015, SCO argued it was undisputed that "IBM obtained SCO's SVr4 code through [Project Monterey] and used it in its non-Intel AIX for Power product".  (¶ 48.)

- In February 2016, the Utah district court granted summary judgment in favor of IBM on SCO's misappropriation claim.  (¶ 49.)

- SCO appealed that decision, as well as the court's earlier decision that SCO could not amend its complaint to add a claim for copyright infringement relating to the Monterey Code, to the Tenth Circuit.  (¶ 50; *SCO Grp., Inc. v. Int'l Bus. Machs. Corp*, 879 F.3d 1062, 1068 (10th Cir. 2018).)

- In November 2016, SCO told the Tenth Circuit that "IBM exploited its relationship with SCO through Project Monterey to gain access to and misappropriate SCO's proprietary code, to displace SCO from the marketplace.  As part of its plot, IBM cobbled together, in its own words, a non-working 'sham release' of Project Monterey; used SCO's UnixWare code obtained through that sham release in IBM's own AIX for Power operating system; and then released SCO's UnixWare code into the hands of open-source Linux developers."  (¶ 51.)

- In December 2017, SCO, in response to IBM's petition for rehearing on appeal, argued that "IBM pretended to proceed with Project Monterey to induce SCO to contribute its proprietary UNIX ('SVr4') source code to the project, whereupon IBM took SCO's code and used it in its own AIX for Power operating system."  (¶ 52.)

- In January 2018, the 10th Circuit affirmed all but one of the district court's rulings, and remanded only SCO's Project Monterey claim for trial.  (¶ 53.)

- In February 2018, the parties informed the district court that SCO's remaining unfair competition claim, which the Tenth Circuit held presented a fact question, "concern[ed] the Project Monterey relationship" and alleged that "IBM misappropriated . . . source code that SCO provided to IBM subject to strict restrictions that IBM ignored".  (¶ 57.)

- In September 2018 and April 2019, the trustee of SCO's bankruptcy estate advised the bankruptcy court that SCO's "unfair competition claim, which presented a fact question requiring trial in light of the Tenth Circuit's opinion", remained pending before the Utah district court.  (¶ 58.)

Not only did SCO openly litigate the very Monterey issues Xinuos seeks to relitigate here, but also the litigation garnered the attention of the media, which reported on both the case generally and SCO's Monterey claim in particular.  For example, in 2013 Groklaw published an article regarding the effect of the *SCO v. Novell* decision on SCO's claims in *SCO v. IBM*, which noted that the court had "ordered SCO to file a list of which of its claims, if any, it believes survived SCO's massive loss to Novell".  (¶ 60.)  In 2016, LinkedIn published an article that commented on *SCO v. IBM*, and discussed Project Monterey and SCO's business.  (¶ 61.)  That same year, Tech Insider published a detailed timeline regarding "Project Monterey", which listed

events such as Santa Cruz and IBM entering into the JDA, the "align[ment]" of AIX and UnixWare, and the termination of Project Monterey.  (¶ 62.)  And in 2017, several technology-focused news outlets reported on the Tenth Circuit proceedings.  Ars Technica reported that the Tenth Circuit "partially ruled in favor of the SCO Group", which "argued that IBM essentially stole, or misappropriated, its proprietary code" (¶ 63), and Computing reported that the Tenth Circuit "sent the case back for [SCO] to try again" on its misappropriation claim (¶ 64).

Xinuos never raised any objection to SCO's continued assertion of its Project Monterey claim against IBM.  (¶ 65.)  Xinuos said nothing when the Utah litigation re-opened.  (¶ 66.)  It said nothing when SCO and IBM supplemented their briefing on IBM's motion for summary judgment relating to Project Monterey.  (*Id.*)  It said nothing when SCO argued on appeal that it should have been able to assert its claim for copyright infringement relating to Project Monterey.  (*Id.*)  And it said nothing as SCO and IBM publicly prepared for trial as to whether IBM stole the code it used as part of Project Monterey Code or obtained a license to it from Santa Cruz—the very thing Xinuos puts at issue here.  (*Id.*)  In fact, Xinuos said nothing about having any rights relating to Project Monterey until *after* the Tenth Circuit ruled that the Utah district court properly precluded SCO from asserting its copyright infringement claim as untimely.  (¶ 67.)

On the contrary, Xinuos publicly proclaimed that it did not have any interest in litigation. In an article published less than three months after the APA was executed, Xinuos specifically acknowledged and disclaimed the possibility of further litigation, stating:  "[Xinuos] *has no intention to pursue any litigation related to the SCO Group assets acquired by the company*. . . . There is no place for litigation in our vision or plan."  (¶ 39.)

Courts routinely grant summary judgment where, as here, the parties' conduct confirms the plain language of an operative contract.  *See Novellino*, 216 A.2d at 423 (affirming summary judgment where contract language was plain on its face after looking at conduct of the parties subsequent to date of contact at issue).  *See also GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. CIV.A 5571-CS, 2012 WL 2356489, at *2 (Del. Ch. June 21, 2012) ("The extrinsic evidence does not raise genuine issues of material fact; rather, the undisputed documentary record of the parties' negotiations shows that GRT demanded and did not receive the right it now seeks to have me read into a contract whose plain words do not support its existence. . . . Summary judgment . . . is therefore required.").

### C.     Xinuos's New Litigation Theory Ignores both the APA and the JDA and Misreads the Case Law.

Despite the plain language of the APA (reserving to SCO any claims against IBM) and SCO's and Xinuos's conduct in line with that language, Xinuos contends that it can still sue IBM for use of the Monterey Code because Xinuos acquired copyrights covering the code from SCO, and "it is legally impossible to transfer the ownership of a copyright while retaining the right to sue for the future infringement of that copyright."  (ECF No. 107 at 2.)  Xinuos is wrong.  Its argument ignores both the plain language of the APA and the JDA and the relevant caselaw.

### 1.     Xinuos Seeks To Rewrite the APA.

To begin, the APA includes none of the limitations Xinuos would have the Court read into it.  According to Xinuos, when the APA says that SCO is not transferring "*any* rights, claims, or causes of action related to . . . [IBM]" (¶ 32 (emphasis added)), what it actually means to say is that SCO *is* transferring to Xinuos the right to sue IBM for claims relating to the post-1995 copyrights.  The APA says no such thing, as illustrated above, and there is no basis for reading such a limitation into the APA.  Under Delaware law, courts will not "rewrite a contract

13

by reading words into it that the parties clearly did not intend". *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1010 (Del. Ch. 2007); *see also Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("Absent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it."). "Any" means "any"; it does not mean "any claims except those Xinuos now wishes to assert".

### 2. Xinuos Disregards the JDA.

Moreover, Xinuos's argument—that SCO could not have retained the copyright claim at issue because it concerns then-future infringements that had not accrued and now belong to the current copyright holder by operation of law—disregards the plain language of the JDA, which governs Project Monterey and the disputed code. SCO could (and did) retain Xinuos's alleged claim against IBM, because any claim of infringement by IBM of the Monterey Code, including a claim for sales post-dating the APA, accrued a decade before the APA, and thus could be retained by SCO, and withheld from transfer to Xinuos, even if SCO transferred the related copyrights to Xinuos. Xinuos's claim that it was impossible for SCO to retain the claim at issue is mistaken.

Under New York law, which governed the JDA (¶ 8), the parties to a contract may agree upon an accrual method that differs from otherwise applicable accrual provisions. *See, e.g.*, *Putrelo Const. Co. v. Town of Marcy*, 964 N.Y.S.2d 812, 813 (App. Div. 4th Dept. 2013); *see also Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*, 615 N.Y.S.2d 160, 161 (App. Div. 1994) (ruling that a contract provision prescribing "when the period of limitations will commence . . . will govern in the absence of duress, fraud or misrepresentation" (internal

citations omitted)).[2]  That is exactly what IBM and Santa agreed to do in connection with Project

Monterey and the code at issue.  The JDA expressly provides that any claim "related to a breach"

of the JDA had to be brought in a New York court within two years of the alleged breach.  (¶ 8.)

There is no question Xinuos's copyright claim "relates to" an alleged breach of the JDA.[3]

It is undisputed that IBM obtained the disputed code as part of Project Monterey.  (¶ 48.)  The

only dispute is whether IBM obtained a license to the code or used it without permission.

(¶¶ 19-20, 44.)  IBM contends it obtained a license to the code, and if that is true, then Xinuos's

infringement claim necessarily fails, as a person with a license does not infringe.  *See Paysys*

*Int'l, Inc. v. Atos SE*, 226 F. Supp. 3d 206, 223 (S.D.N.Y. 2016) ("It is well-established that a

licensor generally may not sue its licensee for copyright infringement.").  Although Xinuos had

nothing to do with Project Monterey, it contends IBM used the code without permission ("stole"

it, in Xinuos's colorful telling).  (Compl. ¶¶ 2, 56-58.)  If that is true (and it's not), then IBM

used the code in breach of the JDA, as use without a license would breach the JDA.  *Al*

*Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 296 F. Supp. 3d 627, 641 (S.D.N.Y. 2017)

("A licensee's use of a license cannot give rise to a claim of copyright infringement, but a

---

[2] *See also Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147, 151 (4th Cir. 1999) (enforcing accrual provision and noting that "the only courts to consider a contractual accrual date provision have all enforced it") (collecting cases); *NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*, No. 1:12-CV-02808-AT, 2013 WL 12098772, *10 (N.D. Ga. Aug. 29, 2013); *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1156 (C.D. Cal. 2001).

[3] Courts have interpreted "related to" language (like that in Section 22.3 of the JDA) to incorporate non-contractual claims.  *See, e.g.*, *L'Objet, LLC v. Limited*, No. 11 CIV 3856 LBS, 2011 WL 4528297, *2 (S.D.N.Y. Sep. 29, 2011) (finding copyright claim fell within a clause stipulating that "[a]ny controversy or claim arising out of or related to" the contract must be arbitrated); *see also My Play City, Inc. v. Conduit Ltd.*, 589 Fed. App'x. 559, 562-63 (2d Cir. 2014) ("The infringing conduct was a continuation of the very conduct that [the defendant] undertook in performing the contract.  Claims based on that conduct therefore ***relate to*** the agreements." (emphasis added)).

licensee's use of copyright rights *beyond* the scope of its license can." (emphasis in original)).

Thus, Xinuos's purported copyright claim necessarily relates to an alleged breach of the JDA.[4]

     As a result, the claim is subject to the accrual and limitations provisions in Section 22.3

of the JDA and accrued when IBM took the code and used it in its products in 2001, with IBM's

release of AIX version 5L 5.0.  Hence, the claim belonged to SCO at the time it entered into the

APA in 2011 and fell squarely within the definition of an "Excluded Asset" under the APA.  (*See*

*supra* Section I.A.)  Accordingly, there is no reason SCO could not do what it did:  retain any

claim that IBM stole code as part of Project Monterey and has used it without authorization.

That claim turns on a discrete issue—whether IBM obtained a license from Santa Cruz as part of

Project Monterey—not on allegations of recent infringement.  *See, e.g.*, *Kwan v. Schlein*, 634

F.3d 224, 228-230 (2d Cir. 2011) (explaining copyright claims that turn on ownership "accrue[]

only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the

existence of a right'", regardless of whether the action is portrayed as one strictly for recent

infringement).[5]

---

[4] The Tenth Circuit reached the same conclusion concerning the Project Monterey claim asserted by SCO in *SCO v. IBM*.  IBM argued that SCO's misappropriation claim was untimely under the JDA's contractual limitations period.  *SCO Grp.*, 879 F.3d at 1079.  SCO argued that the two-year limitations period should not apply to its claim because it was not a breach of contract claim.  *Id.*  The Tenth Circuit rejected SCO's argument, holding that "[e]ven as a separate tort action, ***there is no question that SCO's misappropriation claim is 'related to' a breach of the JDA because the JDA expressly deals with the use of SCO's licensed materials***", and applied the JDA's two-year limitations period.  *Id.* (emphasis added).  The same is true here—the JDA's accrual and limitations provisions apply to Xinuos's copyright claim, as it depends entirely on whether the JDA licensed IBM to use the allegedly infringing code.

[5] *See also Big East Entmt., Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788, 795 (S.D.N.Y. 2006) ("Although plaintiff attempts to portray its claim as one for an ongoing infringement, it has been established that the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue. . . . Plaintiff's claim accrued when it knew or had reason to know of the injury upon which the claim is premised." (internal quotations and citations omitted)).

Moreover, in arguing otherwise, Xinuos ignores the fact that it stands (at best) in the shoes of SCO, which stands (at best) in the shoes of Santa Cruz.  Even if Xinous could have acquired from SCO rights that SCO expressly retained under the APA, Xinuos could not have acquired what neither SCO nor Santa Cruz could give:  the right to enforce against IBM intellectual property to which it was licensed under the JDA.  *See, e.g.*, *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 194 (2d Cir. 1985) (citing *Bong v. Alfred S. Campbell Art Co.*, 214 U.S. 236, 245-47 (1909)) ("[A]n assignee of a copyright can take no more than his assignor has to give.").  Any copyrights Xinuos obtained from SCO are subject to IBM's license rights under the JDA.  *See* 17 U.S.C. § 205(e) (providing that a nonexclusive license, whether recorded or not, prevails over a conflicting transfer of copyright ownership if the license is evidenced by a written instrument signed by owner of the rights licensed, such as the JDA).  Whether IBM had a license was litigated and released in *SCO v. IBM*.  Thus, it is Xinuos's theory of the case, not IBM's defense, that depends on a legal impossibility.

### 3.      Xinuos Misunderstands the Caselaw.

In its pre-motion letter, Xinuos cites *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991), in support of its claim that SCO could not have "transfer[red] the ownership of a copyright while retaining the right to sue for the future infringement of that copyright."  (ECF No. 107 at 2.)  However, *ABKCO Music* does not support Xinuos's position. *ABKCO Music* merely concerned whether the assignment of a copyright entitled the assignee to sue for infringement on claims that accrued pre-assignments, and the court held that such right to sue must be expressly assigned or it is otherwise retained by the assignor.  *ABKCO Music*, 944 F.2d at 980.  The court expressly stated that "if the accrued causes of action are not expressly included in the assignment . . .  the assignor [of a copyright] retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the

assignment." *Id.*  That is precisely the case here—SCO's claims against IBM relating to Project Monterey accrued in their entirety no later than 2001, when IBM allegedly released AIX 5L 5.0 with the supposedly infringing code, and therefore were never transferred to Xinuos under the APA.  As explained above, both SCO's and Xinuos's conduct following the APA is consistent with SCO's lawful retention of its claims against IBM concerning Project Monterey.  SCO continued to litigate its Project Monterey claims for nearly a decade following the APA, ultimately releasing them in 2021.  (¶¶ 40-58, 78.)  And Xinuos never raised any objection to SCO's continued assertion of those claims.  (¶¶ 65-66.)

What's more, that the APA did not transfer to Xinuos the right to assert its copyright claim against IBM is consistent with the prohibition against claim-splitting.  It is well-settled that "a party must bring in one action all legal theories arising out of the same transaction or series of transactions".  *Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002). Whether the prohibition against claim-splitting in fact precludes a later-filed suit "does not require that all aspects of the new and prior suits be identical but rather, focuses on whether the two claims arise from the same 'nucleus of operative fact'".  *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (barring later-filed suit brought under distinct statute where "both actions share a common inquiry: whether [employer] had a legitimate and lawful reason for taking [] adverse employment actions" and therefore "form a convenient trial unit" (internal quotations omitted)).

As explained above, Xinuos's copyright claim is plainly based on the same "nucleus of operative fact" as *SCO v. IBM*, given that both sets of allegations turn not on whether IBM in fact used the Monterey Code in its AIX operating system, but rather on whether IBM was authorized to do so under the JDA by the time the project was terminated in 2001.  (*See* ¶¶ 44,

68, 71-72.)  Accordingly, Xinuos's contention that claims turning on the issue of whether IBM breached the JDA may be asserted in separate actions decades apart is untenable.  Courts have barred later-filed copyright infringement claims where, as here, the alleged infringement "arise[s] from the same operative facts" as an earlier-filed suit concerning "the parties' licensing agreements and their compliance therewith".  *Digital Dynamics Software, Inc. v. Eclipse Gaming Sys.*, LLC, No. 18 C 892, 2018 WL 2463378, at *5, *7 (N.D. Ill. June 1, 2018).

## II.   SCO RETAINED AND RELEASED XINUOS'S PURPORTED CLAIM WITH BANKRUPTCY COURT APPROVAL.

In addition to the fact that Xinuos lacks standing to sue IBM concerning Project Monterey, Xinuos's purported copyright claim fails, because it is inconsistent with the bankruptcy court's approval of both the APA and the Settlement.

In March 2011, the bankruptcy court approved the APA following a careful review of its terms, including what SCO was selling and retaining, and what Xinous was receiving and paying, $600,000.  (¶¶ 35-38.)  The court held that the "terms and conditions of the Asset Purchase Agreement . . . constitute reasonably equivalent value and fair consideration for the Acquired Assets".  (¶ 37.)  That conclusion would have made no sense if SCO had transferred its claims against IBM to Xinous.  SCO valued its claims against IBM in the many hundreds of millions of dollars (¶ 25), and by all accounts so too does Xinuos (¶ 70).  It could not possibly have been "fair and reasonable" for SCO to transfer claims to Xinous for $600,000 that SCO valued at more than one-hundred times that amount.  *Cf. Segovia v. Equities First Holdings, LLC*, No. CIV.A.06C09-149-JRS, 2008 WL 2251218, at *15 (Del. Super. Ct. May 30, 2008) (granting motion for summary judgment where opposing party's proffered interpretation "tortures the express language of the loan documents and simply makes no sense from the perspective of a reasonable person viewing the transaction as a whole"); *Matthews v. Groove*

19

*Networks, Inc.*, No. CIV.A. 1213-N, 2005 WL 3498423, at *2 (Del. Ch. Dec. 8, 2005) (granting

defendants' motion for summary judgment after finding plaintiff's reading of certificate of

incorporation was "nonsensical").

Similarly, in October 2021, the court approved SCO's settlement of its litigation with

IBM, including a release of all claims "which [SCO] at any time had, now ha[s], or hereafter can

or may have against IBM . . . concerning, related to, arising out of, or arising from" the *SCO v.*

*IBM* litigation, "IBM's relationship with [SCO]" and "Project Monterey".[6]  (¶¶ 80, 87.)  The

bankruptcy court did not determine exactly what claims Xinuos might or might not be able to

assert against IBM in litigation pending in another court (then the Virgin Islands) (¶ 88) and

noted that both Xinous and IBM reserved their rights (¶ 89).  However, the court also considered

Xinuos's objection that SCO did not have the power to release Xinuos's claim, as well as SCO's

and IBM's contentions that it did, and rejected Xinous' objection.  (¶¶ 82-92.)  The court did not

rule the claim was actually reserved; on the contrary, it approved a settlement that held the

opposite.  (¶ 89.)  The court expressly stated that it approved of the Settlement Agreement "in all

respects, including, without limitation, the release of the Estate's claims against IBM, and vice

versa, as set forth in paragraphs 3.1 and 3.2 of the Settlement Agreement", and declined

Xinuos's proposal to strike that language.  (¶¶ 90-91.)  Moreover, it rejected Xinuos's proposal

to include language stating that "neither [the] Order, nor the Settlement Agreement, resolves,

releases any party, or otherwise impacts any claim, cause of action, or right of Xinuos that the

---

[6] It is a "well established rule" that courts "bar claims precluded by the plain language of [a] release".  *Pickwick Communications, Inc. v. Weinberg*, No. 91 CIV 1642 (AGS), 1994 WL 620950, *12 (S.D.N.Y. Nov. 8, 1994) *aff'd sub nom. Pickwick v. Weinberg*, 89 F.3d 825 (2d Cir. 1995) (citations omitted); *Fernandez v. City of New York*, No. 1:19-CV-04021 (MKV), 2020 WL 4605238, *5-6 (S.D.N.Y. Aug. 11, 2020) (granting summary judgment prior to discovery where plaintiff could not provide an adequate reason for the court not to enforce unambiguous release).

Trustee or IBM does not possess the right to impact" and that "[the] Order does not bar Xinuos from asserting, in *Xinuos, Inc. v. International Business Machines Corporation, et al.*, Case No. 3:21-cv-00031, that IBM infringed and continues to infringe copyrights that it purchased from the Debtors".  (¶¶ 92.)

In so doing, the court necessarily found that SCO owned the claim to be released; if it did not have the right to release the claim, then it would have been in breach of its representations under the Settlement Agreement that it was "duly authorized to enter" the agreement (¶ 79).  It cannot be that the bankruptcy court approved as "fair and equitable" a settlement that SCO had no right to enter into and that would have allowed continued litigation of the supposedly-released claim.  *See, e.g.*, *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (a court may approve a settlement in bankruptcy that it deems "fair and equitable" after "appris[ing] itself of all facts necessary to form an intelligent and objective opinion of . . . factors relevant to a full and fair assessment of the claims" (cleaned up)); *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006) (approving settlement that was "fair, equitable, and in the best interest of the bankruptcy estate").

## III.    ANY CLAIM RELATED TO PROJECT MONTEREY IS TIME-BARRED.

Finally, even if SCO had not retained all of its claims concerning Project Monterey and forever released them in a court-approved settlement, any claim related to Project Monterey is time-barred.

The JDA provides that any claim "related to a breach of [the JDA] must be commenced no later than two (2) years from the date of the breach in a court sited in the State of New

York".[7]  (¶ 8.)  As stated (Section I.C), Xinuos's copyright claim is necessarily related to an

alleged breach of the JDA, as IBM could not possibly infringe Xinuos's purported copyrights if

it obtained a perpetual and irrevocable license to them under the JDA.  Again, the Tenth Circuit

reached essentially the same conclusion with respect to SCO's misappropriation claim against

IBM, which involved the same issue presented here (*i.e.*, whether IBM breached the JDA by the

using the Code or obtained a license to it under the JDA).  *SCO Grp.*, 879 F.3d at 1079-80 (10th

Cir. 2018) (holding SCO's misappropriation claim "related to" a breach of the JDA and thus

SCO's claim accrued in May 2001 when IBM first released AIX for Power version 5L 5.0,

which contained the allegedly stolen code).

      Xinuos's copyright claim is therefore subject to the JDA's two-year limitations period,

and accrued as soon as IBM used the Project Monterey Code in its products in alleged violation

of the JDA (*see supra* Section I.C).  If IBM's use of the code was a breach of the JDA as alleged,

then IBM was in breach of the JDA in May 2001, when IBM allegedly released AIX 5L 5.0 with

the supposedly infringing code.  (¶ 11.)  As a result, the two-year limitations period expired no

more than two years later in May 2003.  That is about 18 years before Xinuos commenced this

---

[7] Courts have consistently held that agreed-upon limitations periods are enforceable.  *See, e.g.*,
*Wechsler v. HSBC Bank USA, N.A.*, 674 Fed. Appx. 73, 75 (2d Cir. 2017) ("In general, New
York Courts have found one-year limitations clauses to be reasonable." (citation omitted));
*Mason v. AmTrust Financial Servs., Inc.*, No. 19 Civ. 8364 (DLC), 2020 WL 6365448, *2-4
(S.D.N.Y. Oct. 29, 2020) (granting summary judgment where claim was not brought within
contractually-stipulated six-month limitations period); *Peekskill Sch. Dist. v. Colonial Sur. Co.*, 6
F. Supp. 3d 372, 376 (S.D.N.Y. 2014) (finding contractual two-year limitations period would
control absent application of a tolling doctrine).  That is true even when such contractual
limitations periods trump the three-year statute of limitations in the Copyright Act.  *See NAFRA
Worldwide*, 2013 WL 12098772, at *10-11 (contractually shortening limitations period for
copyright claim to one year is reasonable and enforceable); *Ashland, Inc. v. Achiever Business
Solutions Inc.*, No. C2-05-247, 2005 WL 8161380, *3-4 (same); *Entous*, 151 F. Supp. 2d 1150 at
1155-56 (same for six-month limitations period in contract).

lawsuit, in 2021.  Hence, Xinuos's purported copyright claim is time-barred.  *Nuance Commc'ns, Inc. v. Int'l Bus. Mach. Corp.*, 544 F. Supp. 3d 353, 373-74 (S.D.N.Y. 2021) (granting summary judgment to defendant on that basis that breach of contract claim was time-barred); *ABB Indus. Sys. v. Prime Tech.*, 120 F.3d 351, 360 (2d Cir. 1997) (same).

In an apparent effort to toll the limitations period, Xinuos alleges that it only became aware of IBM's alleged theft and infringement of the code on an unspecified date in March 2019. (Compl. ¶ 73.)  Even if that were true (and it plainly is not), it is irrelevant.  As stated, the accrual provision in the JDA expressly sets the relevant date of accrual as the date of the first alleged breach of the JDA, which is when IBM began using the Monterey Code more than two decades ago.  Moreover, Xinuos purports to stand in the shoes of SCO (*see, e.g.*, Compl. ¶¶ 2, 4, 6), and, if that's true, then SCO's knowledge is imputed to Xinuos.  There is no question that SCO understood IBM used the Project Monterey Code long before 2019.  SCO alleged publicly as early as 2003 that IBM misappropriated the Monterey Code by using it in its AIX for Power operating system.  (¶¶ 17-20.)

Even if Xinuos did not stand in SCO's shoes, it has been on inquiry notice of its alleged claim for well over a decade.  In October 2004, when SCO moved to amend its complaint to add an additional copyright claim for IBM's purported copying of the Monterey Code, SCO publicly alleged in its proposed Third Amended Complaint that IBM infringed TX 5-787-679, one of the copyrights Xinuos claims IBM infringes.  (¶ 73.)  Moreover, the 2011 APA between SCO and Xinuos not only mentions SCO's claims, but also it explicitly carves them out from the transfer to Xinuos (¶¶ 31-34).  *See Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (dismissing copyright claim as time-barred when "[a] reasonable copyright

holder in Plaintiff's position, exercising due diligence, 'should have discovered' that its copyright was being violated" during the limitations period (citation omitted)).

Accordingly, even if the Court were to conclude Xinuos has standing to bring its copyright claim and that the claim survives SCO's release in the Settlement, the claim fails as a matter of law because it is untimely.  *See, e.g.*, *Newsome v. Brown*, 209 Fed. App'x. 11, 13 (2d Cir. 2006) (affirming district court's dismissal at summary judgment of copyright claim as untimely).

## CONCLUSION

For the foregoing reasons, summary judgment should be granted to Defendants, and Xinuos's copyright claim should be dismissed with prejudice.


DATED:  January 27, 2023

Respectfully submitted,

/s/ David R. Marriott

**CRAVATH, SWAINE & MOORE LLP**
David R. Marriott
Michael J. Zaken
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
dmarriott@cravath.com
mzaken@cravath.com

*Attorney for Defendants International Business Machines Corp. and Red Hat, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that on this 27th day of January, 2023, I caused the foregoing document to be served via electronic mail on the following parties:

J. Daryl Dodson, Esq.
**MOORE DODSON RUSSELL & WILHITE, P.C.**
P.O. Box 310
St. Thomas, VI 00804-0310
E-Mail: daryl@mdrvi.com

Mark A. Klaplow, Esq.
Kyle Pham, Esq.
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
mklapow@crowell.com
kpham@crowell.com

Gabriel M. Ramsey, Esq.
Warrington S. Parker, Esq.
Molly Jones, Esq.
Jacob S. Canter, Esq.
Kimberly S Mejia-Cuellar, Esq.
Ryan Merker, Esq.
Maria N. Sokova, Esq.
Joachim Beno Steinberg, Esq.
**CROWELL & MORING LLP**
3 Embarcadero Center – 26th Floor San
Francisco, CA 94111
gramsey@crowell.com
wparker@crowell.com
mollyjones@crowell.com
jcanter@crowell.com
kmejiacuellar@crowell.com
rmerker@crowell.com
msokova@crowell.com
jsteinberg@crowell.com

/s/ Emma Kolesar