**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
XINUOS, INC.,                      :
                              :
           Plaintiff,       :     CASE NO. 7:22-cv-09777-CS
                              :
        -against-        :
                              :
INTERNATIONAL BUSINESS MACHINES  :
CORPORATION and RED HAT, INC.,     :
                              :
        Defendants.      :
                              :
--------------------------------------------------------- x

**PLAINTIFF XINUOS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

PLAINTIFF XINUOS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO ......................... 1

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ............................................. 1

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ............................................................................................................................... 3

LEGAL STANDARDS ..................................................................................................................... 7

ARGUMENT .................................................................................................................................... 8

I.     Defendants' Arguments Entirely Ignore the Copyright Act's Standing Requirements and the APA's Plain Language. .......................................................................................................... 8

     A.     TSG Is Not the Legal or Beneficial Owner of Exclusive Rights Under the Copyright Act and Thus Could Not Retain the Bare Right to Sue for Infringement of the Copyrights at Issue. ................................................................................................. 8

     B.     The APA's Plain Language Conforms to Copyright Law in Granting to Xinuos the Copyrights at Issue and the Accompanying Right to Sue for Future Infringement.. 11

II.     The JDA's Contractual Limitations Provision Does Not Preclude Xinuos' Claim ............... 15

     A.     IBM Terminated the JDA, So Its Limitations Provision Cannot Apply. ................... 15

     B.     The JDA Does Not Apply to All The Copyrights And Products At Issue. .............. 16

     C.     The Limitations Provision On Its Face Does Not Apply to These Claims. ............... 17

     D.     Even If Defendants Are Correct About the Application of the JDA, Then Infringement Claims Are Not Barred Because They Continue to Accrue ................ 18

III.     The Bankruptcy Court Did Not Grant Defendants Permission to Infringe Xinuos' Copyrights with Impunity. ........................................................................................................ 24

CONCLUSION ............................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music*,
   944 F.2d 971 (2d Cir. 1991)................................................................8, 19

*Am. Stock Exchange, LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................19

*Ashland, Inc. v. Achiever Bus. Sols. Inc.*,
   2005 WL 8161380 (S.D. Ohio Dec. 20, 2005) ........................................21

*Bank of New York Tr. Co., N.A. v. Franklin Advisers, Inc.*,
   726 F.3d 269 (2d Cir. 2013)......................................................................19

*Big East Entmt., Inc. v. Zomba Enters.*,
   453 F. Supp. 2d 788 (S.D.N.Y. 2006).......................................................22

*Bourne v. Walt Disney Co.*,
   60 F.3d 621 (2d Cir. 1995)........................................................................20

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001)........................................................................7

*City Investing Co. Liquidating Trust v. Continental Casualty Co.*,
   624 A.2d 1191 (Del. 1993) .......................................................................13

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   126 F.3d 365 (2d Cir. 1997)......................................................................19

*Crafty Prods. v. Fuqing Sanxing Crafts*,
   839 F. App'x 95 (9th Cir. 2020) .................................................................9

*D & S Restor. v. Wenger Constr.*,
   160 A.D.3d 924 (2018) .............................................................................20

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007)........................................................................25

*Davis v. Norwalk Econ. Opportunity Now, Inc.*,
   534 F. App'x 47 (2d Cir. 2013) .................................................................19

*Digesare Mech. v. U.W. Marx*,
   1452, 112 N.Y.S.3d 306 (2019) ................................................................17

*Digesare Mech. v. U.W. Marx,*
  176 A.D.3d 1449 (2019) ................................................................................20

*Digital Dynamics Software, Inc. v. Eclipse Gaming Sys., LLC,*
  2018 WL 2463378 (N.D. Ill. June 1, 2018) ...................................................19

*Eden Toys v. Florelee Undergarment,*
  697 F.2d 27 (2d Cir. 1982) ............................................................................11

*Entous v. Viacom Int'l,*
  151 F. Supp. 2d 1150 (C.D. Cal. 2001) .........................................................21

*Executive Plaza, LLC v Peerless Ins. Co.,*
  982 N.Y.S.2d 826 (2014) ..............................................................................20

*Fathers & Daughters Nev. v. Lingfu Zhang,*
  284 F. Supp. 3d 1160 (D. Or. 2018) ...........................................................9, 11

*Fed. Treas. Enterp. v. SPI Spirits,*
  726 F.3d 62 (2d Cir. 2013)..............................................................................11

*Fernandez v. City of New York,*
  2020 WL 4605238 (S.D.N.Y. Aug. 11, 2020).................................................25

*Fischer v. Forrest,*
  2017 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017)...........................................18

*Gamble v. Tyson,*
  No. 17CV06635LAKSN, 2019 WL 5722129 (S.D.N.Y. Jan. 4, 2019)................25

*Gulitz v. DiBartolo,*
  2010 WL 11712777 (S.D.N.Y. 2010) ..............................................................7

*Harvey v. City of Newark,*
  2010 WL 4240625 (Del. Ch. Oct. 20, 2010) ..................................................14

*Holcomb v. Iona Coll.,*
  521 F.3d 130 (2d Cir. 2008)..............................................................................7

*John Wiley & Sons, Inc. v. DRK Photo,*
  882 F.3d 394 (2d Cir. 2018)...................................................................8, 10, 11

*Kamakazi Music v. Robbins Music,*
  684 F.2d 228 (2d Cir. 1982) ...........................................................................16

*Kwan v. Schlein,*
  634 F.3d 224 (2d Cir. 2011)......................................................................20, 22

*Laba v Carey*,
    29 N.Y.2d 302 (N.Y. 1971) .................................................................................20

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991).........................................................................................16

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*,
    456 F. Supp. 531 (S.D.N.Y. 1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978) ................................15

*Mazzaferro v. RLI Ins. Co.*,
    50 F.3d 137 (2nd Cir. 1995)..............................................................................20

*MCC Non Ferrous Trading Inc. v. AGCS Mar. Ins. Co.*,
    2015 WL 3651537 (S.D.N.Y. 2015)......................................................................7

*Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*,
    61 N.Y.2d 106 (1984) .......................................................................................17

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
    345 F. Supp. 3d 482 (S.D.N.Y. 2018)...................................................................23

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
    390 F. Supp. 3d 461 (S.D.N.Y. 2019)...................................................................23

*Mindspirit, LLC v. Evalueserve Ltd.*,
    346 F. Supp. 3d 552 (S.D.N.Y. 2018)...................................................................20

*Moran v. London Records, Ltd.*,
    827 F.2d 180 (7th Cir. 1987) .............................................................................10

*My Play City, Inc. v. Conduit Ltd.*,
    589 F. App'x 559 (2d Cir. 2014) ........................................................................17

*NAFRA Worldwide v. Home Depot U.S.A*,
    2013 WL 12098772 (N.D. Ga. Aug. 29, 2013) .......................................................21

*Newsome v. Brown*,
    209 F. App'x 11 (2d Cir. 2006) ..........................................................................22

*Newspaper Guild/CWA v. Hearst Corp.*,
    645 F.3d 527 (2d Cir. 2011).............................................................................16

*In re Northwestern Corp.*,
    313 B.R. 595 (D. Del. Bankr. 2004) ....................................................................14

*Matter of Oriskany Cent. Sch. Dist. (Edmund J. Booth Architects, A.I.A.)*,
    615 N.Y.S.2d 160 (1994), *aff'd*, 85 N.Y.2d 995 (1995)...........................................21

*Osborn ex rel. Osborn v. Kemp*,
   991 A.2d 1153 (Del. 2010) ..................................................................................11

*Parisienne v. Scripps Media, Inc.*,
   No. 19 CIV. 8612 (ER), 2021 WL 3668084 (S.D.N.Y. Aug. 17, 2021) ................................23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014)...............................................................................18, 21

*Pickwick Commc'ns, Inc. v. Weinberg*,
   1994 WL 620950 (S.D.N.Y. Nov. 8, 1994).....................................................25

*PK Music Performance, Inc. v. Timberlake*,
   No. 16 Civ. 1215 (VSB), 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ............................23

*Putrelo Const. Co. v. Town of Marcy*,
   964 N.Y.S.2d 812 (2013)..................................................................................21

*In re Residential Cap.*,
   610 B.R. 725 (S.D.N.Y. Bankr. 2019).................................................................20

*Reynolds v. Hearst Commc'ns*,
   2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018) ........................................................11

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) ......................................................................8, 10

*Rimini St. v. Oracle Int'l Corp.*,
   473 F. Supp. 3d 1158 (D. Nev. 2020)..................................................................19

*SBK Catalogue P'ship v. Orion Pictures Corp.*,
   723 F. Supp. 1053 (D.N.J. 1989) .........................................................................10

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) ..........................................................................8, 9

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020)..................................................................................18

*Sollazo v. Restaurant*,
   2016 WL 1071031 (S.D.N.Y. 2016)......................................................................7

*Teradata v. SAP*,
   2018 WL 6528009 (N.D. Cal. Dec. 12, 2018)......................................................16

*The SCO Grp., Inc. v. IBM*,
   879 F.3d 1062 (10th Cir. 2018) .........................................................4, 15, 21, 22

*Vianix Delaware LLC v. Nuance Commc'ns, Inc.*,
    2009 WL 1364346 (D. Del. May 12, 2009)........................................................................8

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
    2014 WL 1053772 (D. Colo. Mar. 19, 2014) ......................................................9, 10, 11, 25

*Walden v. Sanitation Salvage Corp.*,
    2015 WL 1433353 (S.D.N.Y. 2015) ........................................................................7

*Wilson v. Klabe Const. Co.*,
    2003 WL 22931390 (Del. Com. Pl. 2003)........................................................................11

*Wood v. Laughlin*,
    103 A.D.2d 881 (App. Div. 3rd Dept. 1984) ........................................................................17

**Statutes**

17 U.S.C. § 501(b) ........................................................................8, 9

17 U.S.C. § 507(b) ........................................................................20

Copyright Act........................................................................8, 9, 10, 11, 15, 21, 22

**Other Authorities**

Fed. R. Civ. P. 56........................................................................6, 7

Local Rule 56.1 ........................................................................3

Plaintiff Xinuos, Inc. ("Xinuos") respectfully submits this memorandum in opposition to the Motion for Partial Summary Judgment filed by Defendants International Business Machines Corp. ("IBM") and Red Hat, Inc. ("Red Hat") (collectively, "Defendants") ("Mot.").

## PRELIMINARY STATEMENT

Defendants' motion contradicts two indisputable settled legal principles and, thus, must be denied. First, it is a legal impossibility to transfer a copyright, yet retain claims for infringement that accrue after the date of transfer. Nor is it possible to assign or retain a bare right to sue for future claims that have not yet accrued. By definition, copyright infringement claims accrue to the legal and beneficial copyright owner. Thus, all claims accruing after the date Xinuos became the copyright owner belong to Xinuos. Second, claims for copyright infringement are not subject to an absolute statute of limitations, contractual limitations, or time-based defenses. Thus, Defendants' motion cannot dispose of Xinuos' claim. To ignore this settled law would be error.

Defendants move for early summary judgment based on a 2011 Asset Purchase Agreement ("APA") and 1998 Joint Development Agreement ("JDA"). Neither furnishes grounds for dismissal, much less on the face of the Complaint—allegations taken as true without discovery. Regarding the APA, it is clear on its face that Xinuos acquired all right, title, and interest in the copyrights at issue from SCO in 2011. By operation of copyright law, Xinuos owns any claim for copyright infringement that accrues after that date, and evidence of the parties' intent is not to the contrary. Even if the APA was unclear, however, it cannot do what Defendants assert here: reserve for TSG the bare right to bring claims for *future* copyright infringement that had yet to accrue. IBM tried and failed to get the Trustee and bankruptcy court to accept the position it advances here, which is also directly at odds with the parties' intent as reflected in the attached affidavits.

Regarding the JDA, the Supreme Court has definitively held that under copyright law with each reproduction a new infringement claim accrues subject to its own limitations period. Hence,

each of the countless times that Defendants reproduced Xinuos' software code, a brand-new independent copyright infringement claim accrued, subject to its own limitations period. Even if Defendants' JDA arguments are right (they are not), at most, the JDA would merely limit the copyright accrual rule, and accordingly, limit damages from the date of discovery. Moreover, Xinuos' copyright claims are not subject to the two-year contractual limitations period in the JDA in any event. First, the JDA limitations period cannot apply to code developed outside of the JDA, such as code at issue here. Second, IBM terminated the JDA long ago, and the contractual limitations provision does not survive termination. Third, IBM's hypothetical license defense cannot transform Xinuos' copyright infringement into one "related to a *breach*" of the JDA.

Defendants misleadingly suggests that two decades of litigation has resolved the question of whether it obtained a license to the code at issue in this case. Tellingly, Defendants did not move for summary judgment based on a license. That is because no court has ever determined IBM was entitled to any license to any code, much less the code at issue here. Regardless, any license that could have issued out of the JDA was tied to a specific product, IA-64, not any of IBM's other products. That is evidenced by the fact that IBM requested a license (which was not granted) to use SCO's code in products unrelated to IA-64 and Project Monterey—products which Xinuos accuses in this case of infringing its copyrights.

Finally, contrary to Defendants' repeated assertions, the bankruptcy court refused to rule as to the effect of TSG's settlement and release of its claims against IBM on this case. It is axiomatic that a release cannot preclude the claims of a third-party to the agreement, and the Second Circuit has held that settlement agreements should not be used as an end-run around properly obtaining a license from the copyright owner.

Summary judgment should only be granted before discovery begins in the rarest of cases. This case is not one of them. Accordingly, Defendants' motion should be denied.

## BACKGROUND

Xinuos incorporates by reference its Responses to Defendants' Rule 56.1 Statement of Facts and Xinuos' Additional Statement of Facts[1], which it summarizes as follows:

On September 19, 1995, Santa Cruz Operation ("Santa Cruz") acquired from Novell the UNIX and UnixWare operating system ("OS") code and Novell's associated business assets. ¶ 105. Santa Cruz thought that it also bought copyrights to pre-September 19, 1995 code (the "pre-1995" code). *Id.* After September 19, 1995, Santa Cruz wrote new OS code for its UNIX products (the "post-1995" code). ¶¶ 105-106.

Project Monterey began in 1998 to develop and release a fully-functional IA-64 OS unlike any prior IBM product. ¶ 109. IBM and Santa Cruz agreed to the JDA and various amendments and supplements. ¶¶ 112-123. Supplement B outlined the Santa Cruz code which IBM could access "solely for development of the IA-64 Product," including UnixWare code. ¶¶ 115-120 In order to receive a continuing license to use the code for an IA-64 product, IBM was required to complete a "general availability" release of the IA-64 product. ¶ 114, 130-131. In 1999, IBM asked that Santa Cruz agree to Supplement C to use some of the code at issue in this case in its *other* OS products (i.e. unrelated versions of AIX, OS/390 & OS/400, earlier names for the accused products); Santa Cruz declined. ¶¶ 128-129.

In May 2001, IBM purported to release the IA-64 OS product. ¶¶ 130-132. However, the product lacked a "compiler," which would have been necessary for any customer to compile their own applications or for developers to build any applications, libraries, tools or any other software required on top of the new operating system; and IBM failed to market the product, offer support,

---

[1] Except as otherwise noted, citations designated as "¶ _" refer to Xinuos' Responses (not Defendants' facts) in the corresponding paragraph and Xinuos' Additional Statement of Facts.

or include it on any price lists. ¶¶ 130-131. Thus, IBM's purported release lacked any of the hallmarks of a "general availability release" under the JDA. ¶ 131.[2] Soon after, IBM terminated the JDA. ¶ 124. IBM intended to "replac[e] UnixWare with Linux" and "eliminat[e] SCO." ¶¶ 126.

In 2003, SCO sued IBM ("Utah Litigation"), and the operative complaint (Second Amended Complaint) made four claims:[3] (1) IBM improperly contributed the *pre*-1995 code to its competing Linux-based OS products, and thus breached its UNIX license (¶ 134); (2) IBM infringed the *pre*-1995 copyrights which SCO thought it acquired from Novell (¶ 135); (3) IBM unfairly competed with SCO by misrepresenting its Project Monterey intentions and infringing the *pre*-1995 code (¶ 136); (4) IBM tortiously interfered with SCO's contracts and business (¶ 137).[4]

In 2004, while the Utah Litigation was pending, SCO sued Novell ("Novell Litigation"), seeking a judicial declaration that SCO had acquired the pre-1995 UNIX and UnixWare copyrights. ¶¶ 138-139. Following a jury trial, the court determined that it had not but noted that SCO would own the copyrights in any new post-1995 code. ¶¶ 140-142.

SCO and IBM agreed the Novell rulings precluded its pre-1995 copyright and license claims in the Utah Litigation, leaving only the unfair competition and tortious interference claims. ¶¶ 143-148. During discovery in the Utah Litigation, SCO learned that IBM had also improperly used other SCO code, which SCO alleged was further evidence of IBM's fraud and unfair competition. ¶ 149. SCO also alleged in a proposed Third Amended Complaint that IBM infringed post-1995 copyrights, but the court denied this request as "untimely" under the schedule. ¶¶ 154-

---

[2] The Tenth Circuit, reciting these facts, found that "a reasonable jury could find that this [beta] version was not a *generally available* release of the product and thus did not entitle IBM to a royalty-free license to the [] code included therein." *The SCO Grp., Inc. v. IBM*, 879 F.3d 1062, 1072 (10th Cir. 2018); *see also id.* at 1072 n.4.

[3] By 2003, Santa Cruz sold its OS assets to an entity, which referred to itself as SCO. ¶ 99.

[4] After SCO's suit against IBM, in 2003, Red Hat sought a declaration that its OS product did not violate the pre-1995 copyrights at issue in the Utah Litigation, and in 2006, SUSE also filed an arbitration claim seeking a similar declaration as to its respective OS products. ¶¶ 157, 160-161.

155. In 2018, the Tenth Circuit stated that the unfair competition claim is not the same as a copyright infringement claim, and affirmed the district court's denial of SCO's request for leave to file a Third Amended Complaint, noting that the district court acted within its discretion to manage its own docket. ¶¶ 151-152.

In the interim, in 2007, SCO filed for Chapter 11 bankruptcy. ¶¶ 100, 163. At the time, as evidenced by its choice to file under Chapter 11, SCO believed that it could become operational if it won the Utah and Novell Litigations. ¶ 164. But after the Novell decision, the Trustee determined that an asset sale was "the next logical step" and held an auction for SCO's business and IP assets. ¶ 165. Xinuos' $600,000 bid was the highest, and the Trustee selected Xinuos to acquire SCO's assets. ¶ 166-167. The Trustee and Xinuos negotiated and executed the APA, which transferred to Xinuos all rights in SCO's IP assets and business operations. ¶¶ 168-173, 179, 184-187.

While negotiating the APA's scope, the Trustee explained to SCO that "all assets of SCO are being transferred except for those that are excluded. We can add things to the excluded assets if you believe necessary for the litigation with the caveat that we have to give them everything they need to operate the business." ¶ 186. The parties did not include in the excluded assets any prospective claims that could potentially accrue to Xinuos in the future. ¶¶ 174-182, 186.

On March 2, 2011, the bankruptcy court held a hearing on whether to approve the APA. ¶¶ 188. The Trustee's financial advisor testified that all "operating assets" would be transferred to Xinuos under the APA with SCO retaining none. ¶¶ 189-190, 194-196. Another witness testified that there was an urgent need for Xinuos to obtain the operating assets to support users of SCO's OS products worldwide. ¶¶ 191-193. In this context, the court approved the APA. ¶¶ 197.

Having disposed of all operational assets and IP, in August 2012, the Trustee moved to convert the bankruptcy from Chapter 11 to Chapter 7. ¶¶ 198-201. For the next eight years, Xinuos operated a server OS business. ¶¶ 202-205. With the exception of SCO's appeal to the Tenth

Circuit, very little occurred in the bankruptcy and Utah Litigation during that time. ¶ 209. It was not until Xinuos filed the instant lawsuit that IBM sought to settle the Utah Litigation. ¶¶ 206, 210. Xinuos appeared in the bankruptcy proceedings to object to the proposed settlement and release to the extent it purported to impact Xinuos' rights to the post-1995 code. ¶ 211. Xinuos' objections were heard by the bankruptcy court and at the hearing IBM's counsel raised its current theory that Xinuos cannot assert any claim for copyright infringement. ¶¶ 212-217. However, the bankruptcy court was explicit that it was not going to decide whether the settlement and release had any bearing whatsoever on Xinuos' rights to assert copyright claims accruing after the asset purchase:

> [E]ach of you is concerned the other is planting a landmine. That either somehow this Court will bless and recognize causes of action that presumably IBM will seek to dismiss . . . or IBM will use this to say in fact you know Judge Shannon found that -- that any and all claims and causes and action that relate to these assets were the subject of the Utah litigation . . . Xinuos bought assets. And, if there are claims or causes of action arising from them, another Court of competent jurisdiction will decide that. That's an issue involving two separate non-debtors. ¶¶ 213-217.

Without adopting either parties' view, the court approved the settlement and release. ¶ 218.

At the January 17, 2023 pre-motion conference in this case, IBM stated that this motion could be decided solely on the existence of the agreements, without need for fact discovery. ¶¶ 219-221. Despite its representation, IBM's submission includes 54 exhibits and a 97-paragraph statement of facts covering topics well outside of the agreements. ¶ 222. Many exhibits are excerpted and incomplete and at least three were under seal until IBM's recent filing. ¶¶ 223-224.[5]

---

[5] Defendants' selective citation to materials from the Utah Litigation, with over 1000 docket entries, many still under seal, highlights the unfairness of summary judgment briefing at this time. Defendants and their lawyers have access; Xinuos does not. And Xinuos cannot gain access because it has not been permitted to take discovery. To allow IBM to use knowledge of and access to the Utah Litigation materials to cherry-pick random excerpts and pages to show this Court in support of its motion, while Xinuos remains in the dark, raises serious due process concerns.

## LEGAL STANDARDS

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)) (moving party bears the burden of "demonstrating the absence of a genuine issue of material fact."). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gulitz v. DiBartolo*, 2010 WL 11712777 at *4 (S.D.N.Y. 2010) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. A court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

Summary judgment against a plaintiff who has not been afforded the opportunity to conduct discovery may only be granted in the "rarest of cases," where the nonmovant gives the court "no basis to conclude that further discovery would yield information that would create a genuine dispute as to material facts" or where the plaintiff's allegations "would fail to state a claim for relief even if proven to be true." *Sollazo v. Restaurant*, 2016 WL 1071031 at *10 (S.D.N.Y. 2016) (citations omitted). *See also MCC Non Ferrous Trading Inc. v. AGCS Mar. Ins. Co.*, 2015 WL 3651537 at *3 (S.D.N.Y. 2015) (denying cross motions for summary judgment due to insufficient factual record and noting that "granting summary judgment before the parties have engaged in discovery is disfavored"); *Walden v. Sanitation Salvage Corp.*, 2015 WL 1433353 at *5 (S.D.N.Y. 2015) ("Courts in the Second Circuit routinely deny or defer motions for summary judgment when the non-movant has not had an opportunity to conduct discovery and submits an affidavit or declaration that meets the requirements set forth in Rule 56(d).").

**ARGUMENT**

I.     **Defendants' Arguments Entirely Ignore the Copyright Act's Standing Requirements and the APA's Plain Language.**

It is settled law that only the owner of a copyright may sue for infringement and the right to sue may not be held separate from the copyright. The APA plainly transferred the copyrights at issue to Xinuos. Xinuos is the only party that can sue for claims accruing after that transfer. Defendants' contrary position—that TSG somehow retained the right to sue for future copyright infringement—is both legally impossible and factually inaccurate.

A.     **TSG Is Not the Legal or Beneficial Owner of Exclusive Rights Under the Copyright Act and Thus Could Not Retain the Bare Right to Sue for Infringement of the Copyrights at Issue.**

Defendants' argument that Xinuos lacks standing because any right to sue IBM for copyright infringement was purportedly retained by TSG would require the Court to upend federal copyright law. Under federal copyright law, claims for copyright infringement accrue only to the "legal or beneficial owner of an exclusive right under a copyright" and only for "any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). In short, there is no such thing as a bare retention of a right to sue for future infringements because such a right does not exist at the time and only accrues after the fact.

Courts have consistently reaffirmed that it is not legally possible for a party to hold the right to sue if they are not the owner of the copyright or exclusive rights under the Copyright Act. *See e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 401-410 (2d Cir. 2018) (purported assignment of bare right to sue for copyright infringement is invalid and will not confer standing to sue on purported assignee); *ABKCO Music, Inc. v. Harrisongs Music*, 944 F.2d 971, 980 (2d Cir. 1991) ("[T]he Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."); *Vianix Delaware LLC v. Nuance Commc'ns, Inc.*, 2009 WL 1364346 at *2

(D. Del. May 12, 2009) (only legal or beneficial owner of copyrights may file suit); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169-70 (9th Cir. 2013) (same).[6]

In particular, where a copyright is assigned, it is not legally possible for the assignor, such as TSG here, to retain a right to sue under the copyright. *See e.g.*, *Fathers & Daughters Nev. v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1170 (D. Or. 2018) ("[T]he Ninth Circuit has repeatedly held that agreements and assignments cannot convey simply a right to sue, because a right to sue is not an exclusive right under the Copyright Act … If a party cannot transfer simply a right to sue, the Court finds that a party similarly cannot retain a simple right to sue.") (citing *DRK Photo v. McGraw-Hill Glob. Educ. Hold., LLC*, 870 F.3d 978, 987-88 (9th Cir. 2017)); *see also Crafty Prods. v. Fuqing Sanxing Crafts*, 839 F. App'x 95, 98 (9th Cir. 2020) (where agreement transfers all of seller's assets including copyrights, seller cannot retain a "right to sue" on those copyrights). Xinuos has found no contrary authority in any jurisdiction.

"In order to bring a claim, both legal and beneficial owners must show that they are the *owners* of at least one exclusive right set forth in § 106." *Viesti Assocs.*, 2014 WL 1053772 at *6 (emphasis added); *Hyperquest*, 632 F.3d at 382 (same). Section 106 of the Copyright Act defines "exclusive rights" as rights (1) to reproduce copies; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly; (5) to display publicly; and (6) to perform publicly by digital audio transmission. By contrast, "[t]he right to sue for an accrued claim for infringement is not an exclusive right under § 106." *Silvers*, 402 F.3d at 884. Here, there is no genuine dispute that Xinuos was assigned the entirety of the post-1995 copyrights, including registered and unregistered copyrights encompassing all of the exclusive rights under Section 106. Nor can there

---

[6] *See also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884-87 (9th Cir. 2005) ("Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for infringement."); *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 2014 WL 1053772, at *6 (D. Colo. Mar. 19, 2014) ("[T]he weight of authority interprets § 501(b) as authorizing suit only by legal or beneficial owners.").

be any genuine dispute that TSG did not retain any exclusive right to reproduce, prepare derivative works, distribute, perform, or display any copyrighted work whatsoever. Thus, Xinuos is the sole "legal" owner of the post-1995 copyrights.

"Beneficial owners are those without legal title, but with an interest in royalties or licensing fees flowing from an exclusive right." *Viesti Assocs.*, 2014 WL 1053772 at \*6-7; *SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1062 (D.N.J. 1989) ("[T]he definition given to a beneficial owner includes an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.") (citation omitted); *see also Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) (defining beneficial owner as one who has "the right to receive royalties from the copyright's exploitation"). Here, TSG fully assigned to Xinuos the entirety of the rights to royalties and licensing fees flowing from the post-1995 copyrights. TSG did not retain any exclusive right to receive royalties or licensing fees flowing from the rights to reproduce, prepare derivative works, distribute, perform, display or perform a copyrighted work. Thus, Xinuos is the sole "beneficial" owner of the post-1995 copyrights.

*Righthaven* is instructive. In *Righthaven*, contractual language purported to provide a party all rights "to seek redress for past, present, and future infringements of the copyright … in and to the Work," but that party did not retain ownership of any *exclusive* right to reproduce, prepare derivative works or distribute copies. 716 F.3d at 1168-70. Based on this language, the Ninth Circuit held that because the party did not actually retain ownership of the copyrights or any exclusive right under the Copyright Act, it had no standing to sue on those copyrights, notwithstanding language that even purported to provide "all copyrights requisite" to accomplish filing of the suit. *Id*. Similarly, here, TSG did not retain ownership or any exclusive right and thus lacks standing to sue on the copyrights.

The Second Circuit applied the reasoning of *Righthaven* to preclude holders of bare rights

to sue from filing copyright claims. In *John Wiley*, the court found that photographers' assignment agreements only conveyed to plaintiff "(1) an interest in the images for registration purposes, and (2) the bare right to sue for infringement." 882 F.3d at 413. The relationship was "non-exclusive" and agreements provided that plaintiff would reassign copyrights back to the photographers "upon completion of the registration of the Images … and resolution of infringement claims brought by [plaintiff]..." *Id.* at 400, 411-414. The court determined—based on an in-depth analysis of the Copyright Act, federal common law and precedent—that "the [Copyright] Act does not permit a plaintiff assignee to bring a claim for infringement without also having or having had a legal or beneficial ownership in some exclusive right under part of the allegedly infringed copyright." *Id.* at 401-410. Because the agreements did not convey an exclusive right in one of the six enumerated rights in 17 USC § 106, but merely a right to sue, DRK lacked standing to sue. As for the case at hand, put simply, "[i]f a party cannot transfer a simple right to sue, the Court finds that a party similarly cannot retain a simple right to sue." *Fathers & Daughters Nev.*, 284 F. Supp. 3d at 1170.[7]

B.   **The APA's Plain Language Conforms to Copyright Law in Granting to Xinuos the Copyrights at Issue and the Accompanying Right to Sue for Future Infringement.**

In Delaware, "[w]hen there is a written contract, the plain language of a contract will be given its plain meaning." *Wilson v. Klabe Const. Co.*, 2003 WL 22931390, at *4 (Del. Com. Pl. 2003) (citing *Phillips Home Builders v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997); *see*

---

[7] It is also well-established that a non-exclusive copyright licensee does not have standing to sue. *Eden Toys v. Florelee Undergarment*, 697 F.2d 27, 32 (2d Cir. 1982), superseded by rule on other grounds in *Fed. Treas. Enterp. v. SPI Spirits*, 726 F.3d 62, 84 (2d Cir. 2013) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted *exclusive* licenses by owners of copyrights" (emphasis added).) Since TSG was only a non-exclusive licensee, it had no right "to initiate and settle lawsuits" for claims accruing after transfer. *Viesti Assocs.*, 2014 WL 1053772 at *6-7. Moreover, to the extent Defendants attempt to argue that Xinuos' non-exclusive license back to SCO to "use" the copyrights allows SCO to sub-license the copyrights to Defendants, they would be mistaken. "A nonexclusive licensee has no right to sell or to sublicense without express authorization." *See Reynolds v. Hearst Commc'ns*, 2018 WL 1229840 at *3 (S.D.N.Y. Mar. 5, 2018).

*also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the objective theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party.").

### 1. The APA Plainly States Xinuos Owns the Copyrights Post-Transaction.

The APA states in § 2.1 that the Acquired Assets transferred to Xinuos include "[a]ll of [SCO's] assets (tangible or intangible), including those assets set forth on Schedule 2.1(a), all Intellectual Property, including all copyrights developed after 1995" as well as "[a]ll rights and claims of Seller against any third parties, directly arising from or directly relating to the Acquired Assets." Declaration of Emma Kolesar in Support of Defendants' Motion for Partial Summary Judgment ("Kolesar Decl.") Ex. 3, § 2.1(a). There is no language in the APA that limits in any way Xinuos' ownership rights in the copyrights.

### 2. By Section 2.1(c) of the APA, TSG Did Not Purport to Retain the Right to Sue for Future Infringements, Only the Right to Bring Then-Existing Claims that it Already Owned.

Defendants' argument hinges entirely on its unsupported reading of the "Excluded Assets" section of the APA. By definition, Excluded Assets were "assets" already held by TSG and thus could not have included hypothetical future claims based on future infringements of the copyrights at issue. Consistent with this, Excluded Assets do not mention the copyrights at issue or any rights therein. The Excluded Assets under Schedule 2.1(c) mean TSG's existing lawsuits and claims against various parties. Excluded Assets reference only "***Seller's claim***" and not claims that might accrue to Buyer in the future. Indeed, Excluded Assets could not have included any copyright claims that might accrue in the future because those were not Seller's to transfer or retain.

Defendants make much of APA language regarding claims it might advance in the future and would have this Court read that language as retaining the right to sue on future infringements contrary to copyright law and contrary to TSG's grant of all rights in the copyrights. The clear

reading of that language, however – and the reading that aligns with copyright law, the rest of the APA, and the intent of the parties as shown below, is that TSG sought to retain the right to bring claims in the future (whether asserted in the then-existing litigations or not) based on rights that TSG already had. The right to sue for future infringements was not contemplated under this section because *by law* those claims accrue to the copyright holder and cannot be retained.[8]

### 3. The Parties' Intent to Transfer All Rights Including the Right to Sue for Future Copyright Infringement Is Reflected in Information Already Available and Would No Doubt Be Further Confirmed by Discovery.

Defendants assure the Court that the APA was meant to do what the law does not allow, for TSG to retain the right to sue for future infringement after TSG sold the copyrights. Because the contract and law are clear, Xinuos does not believe that the intent of the parties is relevant. To the extent the Court determines otherwise, that intent only confirms Xinuos' position. To the extent the intent of the parties to the APA is relevant, it bears repeating that only TSG and Xinuos—not Defendants—were parties to the APA. TSG made its intent clear when, in 2012, the Bankruptcy Trustee stated on its motion to convert the bankruptcy action from Chapter 11 to Chapter 7: "**[t]here are no other assets in the Debtors' estates other than certain unfair competition and tortious interference claims** asserted by the Debtors' estates against [IBM] in an action [] currently pending in the District Court for the District of Utah …" Declaration of Molly A. Jones in Support of Xinuos Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment ("Jones Decl.") Ex. CC at 1-2 (emphasis added). TSG never mentioned any (current or future) copyright claims in its estate; TSG retained *only* the claims at issue in the existing litigation. *Id.*[9]

---

[8] This would be particularly unreasonable given that Xinuos was attempting to avoid precisely the ambiguity that existed between SCO and Novell (Jones Decl., Ex. RR ¶ 16); important context for the present dispute. *See City Investing Co. Liquidating Trust v. Continental Casualty Co.*, 624 A.2d 1191, 1198 (Del. 1993) (context and circumstances allowable extrinsic evidence of parties' intent).
[9] SCO's intent is further supported by a footnote to the agreement: "Seller to confirm with litigation counsel that license-back of copyright is sufficient to maintain litigation." Kolesar Decl. Ex. 3, §

Xinuos shared TSG's understanding. The APA's whole point was for Xinuos to take control of SCO's server operating system business.[10] *See* Jones Decl., Ex. W at 34:5-25; 38:17-39:10. It is absurd to suggest that the parties intended Xinuos to take complete control over SCO's business but not exclusively control and possess authority to protect core intellectual property from infringement.[11] Such a scenario would lead to an absurd result where IBM—one of Xinuos' biggest competitors—could infringe Xinuos' copyrights with impunity and Xinuos would never have recourse against IBM for the entire decades-long life of its copyrights. This would effectively render the copyrights useless and turn Xinuos into a non-exclusive licensee rather than the outright, exclusive owner of the copyrights that it is after the APA.

Rather than point to any evidence the parties to the APA intended to advance the business interests of IBM (a non-party to the APA) instead of their own, Defendants argue Xinuos' alleged "silence" concerning TSG's *post-acquisition* litigation against IBM establishes Xinuos lacks standing here to assert its copyright interests. Mot. at 101-3. Not so. If anything, Defendants' assertions regarding Xinuos' alleged "silence" merely confirm that Xinuos understood the Excluded Assets to include TSG's then-existing claims for unfair competition and tortious

---

2.2, n. 1. The SCO litigation at that point only included live unfair competition and tortious interference claims.

[10] Defendants' arguments that Xinuos could not have obtained rights to sue IBM and others on the acquired copyrights because it paid $600,000 for the copyrights under the APA is nonsensical and irrelevant. Xinuos did not purchase SCO's rights to sue IBM for IBM's past conduct. It acquired an operating business with important client relationships and attendant intellectual property and the right to sue for infringements thereof. Xinuos continues to sell and service the software to this day. Defendants have no factual basis for claiming Xinuos should have paid more when it did not intend to acquire SCO's then-existing claims. Jones Decl., Ex. A ¶ 8.

[11] Defendants' position that Xinuos would waive claims to future infringement by IBM, Red Hat, and SUSE, each of which were major competitors in the field of server operating systems does not comport with rational decision-making by a commercial actor. *See In re Northwestern Corp.*, 313 B.R. 595, 601 (D. Del. Bankr. 2004) ("An interpretation that leads to an absurd result is disfavored."); *Harvey v. City of Newark*, 2010 WL 4240625, at *6 (Del. Ch. Oct. 20, 2010) ("complex documents typically cannot be rationally understood without an appreciation for the particular . . . business context in which they were adopted"); Jones Decl., Ex. RR ¶ 18.

interference—neither of which were of any concern to Xinuos. Furthermore, to the extent Defendants complaints about Xinuos' alleged silence can be read as an attempt to shoehorn a statute of limitations or another time-based defense, such an argument would be futile, since time-based defenses cannot extinguish copyright claims.[12]

## II.    The JDA's Contractual Limitations Provision Does Not Preclude Xinuos' Claim.

Defendants' argument that the two-year contractual limitation provision bars Xinuos' claim is contrary to copyright law. Even if it applied, at best, it would limit Xinuos' damages. But the JDA limitations period does not apply to Xinuos' claims for at least three reasons: First, IBM terminated the JDA two decades ago and, thus, cannot invoke the contractual limitation period. Second, the JDA limitations period cannot apply to code developed outside of the JDA, such as code at issue here. Third, Xinuos' copyright infringement claim is not covered by the language of the contractual limitation because it is not a claim "related to a *breach*" of the JDA.

### A.    IBM Terminated the JDA, So Its Limitations Provision Cannot Apply.

IBM admits in its motion that it terminated the JDA in June 2001. Mot. at 3. Thus, because Xinuos' claims only apply to copyright infringement that occurred after that date, the JDA cannot govern unless the contractual limitations provision survives termination—it does not. Section 22.15 of the JDA contains the agreement's survival clause, which notably does *not* include Section 22.3, the contractual limitations period. Under the plain meaning, the limitations provision does

---

[12] *See infra* Section I.B.3. To the extent IBM is attempting to argue some form of estoppel due to alleged "silence" or statements made by Xinuos, Xinuos notes that such *unpleaded* affirmative defenses are highly factual in nature, turning on what Xinuos knew about IBM's products and code, when it learned such information, and whether IBM reasonably relied on any alleged silence or statement. *See Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531, 535 (S.D.N.Y. 1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978). Moreover, Defendants' repeated attempts to conflate TSG's unfair competition claim with the copyrights at issue here is misleading. Indeed, the Tenth Circuit was explicit that SCO's unfair competition claim sounded in fraud and deception and did not encompass or overlap with any copyright issue and, thus, was not preempted by the Copyright Act. *The SCO Grp., Inc. v. IBM*, 879 F.3d 1062, 1080-81 (10th Cir. 2018)].

not survive the contract.[13] Thus, the JDA does not and cannot govern Xinuos' claims.[14]

**B.      The JDA Does Not Apply to All The Copyrights And Products At Issue.**

Even if the JDA limitations provision survived, it does not apply to at least some of Xinuos'

claims.[15] The JDA between IBM and Santa Cruz was for a narrow purpose: the development and

commercialization of the "IA-64 Product." Kolesar Decl. Ex. 4, Section 2(d)(2) and Project

Supplement B at Section 4. Thus, that agreement and its limitations provision could only apply to

work related to the "IA-64 Product." Xinuos asserts copyrights and accuses software unrelated to

that product, the JDA or Project Monterey. Accordingly, at least to the extent Xinuos' claims do

not relate to the IA-64 Product, the JDA is not relevant. Similarly, Xinuos claims IBM infringes

Xinuos' copyrights to, among other things, code developed outside of the JDA and Project

Monterey, and accuses products not part of the project (e.g., AIX). Forcing the JDA's contractual

---

[13] Although the survival clause states that provisions which "by their nature extend beyond termination or expiration will survive," it does not apply to contractual limitations. The only cases applying a presumption of survivability to a contractual limitations provision are arbitration cases, which find a liability limitation provision is "in the nature" of other dispute resolution provisions. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) and *Teradata v. SAP*, 2018 WL 6528009 at \*7-8 (N.D. Cal. Dec. 12, 2018). Courts examine whether "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Newspaper Guild/CWA v. Hearst Corp.*, 645 F.3d 527, 530-31 (2d Cir. 2011).

[14] Even in a hypothetical world where IBM obtained a license, by terminating the agreement it lost the license and began infringing, so Xinuos' claim is no longer governed by contract law, but rather copyright law. *Kamakazi Music v. Robbins Music*, 684 F.2d 228, 230 (2d Cir. 1982) (licensor's suit against licensee whose license expired for copyright infringement, not breach of contract).

[15] Defendants "contend[]" that IBM received a license to the code as part of the JDA. Mot. at 15. This bare contention is unsupported by the JDA or facts of this case. Rather, IBM would obtain a license to *some* of the asserted copyrights, but *only* for products "released" pursuant to the JDA— i.e., only SCO code related to the "IA-64 Product Release 1." Kolesar Decl. Ex. 4, Section 2(d)(2) and Project Supplement B at Section 4]. Because the IA-64 product lacked a compiler and was therefore unusable, and IBM failed to meet any of the "general availability release" requirements, IBM did not fulfill the conditions necessary to obtain a license. But even if it had, such license would have been limited *only* to the IA-64 product. That IBM did not obtain a license is highlighted by IBM's request to license certain post-1995 code from SCO to use in IBM's *other* products, which SCO denied. *See* Jones Decl., Ex. E. Here, Xinuos alleges IBM has incorporated the very code SCO refused to license into various versions of AIX, z/OS, and IBM I. IBM's lack of any license from SCO is further highlighted by the fact that there were no apparent payments made by IBM to SCO (and now Xinuos) under any supposed license. Regardless, whether IBM had a license is a genuine dispute of a material fact, and therefore, IBM's motion must be denied.

limitation provision on independent unrelated claims would require a tortured reading of the JDA

that essentially requires any claim between SCO and IBM—even an independent tort claim having

nothing to do with Project Monterey—to be brought within two years of the alleged violation.[16]

### C.    The Limitations Provision On Its Face Does Not Apply to These Claims.

The actual JDA provision that Defendants rely upon applies to "claims related to breach"

of the JDA. Xinuos is not advancing a claim related to breach of the JDA. Just the opposite.

Xinuos' claim for copyright infringement is simply that IBM reproduced Xinuos' copyrighted

code and, thus, exists completely independently of any breach of the JDA or any claims for breach.

As such, the JDA limitations provision does not apply to Xinuos' copyright claims.[17] To the extent

Defendants are arguing that they met a condition regarding release of the "IA-64 Product" that

purportedly triggered a license and Xinuos is arguing that the condition was not met and is

irrelevant in any event (*see supra*, note 15), failure to carry out acts that would trigger a conditional

license does not constitute a "breach." *See Wood v. Laughlin*, 103 A.D.2d 881, 881 (App. Div. 3rd

Dept. 1984) (where "a condition precedent" would trigger a right, "the failure of the condition …

is not a breach of contract …"); *Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 61

---

[16] IBM's penchant for reframing everything in Xinuos' complaint as related to "Project Monterey" is merely an attempt to transport Xinuos' claims back in time. But Xinuos' claims relate to copyright infringement that occurred long after Project Monterey, embedded in products and versions that *did not exist* during Project Monterey, and infringement of code that was neither part of nor licensed during Project Monterey. "Had plaintiff attempted to commence an action within the [time] period, the action would have been subject to dismissal as premature, as plaintiff's claim had not yet accrued." *Digesare Mech. v. U.W. Marx*, 1452, 112 N.Y.S.3d 306, 309 (2019).

[17] IBM's cases interpreting "related to" language (Mot. at 15 n.3) are inapposite. *L'Objet, LLC v. Ltd.* concerned an arbitration provision, and the court's interpretation of "related to" turned on the strong policy in favor of arbitration creating a presumption of arbitrability, which a party could only overcome with an affirmative assertion in the agreement that a claim is not covered. 2011 WL 4528297, at *2 (S.D.N.Y. Sept. 29, 2011). Such reasoning has no bearing on the interpretation of the JDA's provision. Further, *L'Objet* and *My Play City, Inc. v. Conduit Ltd.*, 589 F. App'x 559, 562 (2d Cir. 2014) both involved much broader provisions: "any claim arising out of or related to this agreement" and "[a]ny controversy or claim arising out of or related to" an agreement, respectively. The JDA's provision is decidedly narrower, requiring that the claim be "*related to a breach* of this Agreement" (emphasis added), not generally related to the agreement. By including "breach" in the JDA, the parties clearly intended to limit the contractual limitations period to claims for breach, not all claims having anything at all to do with the JDA as IBM contends.

N.Y.2d 106, 113 (1984) ("failure to fulfill a condition … is not, without an independent promise to perform the condition, a breach of contract …"); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46-47 (2d Cir. 2020) (failures to meet conditions that would entitle defendant to copyright license "sound in copyright infringement, not breach of contract.") (internal citation omitted).

### D. Even If Defendants Are Correct About the Application of the JDA, Then Infringement Claims Are Not Barred Because They Continue to Accrue.

In an attempt to muddy the waters, IBM argues that Xinuos lacks standing because its copyright claim purportedly "accrued a decade before the APA" and therefore was retained by SCO. Mot. at 14. At best, SCO could only assert infringement claims that accrued before it transferred its copyrights to Xinuos in full. But Xinuos' claims pertain to IBM's infringing acts that occurred *after* Xinuos' copyright acquisition, not those that accrued during SCO's ownership.

IBM cannot stand behind the JDA or APA to shield its wrongful conduct. Its continued infringement of, *inter alia*, Xinuos' post-1995 copyright is not subject to any statute of limitations arguments. As the Supreme Court has observed:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under the rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Petrella*, 572 U.S. at 671-72. In other words, even if IBM's interpretation is correct (it is not), Xinuos' continually-accruing claims would nonetheless, at the least, be actionable with a three-year lookback from the date of filing the lawsuit. *See id.; see also Fischer v. Forrest*, 2017 WL 128705, at *6-7 (S.D.N.Y. Jan. 13, 2017) (even where plaintiff knew of claim prior to 3-year period, it was entitled to damages for infringement 3 years prior to filing of complaint).

Here, Xinuos seeks redress for infringement occurring after it purchased the copyrights. It is not possible for SCO/TSG to have litigated this previously or retained the right to sue for current

infringement because it has no rights to the copyrights after the sale date. This is consistent with this court's holding in *ABKCO Music*, and it is IBM, not Xinuos, which misunderstands the significance of this case. The relevant portion states: "ABKCO's purchase of the 'He's So Fine' copyright *gave it the right to sue for infringements occurring after the transaction*." *ABKCO Music, Inc.*, 944 F.2d at 980 (emphasis added). The same is true of Xinuos here.[18] Certainly, IBM has sold infringing versions of IBM's AIX, IBM i or z/OS that did not exist at the time of SCO's complaint and were released after Xinuos acquired the copyrights. Jones Decl., Ex. RR ¶ 22-21. Therefore Xinuos' case could not have been – and was not – previously litigated. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997) ("the scope of litigation is framed by the complaint [in the prior action] at the time it is filed" and "[t]he res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated.").

Indeed, even if the JDA did govern this dispute (it does not), under the plain meaning of the contract, the limitations provision provides that each new claim for "*a* breach" is to be brought within two years of "the breach," making "a breach" possible at any time, not just at the end of Project Monterey, and could only, *at best*, limit bringing a claim for that particular breach within two years. In interpreting a contract, a court is "bound, first and foremost, by the terms' plain meaning." *Bank of New York Tr. Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 280 (2d Cir.

---

[18] Also, the doctrines of claim preclusion and claim splitting cannot apply to copyright claims that accrued after the date of filing of SCO's operative complaint, including Xinuos' claims here. *Rimini St. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1192 (D. Nev. 2020). For that reason, the cases cited by IBM (*Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002), *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013), *Digital Dynamics Software, Inc. v. Eclipse Gaming Sys.*, LLC, 2018 WL 2463378, at *5, *7 (N.D. Ill. June 1, 2018)) are inapposite. IBM's prior litigation with SCO involved an entirely different party and did not involve Xinuos. More importantly, that prior litigation did not involve the copyrights asserted by Xinuos here, nor was Xinuos a party to the settlement and release as discussed below. To the extent that IBM is claiming that it had a license to use the software, that is plainly a factual dispute related to IBM's *defense*, not Xinuos' infringement claims.

2013). It is well settled that the primary objective in contract construction is "to give effect to the intent of the [contracting] parties as revealed by the language they chose to use." *Bourne v. Walt Disney Co.*, 60 F.3d 621, 629 (2d Cir. 1995). Thus, even if the JDA were read to encompass copyright infringement, *each infringement* would be considered a breach and start accrual anew.[19]

Moreover, IBM's reading of the contractual limitations provision would render the provision unenforceable. IBM contends that the first time there is a breach of contract, every alleged breach or future accrued claim must be brought within two years of that first breach. While courts may enforce a contractual limitations period in some circumstances, if the limitations period impacts accrual of claims in a way that a party cannot bring a claim before the limitations period is triggered and expires, then such provisions are held to be unenforceable. *Executive Plaza, LLC v Peerless Ins. Co.*, 982 N.Y.S.2d 826, 829 (2014). A "limitation period" that expires before suit can be brought is not really a limitation period at all, but instead a nullification of the claim. *Id.*[20]

More fundamentally, Defendants' proposed interpretation of the limitation provision is contrary to the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b). Indeed, the

---

[19] Under New York law, parties to a contract are presumed to say what they mean and mean what they say. "Every clause or word in a contract is deemed to have some meaning" and "effect must be given to all its provisions." *Mazzaferro v. RLI Ins. Co.*, 50 F.3d 137, 140 (2nd Cir. 1995); *see also Laba v Carey*, 29 N.Y.2d 302, 308 (N.Y. 1971). The JDA in the first instance says "*a* breach" of the Agreement must be commenced no later than two years from the date of "*the* breach." JDA § 22.3. Use of the indefinite article "a," rather than the definite "the," before "breach" in the first use indicates any potential claim, or the possibility of numerous claims that can accrue at different times. *See, e.g., In re Residential Cap.*, 610 B.R. 725, 740 (S.D.N.Y. Bankr. 2019); *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 593 (S.D.N.Y. 2018) ("claims [are] premised on a continuing wrong each successive breach may begin the statute of limitations running anew") (internal quotation marks omitted). *Kwan*, 441 F. Supp. 2d at 501 (noting each successive breach "re-commences the statute of limitations such that damages can be awarded beginning 'from the date calculated by subtracting the limitations period from the date of filing.'") (quoting *West Haven v. Com. Union Ins.*, 894 F.2d 540, 546 (2d Cir. 1990)).

[20] IBM cites several cases in footnote 2—all non-binding and outdated. More recent New York cases comport with Xinuos' view that unreasonable limitations provisions should not be enforced. *See Digesare Mech. v. U.W. Marx*, 176 A.D.3d 1449, 1451 (2019) ("Although there is nothing inherently unreasonable about contractual six-month limitation period, 'an otherwise reasonable limitation period may be rendered unreasonable by an inappropriate accrual date.'"); *D & S Restor. v. Wenger Constr.*, 160 A.D.3d 924, 926 (2018); *Executive Plaza*, 982 N.Y.S.2d at 829.

Supreme Court in *Petrella* reaffirmed the importance of Congress's three-year statute of limitations and cautioned against restraints on its statutory period, rejecting the laches defense because "Congress' time provisions secured to authors a copyright term of long duration, and a right to sue for infringement occurring no more than three years back from the time of suit. That regime leaves little place for a doctrine that would further limit the timeliness of a copyright owner's suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014) (internal quotations omitted).[21] The Supreme Court's guidance would weigh against such a loose application of contractual provisions to limit a copyright holder's rights. Likewise, *Nimmer* espouses that a contractual limitation to narrow the three-year limitation would be "suspect," given that "[t]he elements required to prove breach of contract and copyright infringement typically differ…. The latter is not a suit 'arising out of this Agreement,' but arises instead from defendant's copying of plaintiff's statutorily protected material." Nimmer on Copyright § 12.05[A], FN 11.3 (2022).[22] Against this legal backdrop, the JDA's contractual limitation provision cannot limit Xinuos' statutorily guaranteed rights, and Defendants' interpretation should be rejected.[23]

---

[21] IBM's proposed reading of the JDA would nullify the applicability of the accrual rule. IBM cites *Putrelo Const. Co. v. Town of Marcy*, 964 N.Y.S.2d 812, 813 (2013) and *Matter of Oriskany Cent. Sch. Dist. (Edmund J. Booth Architects, A.I.A.)*, 615 N.Y.S.2d 160, 161 (1994), *aff'd*, 85 N.Y.2d 995 (1995); however, both of these cases are distinguishable not only because the relevant provisions specifically call out an accrual period, but also because the accrual limitation provisions applied to acts or failures occurring prior to or after "the relevant date of Substantial Completion." The JDA does not attempt to enforce an accrual limitation on a breach, nor does it limit an accrual or breach to a particular event or time frame. IBM's cases are therefore inapposite.

[22] Defendants attempt to argue the JDA limits the statutorily guaranteed time to bring an action under the Copyright Act, citing three out-of-circuit district court cases: *NAFRA Worldwide v. Home Depot U.S.A*, 2013 WL 12098772 (N.D. Ga. Aug. 23, 2013), *Ashland, Inc. v. Achiever Bus. Sols. Inc.*, 2005 WL 8161380, at *4 (S.D. Ohio Dec. 20, 2005), and *Entous v. Viacom Int'l*, 151 F. Supp. 2d 1150, 1155 (C.D. Cal. 2001). Defendants' theory is novel, as recognized in *NAFRA*, where the *Entous* case was the only one the *NAFRA* court could find to support this novel proposition. 2013 WL 1209877 at *10. This is unsurprising since IBM's theory would dramatically curb a copyright holder's ability to bring copyright infringement claims decades after a contract between parties expired merely because a tangentially related contract once existed.

[23] Throughout its motion, IBM stretches the Tenth Circuit's holdings in the Utah Litigation. Contrary to IBM's suggestion, the Tenth Circuit did *not* opine on the applicability of the contractual limitation to copyright claims. *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d

Yet, in spite of these clear facts and case law, Defendants attempt to limit Xinuos' rights to enforce its copyrights based a misreading of case law. For instance, Defendants' use of *Kwan* is wholly inapposite because that case involved an independent editor, Kwan, suing a writer and a publisher for copyright infringement claiming she was a sole author. *Kwan v. Schlein*, 634 F.3d 224, 227-28 (2d Cir. 2011). However, Kwan brought her claim six years after she sent letters to the other parties indicating that she should be an author. *Id*. Under the circumstances, the Second Circuit found "the dispute over [the book] does not involve the nature, extent or scope, of copying, and therefore, ownership forms the backbone of the 'infringement' claim at issue here." Accordingly, the court found that Kwan's three-year statute of limitations barred her claim. *Id.* at 229. That reasoning is inapplicable in this case where Xinuos sued IBM—a party with no ownership claim of any of the asserted copyrights—for IBM's unauthorized copying of Xinuos' acquired copyrights. Thus, the "backbone" of Xinuos' claim is IBM's infringing conduct, not any question about Xinuos' ownership of the copyrights. It was only after Xinuos filed this lawsuit that IBM attempted to manufacture an ownership dispute by purportedly settling claims Xinuos' copyright claims in a case IBM litigated against TSG. IBM's hurried settlement of the Utah Litigation does not create any ambiguity about the ownership of Xinuos' copyrights and its ability to sue IBM for infringing Xinuos' copyrights.[24]

---

1062 (10th Cir. 2018). Indeed, the Tenth Circuit's opinion is entirely consistent with Xinuos' view that its copyright claims are proper here where they legally require Xinuos to prove elements that are distinct from the contractual obligations in the JDA (*id.* at 1076), and that TSG/SCO's misappropriation claim was *not* preempted by the Copyright Act. *Id.* at 1080.

[24] Defendants' uses of *Big East Entmt.* and *Newsome* are inapt for the same reasons as *Kwan*. *Big East Entmt.* involved a plaintiff alleging ownership of a copyrighted work who sued the registered owner of the copyrighted work thirteen years after the plaintiff learned of the registered owner's existence and its copyright enforcement efforts. *Big East Entmt., Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788, 792-93 (S.D.N.Y. 2006). Similarly, in *Newsome* the court found that to the extent a plaintiff asserted she alone owns the copyright instead of the defendant, her claim to determine ownership was untimely because it was more than three years after she learned of the existence of a co-owner. *Newsome v. Brown*, 209 F. App'x 11, 13 (2d Cir. 2006). Here, IBM does not have any ownership in the copyrights, nor was there any dispute over copyright ownership until IBM attempted to manufacture one in the bankruptcy proceedings.

Defendants also misconstrue the discovery rule in order to improperly narrow Xinuos'

claim. "[A] copyright infringement claim *accrues* when a plaintiff discovers, or with due diligence

should have discovered, the relevant infringement." *PK Music Performance, Inc. v. Timberlake*,

No. 16 Civ. 1215 (VSB), 2018 WL 4759737 at *7 (S.D.N.Y. Sept. 30, 2018) (citing *Psihoyos*, 748

F.3d at 124) (emphasis added). The discovery rule requires that a defendant produce evidence "that

would have been sufficient to awaken inquiry." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*,

345 F. Supp. 3d 482, 512 (S.D.N.Y. 2018) (finding that evidence in the record was insufficient to

determine when the statute of limitations began to run).

Defendants' reliance on *Minden* is curious. As one judge in this district noted, *Minden's*

fact pattern is readily distinguishable in many copyright cases, including this one, since "[i]n that

case, the copyright holder had filed 36 lawsuits, beginning in 2010, eight years before it brought

suit against [the defendant], claiming that it had not discovered the allegedly infringing use of its

photographs—some which were posted as early as 2011—until 2017." *Parisienne v. Scripps*

*Media, Inc*., No. 19 CIV. 8612 (ER), 2021 WL 3668084 at *4 (S.D.N.Y. Aug. 17, 2021) (citing

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019)). Furthermore,

the *Parisienne* court declined to impose on the plaintiff a "general duty to police the internet to

discover [a defendant's] use of his [p]hotograph[s]," and found that the defendant failed to provide

"sufficient evidence or explanation for how [the plaintiff] should have known about the alleged

infringement, or been put on inquiry notice, between March 15, 2016 and September 21, 2016,

when he retained counsel." *Id.* at *2, *4-5. Thus, the Court held that the defendant failed to meet

its burden of proof to show the plaintiff's complaint was untimely. *Id*.

Here, Defendants offer nothing more than speculation as to what Xinuos should have

known and when. Unlike *Minden* and *Parisienne*, which involved photographs on websites,

Xinuos' copyright claim involves detailed and complex source code embedded in Defendants'

products that would need to be investigated in detail in order to identify evidence of infringement. In any case, Xinuos had no duty to affirmatively police other software for infringement. Defendants have simply failed to proffer any evidence that Xinuos discovered or should have discovered the infringements earlier. Such a thin record—especially without the benefit of discovery—is insufficient to grant summary judgment on this fact-intensive affirmative defense.

More importantly, nothing related to accrual would bar Xinuos' claims from moving forward in any event because Xinuos alleges infringement that have occurred in the preceding two and three years before this litigation was filed, as IBM continues to incorporate Xinuos' code into its products. Accrual cannot be the basis for summary judgment unless all claims occur.

### III.   The Bankruptcy Court Did Not Grant Defendants Permission to Infringe Xinuos' Copyrights with Impunity.

Defendants' misleading contention that the bankruptcy court's approval of the TSG's settlement and release of claims against IBM is evidence that Xinuos "lacks standing to sue IBM concerning Project Monterey" (Mot. at 19) is wrong for at least two reasons. First, it is simply not true that the bankruptcy court considered and overruled Xinuos' objections. To the contrary, the bankruptcy court was clear that it was not expressing *any* opinion about the effect of TSG's settled claims on Xinuos' new claims: "Xinuos bought assets. And, if there are claims or causes of action arising from them, another Court of competent jurisdiction will decide that. That's an issue involving two separate non-debtors …. And, for the avoidance of doubt, you know -- there are no third-party releases. And, to the extent that there are any claims or causes of action that belong to other parties, that may be legitimately presented, this settlement does not affect them." Jones Decl. Ex. PP at 24:7-11; 25:2-5. Thus, as the bankruptcy court acknowledged, because Xinuos was not a party to the settlement, there is no legal mechanism to enforce its terms against Xinuos. *Id.*

Second, the fact that the court did not find it necessary to include Xinuos' proposed

language in the settlement and release is not a "rejection" of Xinuos' standing to bring suit here because the settlement and release does nothing more than state what is already legally required of the parties to the settlement, i.e. TSG and IBM. "An owner who wishes to release unilaterally his own accrued claims may do so using whatever language he chooses -- including by calling the negotiated settlement the proverbial 'banana' -- but such an agreement cannot have the effect of eviscerating a co-owner's claims based on past copyright infringement, nor can it settle accrued claims held by co-owners who are not themselves parties to the agreement." *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007). The case is even stronger here because TSG was *not even* a co-owner of the copyrights, having transferred all title and interest in the copyrights to Xinuos. Defendants certainly could have ceased its infringing conduct at any point. But upon Xinuos' filing of the present litigation, it opted instead to ram through a legally deficient effort to settle *this* case through a settlement agreement in *another* case with an *unrelated* third-party to this litigation.[25] The Second Circuit is clear that such conduct which seeks to lower the cost of infringement will not (and cannot) preclude Xinuos' copyright claims. *Davis*, 505 F.3d at 104.

## CONCLUSION

For the foregoing reasons, Xinuos respectfully requests that the Court deny Defendants' partial motion for summary judgment, set a further case management conference, and order Defendants to respond to Xinuos' outstanding discovery requests.

---

[25] Defendants omit critical facts from cases cited for the false proposition that the mere existence of a settlement and release extinguishes Xinuos' claims. Notably, each of those cases involved plaintiffs who themselves previously released claims against their opponent. *See Fernandez v. City of New York*, 2020 WL 4605238 *5-6 (S.D.N.Y. Aug. 11, 2020); *Pickwick Commc'ns, Inc. v. Weinberg*, 1994 WL 620950 at *1 (S.D.N.Y. Nov. 8, 1994) ("a general release *executed and delivered by defendants*" precluded affirmative defenses) (emphasis added); *Gamble v. Tyson*, No. 17CV06635LAKSN, 2019 WL 5722129, at *4, 7-8 (S.D.N.Y. Jan. 4, 2019). Defendants have not cited—and cannot cite—any case in which a broad general release was held to be enforceable against a non-party to the release. *See, e.g.*, *Viesti Assocs.*, 2014 WL 1053772, at *6-7 (party that was not legal or beneficial owner of copyright had no right "to initiate and settle lawsuits"). As discussed above, TSG simply had no legal authority to settle copyright claims that accrued during Xinuos' ownership of the copyrights at issue.

Respectfully submitted,

Dated:  February 17, 2023

/s/ *Gabriel M. Ramsey*
Gabriel M. Ramsey

Gabriel M. Ramsey*
  gramsey@crowell.com
Warrington S. Parker*
  wparker@crowell.com
Molly A. Jones
  mojones@crowell.com
Joachim B. Steinberg
  jsteinberg@crowell.com
Jacob S. Canter*
  jcanter@crowell.com
Ryan Merker
  rmerker@crowell.com
Maria Sokova*
  msokova@crowell.com
Kimberly S. Mejía-Cuéllar*
  kmejiacuellar@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415-986-2800

Mark A. Klapow
  mklapow@crowell.com
Kyle N. Pham*
  kpham@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Telephone: 202-624-2500

(*Admitted pro hac vice)

*Attorneys for Plaintiff Xinuos, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on this 17th day of February, 2023, I caused the foregoing document to be served via electronic mail on the following parties:


Stefan B. Herpel
sherpel@dnfvi.com
**DUDLEY NEWMAN FEUERZEIG LLP**
1131 King Street
Ste 204
St. Croix, VI 00820
(340)773-3200

David R Marriott
dmarriott@cravath.com
Emma Kolesar
ekolesar@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
(212) 474-1000


_/s/ Kaman Chow_
Kaman Chow