UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XINUOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORP. AND RED HAT, INC., <br><br> Defendants. | Case No.: 7:22-cv-09777-CS |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..................................................................................................................................1

I.     XINUOS DOES NOT HAVE ANTITRUST STANDING. ...............................................1

II.    XINUOS DOES NOT ALLEGE A PLAUSIBLE MARKET. ..........................................2

III.   XINUOS FAILS TO ALLEGE MARKET POWER............................................................4

IV.  XINUOS FAILS TO ALLEGE ANTICOMPETITIVE CONDUCT. ...............................5

V.    XINUOS DOES NOT ALLEGE A PLAUSIBLE SECTION 7 CLAIM. ..........................8

VI.  XINUOS'S VIRGIN ISLAND LAW CLAIMS FAIL. .......................................................9

CONCLUSION ...............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
813 F. Supp. 2d 569 (S.D.N.Y. 2011)..................................................................................2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................9

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979).................................................................................................2

*Brown Shoe Co. v. U.S.*
370 U.S. 294 (1962).............................................................................................................2

*Chapman v. N.Y. State Div. for Youth*,
546 F.3d 230 (2d Cir. 2008)..............................................................................................2, 3

*Eatoni Ergonomics, Inc. v. Research in Motion Corp.*,
826 F. Supp. 2d 705 (S.D.N.Y. 2011)..................................................................................6

*G-I Holdings v. Baron & Budd*,
238 F. Supp. 2d 521 (S.D.N.Y. 2002)................................................................................10

*Gardiner v. St. Croix Dist. Governing Bd. of Directors*,
2019 WL 3814427 (V.I. Super. Ct. July 30, 2019).............................................................10

*In re Aluminum Warehousing Antitrust Litig.*,
95 F. Supp. 3d 419 (S.D.N.Y. 2015)....................................................................................1

*In re Aluminum Warehousing Antitrust Litig.*,
833 F.3d 151 (2d Cir. 2016).................................................................................................1

*In re German Auto. Mfrs. Antitrust Litig.*,
2020 WL 1542373 (N.D. Cal. Mar. 31, 2020).....................................................................7

*In re Term Commodities Cotton Futures Litig.*,
2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020).................................................................4, 5

*In re Zinc Antitrust Litig.*,
155 F. Supp. 3d 337 (S.D.N.Y. 2016)..................................................................................7

*Kelco Disposal, Inc. v. Browning-Ferris Industries of Vermont, Inc.*,
845 F.2d 404 (2d Cir. 1988).................................................................................................5

*La Preferida, Inc. v. La Victoria Foods, Inc.*,
   1978 WL 1402 (N.D. Ill. Aug. 2, 1978) ................................................................................8

*Lavoho, LLC v. Apple, Inc.*,
   232 F. Supp. 3d 513 (S.D.N.Y. 2016) ..................................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................................6

*Novartis Pharma AG v. Regeneron Pharma., Inc.*,
   582 F. Supp. 3d 26 (N.D.N.Y. 2022) ...................................................................................3

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*,
   883 F.2d 1101 (1st Cir. 1989) ..............................................................................................8

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018) .........................................................................................................5

*PepsiCo, Inc. v. Coca-Cola Co.*,
   315 F.3d 101 (2d Cir. 2002) .................................................................................................5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) .................................................................................................3

*Steves and Sons Inc. v. JELD-WEN Inc.*,
   988 F.3d 690 (4th Cir. 2021) ................................................................................................9

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) .................................................................................................2

*Tops Markets, Inc. v. Quality Market, Inc.*,
   142 F.3d 90 (2d Cir. 1998) ...................................................................................................4

*U.S. v. E. I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) .............................................................................................................4

*Valassis Communications, Inc. v. News Corp.*,
   2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ........................................................................6

*Yearwood Enter., Inc. v. Antilles Gas Corp.*,
   2017 WL 2709831 (V.I. Super. Ct. June 21, 2017) .......................................................9, 10

**Statutes & Rules**

15 U.S.C. § 1 ................................................................................................................................9

15 U.S.C. § 2 ................................................................................................................................9

11 V.I.C. § 1503(2) .......................................................................................................................9

11 V.I.C. § 1503(3) ......................................................................................................................... 9

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law ¶ 348b ................................................................................ 7

Areeda & Hovenkamp, Antitrust Law ¶ 782b ................................................................................ 2

**PRELIMINARY STATEMENT**

Xinuos does not dispute that conclusory allegations are insufficient to sustain a complaint. Nor does it dispute that it was required to plead specific facts showing that its allegations are at least plausible. Yet, Xinuos's opposition either ignores the shortcomings identified in Defendants' motion to dismiss (ECF. No. 119, the "Motion") or falls back on conclusory or implausible allegations. Nothing in Plaintiff's opposition salvages its complaint, which should therefore be dismissed.

**ARGUMENT**

**I.   XINUOS DOES NOT HAVE ANTITRUST STANDING.**

To a survive a motion to dismiss, Xinuos was required to allege that "(i) it suffered an antitrust injury, and (ii) it is an acceptable plaintiff to pursue the alleged antitrust violations". *See In re Alumninum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016). While Xinuos claims that its allegations pass muster, they in fact fall short.

The Complaint alleges that Xinuos was harmed. But antitrust injury requires harm to competition, not just harm to an individual plaintiff. *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 440 (S.D.N.Y. 2015) (citation omitted). Xinuos does not dispute this, but argues that it has plausibly alleged harm to competition. (Opp. at 8.) To support this argument, Xinuos relies generally on allegations that Defendants locked in customers and disseminated false information. (Opp. at 8-9.) But it fails to address the lack of supporting facts—and in some cases contradictory facts—that Defendants' motion addresses with respect to these allegations. (Mot. at 12.) For instance, Xinuos asserts that lock in can harm competition but does not explain how lock in is applicable here with sophisticated purchasers and no aftermarkets, nor does it cite any cases that address this issue. (Opp. at 8-9; Mot. at 12.) Similarly, publication and dissemination of false or misleading information is presumed *not* to

1

harm competition, unless other representations, such as the misleading information was presented to buyers without knowledge of the subject matter, are alleged, which they are not here. *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 288 n.41 (2d Cir. 1979) (a plaintiff asserting a monopolization claim based on misleading advertising must "overcome a presumption that the effect on competition of such a practice was *de minimis*."); Areeda & Hovenkamp, Antitrust Law ¶ 782b.  In fact, to the extent competition is discussed in the Complaint, Xinuos's allegations are consistent with strong competition.  (*See* Compl. ¶¶ 97–103; 150–153.)  Xinuos thus does not have antitrust standing.

II.     **XINUOS DOES NOT ALLEGE A PLAUSIBLE MARKET.**

Even if Xinuos had adequately alleged standing, the Complaint fails properly to plead a relevant antitrust market.  Xinuos does not dispute that an appropriate market definition depends on reasonable interchangeability of use and cross-elasticity of demand.  *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962).  Nor does it dispute that the Complaint addresses only one of the six *Brown Shoe* factors and makes no mention of the hypothetical monopolist test, the traditional touchstones of market definition.  *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008); *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 575 (S.D.N.Y. 2011).

Instead, Xinuos contends that market definition is a fact-intensive inquiry not appropriately resolved on a motion to dismiss.  (Opp. at 11.)  While it is true that market definition cannot always be decided on a motion to dismiss, the law is clear that a complaint fails where, as here, it lacks the requisite factual allegations, such as facts that are probative of the missing *Brown Shoe* factors and cross-elasticity of demand.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve . . . failure even to attempt a plausible explanation as to why a market should be limited

2

in a particular way.") (cited in Opp. at 11); *see also Novartis Pharma AG v. Regeneron Pharma., Inc.*, 582 F. Supp. 3d 26, 40-41 (N.D.N.Y. 2022) ("[A] plaintiff's definition of the product market that fails to reference the rule of reasonable interchangeability and cross-elasticity of demand or else clearly does not encompass all interchangeable substitute products is legally insufficient and may be dismissed even at the pre-answer stage.")

Xinuos purports to explain its exclusion of non-Unix and Linux OSes with similar functionality and "free" server OSes from the market, but the explanations make no sense. Xinuos says its market excludes non-Unix and Linux paid server OSes because they are "distinct from other architectures". (Opp. at 11.) But for support, the Complaint alleges only that the architectures are not interchangeable such that there is not an easy migration option if enterprise customers want to switch *after* purchasing. (Compl. ¶¶ 40-41.) This is not the test. *See Chapman*, 546 F.3d at 238 ("Interchangeability implies that one product is roughly equivalent to another for the use to which it is put".) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997)). Moreover, the Complaint implicitly admits that other OSes are competitors. (*See, e.g.*, Compl. ¶ 109 (stating that the alleged conduct was meant to capture customers, "who might have otherwise moved to competing operating systems, *including* competing Unix operating systems like the products of Xinuos or other forms of Linux.") (emphasis added).)

Similarly, Xinuos argues that "free" OSes are excluded from the relevant market because they lack "adjacent software to maintain reliable environments" that is required by enterprise users. (Opp. at 11.)[1] The Complaint provides no facts to support this. Nor does it explain, if in

---

[1] Xinuos also argues that Defendants have read too much into the word "free" in "FreeBSD" (Opp. at 11 n. 4), but the Complaint states that FreeBSD "is a *free* and open-source variant of the Unix operating system". (Compl. ¶ 13 (emphasis added).)

3

fact enterprise users required this additional software, why non-enterprise users—a group excluded from Xinuos's proposed market—would not also require the alleged software support. Because Xinuos has not even attempted to defend its flawed market definitions, the Complaint should be dismissed.

**III.     XINUOS FAILS TO ALLEGE MARKET POWER.**

Xinuos's failure to properly define a relevant market forecloses its market power allegations. But that is not the only reason the Complaint fails to properly plead market power. Market power is either "the power to control prices or exclude competition". *U.S. v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). As Defendants explain in their Motion, Xinuos has not adequately alleged either. The Complaint alleges that IBM and Red Hat raised prices, but it does not allege they raised prices above competitive levels or prevented new competitors from entering the market or pushing existing competitors to increase output. *See Tops Markets, Inc. v. Quality Market, Inc.*, 142 F.3d 90, 98 (2d Cir. 1998) (rejecting market power as too speculative without any support, "that no other competitors would enter the market were [Defendant] to raise its prices."). Moreover, the allegations that Xinuos claims indirectly establish market power (through market share) are post-merger as opposed to pre-merger and thus cannot support Xinuos's pre-merger allegations.

Rather than seriously contend with Defendants' arguments, Xinuos's opposition reiterates the insufficient allegations debunked in Defendants' opening brief. Xinuos argues that the allegations about prices increases—even without any assertions about price control or exclusions of competition—are sufficient to show direct evidence of market power. (Opp. at 10.) The sole case Xinuos cites, however, *In re Term Commodities Cotton Futures Litig.*, is inapposite. 2020 WL 5849142, at *35 (S.D.N.Y. Sept. 30, 2020). That case dealt with an alleged price squeeze in a futures market where market power was easily assessed because defendants acquired a

4

dominant long position, which necessarily meant they controlled the market. *Id.* at 24-25, 35. Xinuos does not explain how such a financial futures market is relevant to the assessment of the market in this case.

Xinuos also repeats the allegation that there are "high barriers to market entry" to argue that it has proven indirect evidence of market power. (Opp. at 12.) But, the Complaint does not plead, as it must in order to survive a motion to dismiss, that Defendants had a dominant share of the *pre-merger* market or specify what the barriers to entry are or even that the market has characteristics that make monopolization a "dangerous probability" as in the case Xinuos cites. *Kelco Disposal, Inc. v. Browning-Ferris Industries of Vermont, Inc.*, 845 F.2d 404, 409 (2d Cir. 1988) (finding a market with "inelastic" consumer demand and historically only one or two competitors potentially susceptible to monopolization.) Xinuos cites to no specific market shares in its opposition, only alleging that Defendants market share is "dominant". (Opp. at 5, 12-15.) Moreover, as Defendants explain in the Motion, Xinuos fails to provide any details on how exactly "enterprise customer[s]" become unknowingly locked in to server OSes. This is especially true here, where Xinuos does not allege any after-market monopolization, which is typically the only time lock-in comes into play. Accordingly, the Complaint should be dismissed on the basis that it fails to adequately allege market power.

## IV. XINUOS FAILS TO ALLEGE ANTICOMPETITIVE CONDUCT.

Even if Xinuos had pled standing and market power in a relevant antitrust market, the Complaint fails adequately to allege anticompetitive conduct, which is required to state a claim. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). Xinuos attempts to state a claim by arguing that the sum of Defendants' conduct is illicit even if the individual parts are innocuous, arguing that Defendants' "slice and dice" Xinuos's allegations. (Opp. at 12-13.) This is not the case. Rather, Defendants

5

examine all of the Complaint's alleged misconduct and its effects on the market and why, separate or combined, these allegations never plausibly state how that conduct harmed competition. Where two actions are themselves not anticompetitive, their sum cannot be either. *See, e.g.*, *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011) ("But [Plaintiff] does not, and cannot, cite any authority for the proposition that a series of unilateral acts that do not violate the antitrust laws may be aggregated into an unlawful 'course of conduct'."); *Valassis Communications, Inc. v. News Corp.*, 2019 WL 802093, at *9 (S.D.N.Y. Feb. 21, 2019) ("[I]t is unlikely that multiple independently lawful acts can come together to create an unlawful monopoly 'broth' from which antitrust injury can arise."). Here, all of the individual allegations of anticompetitive conduct—market allocation, cross-promoting, sharing technical information, "jointly taking specific technical steps to exclude Xinuos", refusing to deal with Xinuos and copyright infringement (Compl. ¶ 89)—are themselves unactionable as pled and thus cannot together make out an antitrust claim.

Ignoring most of the Complaint's shortcomings identified in Defendants' motion, Xinuos focuses its opposition almost entirely on the alleged agreement between the parties to split the market. (Opp. at 12-18.) But, as explained in Defendants' motion, these allegations are not actionable. *First*, Xinuos could not have been harmed by the alleged market allocation and therefore cannot bring an action from such a scheme. As a competitor in the market that Defendants allegedly divided, Xinuos would have benefited from reduced competition. Supreme Court precedent is clear that competitors lack standing to sue for alleged market allocation, because such restrictions "actually benefit competitors by making supracompetitive pricing more attractive." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986) (no cognizable antitrust claim for competitors who would benefit from an alleged conspiracy);

*Lavoho, LLC v. Apple, Inc.*, 232 F. Supp. 3d 513, 525 (S.D.N.Y. 2016); *see also* Areeda & Hovenkamp, Antitrust Law ¶ 348b ("When a . . . market division . . . substantially reduces competition, consumers suffer while existing rivals benefit.  As the Supreme Court recognized, a plaintiff competitor is not injured in fact when rivals restrict their output, thus allowing the plaintiff to enjoy higher prices, greater output, or both.").  Xinuos does not dispute this.

*Second*, Xinuos's allegations lack the specificity necessary to allow the Court to connect the dots and draw a plausible picture of an agreement to allocate the market.  *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 375 (S.D.N.Y. 2016) (rejecting a Section 1 because there were "simply not enough dots to connect to draw a plausible picture of an agreement.")  Rather, the alleged market division is entirely consistent with competition.  For instance, Xinuos's opposition points out that "IBM paid customers to take the competing Red Hat OS instead of its own", Defendants "pushed IBM's OSs in the high-end of the market where Red Hat provided access to its 'large accounts'", and "IBM pushed Red Hat's OS as the 'option for [small and medium sized businesses]'." (Opp. at 16.)  Even assuming all of this is true, at most, it identifies a practice by which IBM and Red Hat openly referred customers to each other when their respective offerings were not what the customer preferred.  This is not enough to allege a valid claim.  *See In re German Auto. Mfrs. Antitrust Litig.*, 2020 WL 1542373, at *8, 10 (N.D. Cal. Mar. 31, 2020) (dismissing Sherman Act claim where there was no "plus factor" and conduct was equally consistent with independent action.)

Xinuos's opposition also points to Defendants sharing technical information including alleged copyrighted materials.  But Xinuos is unable to explain how sharing information of the type alleged has harmed competition or to cite to any case that does.  Xinuos argues that copyright infringement "can form the basis for a Section 1 claim". (Opp. at 18.)  However, even

7

assuming Xinuos is right as a general matter, it does nothing to explain how the alleged copyright infringement constitutes an antitrust violation in this case.  The Complaint alleges that IBM shared the benefits of copyrighted information with Red Hat.  (Compl. ¶ 78.)  Yet the Complaint never makes clear how sharing that information or the other technical information harmed competition.  In the case Xinuos cites, *La Preferida, Inc. v. La Victoria Foods, Inc.*, the complaint alleged that trade secrets were used for the specific purpose of preventing plaintiff from introducing a competing line and thus harming competition.  1978 WL 1402, at *4 (N.D. Ill. Aug. 2, 1978).  The Complaint here does not contain similar allegations.

In its opposition, Xinuos does not discuss the alleged refusal to deal or the alleged "technical steps to exclude Xinuos".  In fact, Xinuos appears to abandon the refusal to deal argument.  (Opp. at 18 n. 9.)  These allegations are unsupportable and cannot stand.

V.        **XINUOS DOES NOT ALLEGE A PLAUSIBLE SECTION 7 CLAIM.**

Xinuos's Section 7 claim fares no better, as the Complaint fails to plausibly allege that the merger between IBM and Red Hat substantially lessened competition.  Xinuos alleges that IBM and Red Hat engaged in the exact same behavior with the exact same effects both pre- and post-merger, and it does not allege why the other competitors remaining in the market are unable to compete because of the merger.

Nowhere in its opposition does Xinuos allege harm to a relevant market after the merger; it simply argues that IBM raised prices and lowered its costs after the merger.  (Opp. at 20.)  Even taking these allegations as true—and the pricing allegations are not true—neither is sufficient to show that a merger is anticompetitive.  Finding synergies and lowering costs is in fact a procompetitive benefit of a merger that the law not only allows but encourages.  *See Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101, 1111 n.11 (1st Cir. 1989) ("achieving lower costs is a legitimate business justification").  And

higher post-merger prices alone are not enough to make a claim either because the prices must be *supracompetitive* to violate the antitrust laws. Xinuos does not allege anywhere that IBM's post-merger price increases were unique to it (as opposed to industry-wide) or were supracompetitive or that Xinuos and its much larger competitors (Microsoft, Apple, HP, Oracle, Ubuntu, Canonical, SUSE, etc.) were unable to compete through lower prices. (*See* Compl. ¶¶ 166-70.)

Xinuos argues that the fact that federal and global antitrust authorities scrutinized and approved the at-issue merger is irrelevant. That is incorrect. Although not dispositive, the fact that federal agencies reviewed the merger and ultimately approved it cuts against Xinuos. To survive a motion to dismiss, Xinuos was required to plead allegations that are not merely consistent with anticompetitive behavior but also factors that "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The fact that federal agencies allowed the merger weighs against the argument that the allegations suffice. The one case Xinuos cites in support of its theory that Section 7 claims are viable after regulatory scrutiny, *Steves and Sons Inc. v. JELD-WEN Inc.*, does not controvert that. 988 F.3d 690, 700-02 (4th Cir. 2021) (Defendant delayed in notifying the transaction and regulatory clearance was based, in part, on a long term contract that was found to have been violated and which were terminated by the Defendant.).

## VI. XINUOS'S VIRGIN ISLAND LAW CLAIMS FAIL.

Obscured in Xinuos's discussion about the Virgin Islands Antimonopoly Law is that the statute's content is substantively identical to Sections 1 and 2 of the Sherman Act. *Compare* 11 V.I.C. §§ 1503(2), (3); *with* 15 U.S.C. §§ 1, 2. Although federal precedent is not *binding* on how to interpret the Antimonopoly Law, Xinuos's own core citation notes that it is absolutely *persuasive* authority. *See Yearwood Enter., Inc. v. Antilles Gas Corp.*, 2017 WL 2709831, at *3 (V.I. Super. Ct. June 21, 2017). Given that Xinuos does not identify any Virgin Islands

precedent suggesting that the Antimonopoly Law is more expansive than the Sherman Act or renders conduct illegal that the Sherman Act does not, the same logic requiring dismissal of the federal antitrust claims applies to the Antimonopoly Law claims. *See id.* at *4-*8 (dismissing Antimonopoly Law claim because it was inadequately pled); Mot. at 23 (collecting cases showing same).

Xinuos's argument on its unfair competition claim (Opp. at 22) appears to be that the Virgin Islands Supreme Court could recognize a common law unfair competition claim, notwithstanding that unfair competition is already addressed by the Antimonopoly Law. *See Gardiner v. St. Croix Dist. Governing Bd. of Directors*, 2019 WL 3814427, at *7 (V.I. Super. Ct. July 30, 2019) (noting "[t]he Defendants are correct in their assertion that unfair competition is prohibited under § 1503 of the Virgin Islands Antimonopoly Law," and dismissing claim because the plaintiff failed to state an antitrust claim). This is not an issue concerning the common law of the Territory requiring resolution by the Virgin Island Supreme Court (and hence a prediction of how the Virgin Islands Supreme Court would rule); the people of the Virgin Islands have already spoken about this claim through legislation, and so this claim fails.

As for unjust enrichment, it is irrelevant that Xinuos asserts the claim in the alternative. Xinuos unquestionably seeks a legal remedy (money damages), rendering its unjust enrichment claim unviable under Virgin Islands law. (Mot. at 24.) Xinuos's citation to *G-I Holdings v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002), does not apply Virgin Islands law or even unjust enrichment, and is thus inapplicable.

## CONCLUSION

For the foregoing reasons, IBM and Red Hat respectfully request that this Court dismiss Xinuos's Sherman Act, Clayton Act and Virgin Islands law claims, and award it attorneys' fees incurred in the defense of this case.

DATED:  March 6, 2023

                                        Respectfully submitted,

                                        /s/ *David R. Marriott*
                                        **CRAVATH, SWAINE & MOORE LLP**
                                        David R. Marriott
                                        Michael J. Zaken
                                        Worldwide Plaza
                                        825 Eighth Avenue
                                        New York, New York 10019
                                        Tel: (212) 474-1000
                                        Fax: (212) 474-3700
                                        dmarriott@cravath.com
                                        mzaken@cravath.com

                                        *Attorney for Defendants International Business Machines Corp. and Red Hat, Inc.*