**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XINUOS, INC., <br><br>                                   Plaintiff, <br><br>             -against- <br><br> INTERNATIONAL BUSINESS MACHINES CORP. and RED HAT, INC., <br><br>                            Defendants. | Case No. 7:22-cv-09777-CS |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.      XINUOS HAS NO RIGHT TO ASSERT THE ALLEGED COPYRIGHT
        CLAIM. ............................................................................................................... 1

        A.      Xinuos's "Impossibility" Argument Is Inapposite. ................................. 1

        B.      The Plain Language of the APA Forecloses Xinuos's Claim. ................. 4

        C.      Xinuos's Resort to Extrinsic Evidence is Unavailing. ........................... 4

II.     PLAINTIFF'S CLAIM IS TIME-BARRED. ........................................................ 5

        A.      The Limitations Provision Is Operative. ................................................ 5

        B.      The JDA Applies to the Copyrights and Products at Issue. .................... 6

        C.      The Limitations Provision Applies to Xinuos's Supposed Claim. .......... 7

        D.      Plaintiff's Continuing Violation Theory Lacks Merit. .......................... 8

III.    THE BANKRUPTCY COURT APPROVALS UNDERCUT XINUOS'S
        CLAIMS. ............................................................................................................. 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland, Inc. v. Achiever Bus. Sols. Inc.*,
No. C2-05-247, 2005 WL 8161380 (S.D. Ohio Dec. 20, 2005)................................9

*Bathla v. 913 Mkt., LLC*,
200 A.3d 754 (Del. 2018) ................................................................................4

*Capri Sun GmbH v. Am. Bev. Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022)................................................................7

*Entous v. Viacom Intern., Inc.*,
151 F. Supp. 2d 1150 (C.D. Cal. 2001) ..........................................................9

*Fleisig v. Man Cap. Mkts., Inc.*,
No. 19cv8217 (DLC), 2021 WL 2678675 (S.D.N.Y. June 30, 2021) .......................7

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
780 F.2d 189 (2d Cir. 1985)............................................................................3

*L'Objet, LLC v. Limited*,
No. 11 Civ. 3856(LBS), 2011 WL 4528297 (S.D.N.Y. Sept. 29, 2011) ...................8

*Meridian Consulting I Corp. v. Eurotec Canada Ltd.*,
No. 19-22197 (KM) (ESK), 2021 WL 689132 (D.N.J. Feb 22, 2021)....................6

*My Play City, Inc. v. Conduit Ltd.*,
589 F. App'x 559 (2d Cir. 2014) ....................................................................8

*NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*,
No. 1:12-CV-02808-AT, 2013 WL 12098772 (N.D. Ga. Aug. 29, 2013) ...............9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)........................................................................................9

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*,
879 F.3d 1062 (10th Cir. 2018) ...............................................................3, 6, 7

*Silverpop Sys. v. Leading Mkt. Techs., Inc.*,
641 F. App'x 849 (11th Cir. 2016) ..................................................................6

*Sohm v. Scholastic Inc.*,
959 F.3d 39 (2d Cir. 2020)..............................................................................8

*Turtur v. Rothschild Registry Intern., Inc.*,
26 F.3d 304 (2d Cir. 1994)..............................................................................7

i

*U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolock, Ltd.*,
    612 F. App'x 671 (4th Cir. 2015) .............................................................................6

**Statutes & Rules**

17 U.S.C. 501(b) ....................................................................................................................2

## PRELIMINARY STATEMENT

Xinuos argues its copyright claim is protected from summary judgment by "two indisputable settled legal principles".  (ECF No. 126 ("Opp.") at 1.)  But neither principle applies.  Both law and facts that Xinuos cannot dispute preclude its claim.  Summary judgment should be entered in favor of Defendants.

## ARGUMENT

## I.   XINUOS HAS NO RIGHT TO ASSERT THE ALLEGED COPYRIGHT CLAIM.

As set out in Defendants' Motion (ECF No. 122), Xinuos cannot pursue its copyright claim based on the plain language of the SCO/Xinuos APA, the IBM/Santa Cruz JDA, and the IBM/SCO Settlement Agreement.  Xinuos does not (and cannot) dispute the terms of the APA, the JDA, or the Settlement Agreement.  Nor does it dispute that IBM and SCO litigated the central issue presented by SCO's copyright claim—whether IBM stole the disputed code in breach of the JDA or obtained a license under the JDA—for nearly two decades and resolved the dispute with SCO, releasing any claim IBM breached the JDA.  Instead, Xinuos (i) falls back on a legal principle that is inapposite, (ii) misstates the governing agreements, and (iii) resorts to extrinsic evidence that is incomplete and legally irrelevant.

### A.   Xinuos's "Impossibility" Argument Is Inapposite.

Lacking support in the APA, which is clear that SCO retained the right to sue IBM for allegedly misusing the code it obtained during Project Monterey, Xinuos contends that SCO necessarily gave Xinuos the right to sue IBM for copyright infringement when it transferred copyrights to Xinuos.  According to Xinuos, it was legally impossible (as a matter of copyright law) for SCO to transfer copyrights to Xinuos and retain the right to sue for future infringement of those copyrights.  While it is true as a general matter that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that

particular right committed while he or she is the owner of it," 17 U.S.C. 501(b), this principle is

of no help to Xinuos, because (i) Xinuos's purported copyright claim accrued, by agreement,

before Xinuos acquired the asserted copyrights (at the time IBM is alleged to have stolen the

disputed code); and (ii) the claim depends on other claims that also accrued before Xinuos

acquired the asserted copyrights and that have been released.  Thus, Xinuos's reliance on Section

501(b) and the cases interpreting it is misplaced.

By agreement of IBM and Santa Cruz (Xinuos's alleged predecessor before SCO), the

claim Xinuos now seeks to assert accrued when SCO owned the copyrights.  As part of Project

Monterey, Santa Cruz and IBM agreed that "[a]ny legal or other action related to a breach of this

Agreement [the JDA] must be commenced no later than two (2) years from the date of the breach

in a court sited in the State of New York".  (¶ 8.[1])  As stated in Defendants' Motion, there is no

question that Xinuos's copyright claim "relates to" an alleged breach of the JDA; nor is there any

question that IBM is alleged to have breached the JDA in 2001 by supposedly exceeding its

rights under the JDA.  (¶¶ 19-20, 72.)  Thus, any claim that IBM infringed one of the asserted

copyrights based on IBM's use of code from Project Monterey accrued nearly a decade before

SCO is alleged to have sold the asserted copyrights to Xinuos.  Because SCO owned the asserted

copyrights at the time of the alleged theft, SCO was free to pursue against IBM a claim of

copyright infringement (or anything else) *related to the disputed code*, which it did.  Hence, the

principle on which Xinuos relies is not only unhelpful to it, but also forecloses Xinuos's claim.

Even if Santa Cruz and IBM had not reached an agreement as to when any claim for

copyright infringement concerning the disputed code would accrue, Xinuos's copyright claim

---

[1] Fact citations herein are to Defendants' statements of fact and replies thereto, as well as
Defendants' responses to Plaintiff's additional statements of fact, all set forth in Defendants'
Reply in Further Support of Their Rule 56.1 Statement, and are given here as "¶ __".

depends on separate claims, rights, and issues that were retained and settled by SCO and thus cannot be relitigated by Xinuos.  Whether IBM infringes the asserted copyrights based on its use of the disputed code depends on whether IBM stole the code in breach of the JDA (as Xinuos incorrectly alleges) or obtained a license to the code under the JDA (as IBM believes).  It is undisputed that (i) SCO retained the right to pursue claims against IBM for misusing the disputed code in breach of the JDA, (ii) actually litigated such claims/issues with IBM for nearly two decades,[2] and (iii) then settled them in a court-approved settlement.[3]  Thus, even if Xinuos could assert a copyright claim against IBM (notwithstanding the JDA's accrual provision), it could never succeed on the claim because it turns on claims of breach and misuse that SCO forever released.  Just as Xinuos could take no more than SCO could give, *e.g.*, *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 194 (2d Cir. 1985), Xinuos necessarily took the copyrights subject to any claim or license reserved to SCO.

None of the cases cited by Xinuos supports its position.  They are aimed at straw men and easily distinguished.  Contrary to Xinuos's suggestion (*e.g.*, Opp. at 8), Defendants do not contend that SCO retained a claim that accrued after its sale of copyrights to Xinuos.  Nor do Defendants contend that SCO retained a bare right to sue separate from statutorily enumerated rights.  Rather, Defendants contend that the express terms of the APA, the JDA and the Settlement Agreement should be enforced, not ignored on the pretext of impossibility.  Xinuos

---

[2] Whether IBM stole the disputed code in breach of the JDA was the linchpin of SCO's unfair competition claim; it was part of SCO's interference claims (which overlapped with its unfair competition claim); and it was central to the copyright claim SCO pursued until the Tenth Circuit ruled against it in 2018.  (¶ 19.)

[3] Under the Settlement, SCO released all claims "which [SCO] at any time had, now ha[s], or hereafter can or may have against IBM . . . concerning, related to, arising out of, or arising from" the *SCO v. IBM* litigation, "IBM's relationship with [SCO]" and "Project Monterey".  (¶¶ 80, 87.)  This release necessarily included any claim that IBM stole code during Project Monterey and did not obtain a license to use the code at issue, foreclosing Xinuos's purported claim.

has not cited, and Defendants are not aware of, a single case permitting a copyright holder to

pursue (i) a claim/right expressly retained by the person who owned the copyright when the

claim accrued, or (ii) a claim that depended on other claims/rights/issues that have been released

by their owner.

### B.     The Plain Language of the APA Forecloses Xinuos's Claim.

Unable to show "impossibility", Xinuos argues that under the plain language of the APA

(i) Xinuos owns the copyrights post-transaction; and (ii) SCO "did not purport to retain the right

to sue for future infringement".  (Opp. at 12-13.)  However, Xinuos's ownership of the asserted

copyrights after 2011 is assumed for purpose of this motion, which concerns SCO's retention of

accrued claims, not Xinuos's lack of copyright ownership.  Moreover, Xinuos's argument about

"future infringement" not only ignores the fact that the claim at issue accrued before the APA

was signed (*see supra* Section I.A), but also elides the actual language of the APA.  The APA

expressly carved out "Excluded Assets" which are defined to include "claims pending or that

***may be asserted in the future***[] against IBM".  (¶ 34.)  The APA is clear and unambiguous and

does not contain any of the limitations Xinuos is urging the Court to read into it.  "Any" means

"any", not claims other than those Xinuos now wants to assert.

### C.     Xinuos's Resort to Extrinsic Evidence is Unavailing.

Finally, Xinuos seeks refuge in extrinsic evidence (Opp. at 14), even though it is legally

irrelevant, as Xinuos concedes (*id.* at 11-12), given the clarity of the APA.  *Bathla v. 913 Mkt.,*

*LLC*, 200 A.3d 754, 759-60 (Del. 2018).  But even if it were not legally irrelevant for that reason,

the "evidence" on which Xinuos relies is immaterial.  Xinuos points to a 2012 statement by

SCO's bankruptcy trustee about the assets in SCO's estate and its litigation with IBM.  (Opp. at

13.)  But that one-liner is no substitute for an actual asset statement or SCO's filings in the

litigation, and in any case fails to show SCO did not retain and was not pursuing a claim against

IBM concerning the disputed code; the public record is clear that SCO was.  (¶¶ 24, 40-58.)

Xinuos also argues it would have made no sense for Xinuos to permit IBM ("one of Xinuos' biggest competitors" (Opp. at 14)) to infringe with impunity the copyrights SCO was selling.  Yet Xinuos was a small company formed by private equity firms in 2009, not an IBM competitor; the disputed code was not only dated and discrete, but also it was the subject of ongoing litigation with IBM; all of the transferred assets combined (not just the copyrights) were valued at no more than $600,000; and Xinuos claimed not to have any interest in litigation. (¶¶ 35, 39.)  What makes no sense is Xinuos's claim that, with bankruptcy court approval, SCO sold for $600,000 rights that Xinuos now says are worth hundreds of millions of dollars.  (¶ 70.)

Finally, Xinuos argues that its silence during the course of SCO's litigation with IBM "merely confirms that Xinuos understood the Excluded Assets to include TSG's then-existing claims for unfair competition and tortious inference".  (Opp. at 14-15.)  But even the knowledge Xinuos concedes makes Defendants' point.  SCO's claims for unfair competition and tortious interference accused IBM of stealing the disputed code during Project Monterey in breach of the JDA—the very thing Xinuos is alleging here—and yet Xinuos raised no objection.  (¶¶ 24 , 66.)

## II.    PLAINTIFF'S CLAIM IS TIME-BARRED.

Even if Xinuos had acquired the right to assert a copyright claim against IBM concerning the disputed code, any such claim is time-barred pursuant to § 22.3 of the JDA (the "Limitations Provision").  Nothing in Xinuos's Opposition is to the contrary.

### A.    The Limitations Provision Is Operative.

As an initial matter, Xinuos contends that the JDA cannot apply because IBM terminated the agreement in 2001.  (Opp. at 15.)  But that argument ignores the JDA's plain language and misstates the relevant law.  The JDA's survival provision states that "*[a]ny provisions* of [the] Agreement that by their nature extend beyond termination or expiration will survive in

accordance with their terms". (Ex. 4 at § 22.15.) It would make little sense for the parties'

choice of law and venue, and agreed-upon statute of limitations set forth in the same provision,

to apply only when the JDA was in effect.[4] Moreover, in *SCO v. IBM*, the Tenth Circuit held

that the JDA's Limitations Provision applied to SCO's misappropriation claim, which it initially

filed in March 2003, well after IBM terminated the JDA. *SCO Grp., Inc. v. Int'l Bus. Machines*

*Corp.*, 879 F.3d 1062, 1079-80 (10th Cir. 2018). The provision applies equally here.

**B.    The JDA Applies to the Copyrights and Products at Issue.**

Next, Xinuos contends the Limitations Provision does not apply because the JDA relates

only to the "IA-64 Product" and Xinuos "accuses software unrelated to that product, the JDA or

Project Monterey". (Opp. at 16-17.) Both points are incorrect. The JDA related to an entire

"family" of products, rather than one single product as Xinuos claims.[5] (¶¶ 5, 109.) Moreover,

Xinuos cites no support for its contention that it accuses software unrelated to Project Monterey.

(Opp. at 16-17.) On the contrary, the Complaint alleges IBM infringes "the Code" from Project

Monterey and Project Gemini (the precursor to Project Monterey). (Compl. ¶¶ 46, 55-60.) And

each of the copyrights Xinuos asserts specifies that the copyrighted work was completed no later

---

[4] Xinuos's contention that "[t]he only cases applying a presumption of survivability to a
contractual limitations provision are arbitration cases" (Opp. at 16 n.13) is misplaced. It is well-
established that "provisions that are structural (e.g., relating to remedies and the resolution of
disputes)" may survive termination. *Silverpop Sys. v. Leading Mkt. Techs., Inc.*, 641 F. App'x
849, 857 (11th Cir. 2016); *see also U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas
Electrolock, Ltd.*, 612 F. App'x 671, 672-73 (4th Cir. 2015) ("Generally, dispute-resolution
provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract
if they are otherwise applicable to the disputed issue and the parties have not agreed
otherwise."); *Meridian Consulting I Corp. v. Eurotec Canada Ltd.*, No. 19-22197 (KM) (ESK),
2021 WL 689132, at *11 (D.N.J. Feb 22, 2021) (forum selection clause survives).
[5] Xinuos concedes as much when it explains that Project Monterey "result[ed] in a single UNIX
operating system product line that runs on IA-32, IA-64, and IBM microprocessors". (¶ 5.)
Additionally, Xinuos's claim that IBM could only have obtained a license to products "'released'
pursuant to the JDA—*i.e.*, only SCO code related to the 'IA-64 Product Release 1'" (Opp. at 16
n.15) is wrong and distorts the plain terms of JDA. (¶ 7.) Moreover, it ignores the dispositive
point that SCO retained the right to litigate the breach/license issue and has forever released it.

than 2002.  (ECF Nos. 1-2, 1-3, 1-4.)  It is Xinuos, not Defendants, who seeks to improperly

"refram[e]" its Complaint.[6]

### C.    The Limitations Provision Applies to Xinuos's Supposed Claim.

Xinuos also argues that the Limitations Provision does not apply because it is not

advancing a claim "related to a breach" of the JDA, which Xinuos says is limited to "claims for

breach" of the JDA.  (Opp. at 17-18 & n.17.)  But that argument ignores the express language of

the JDA, which encompasses both claims for breach of the JDA and (more broadly) any claim

related to a breach of the JDA.[7]  Moreover, Xinuos's argument ignores its own allegations.

While IBM believes it has a license to the code under the JDA, Xinuos alleges IBM stole the

code, did not obtain a license and has used the code without permission.  (Compl. ¶¶ 56-58.)  As

a result, there can be no question that Xinuos's claim "relates to" an alleged breach of the JDA,

just as the Tenth Circuit held "there [was] no question that SCO's misappropriation claim [was]

'related to' a breach of the JDA because the JDA expressly deals with the use of SCO's licensed

materials".  *SCO Grp.*, 879 F.3d at 1079.  In fact, Xinuos's claim is not only "related to" an

alleged breach of the JDA, but also it necessarily depends on one, as IBM could not infringe

---

[6] Xinuos's argument that its claims concern products and versions that did not exist during
Project Monterey and thus could not have been asserted during the limitations period (Opp. at 17
n.16) is misleading.  The crux of Xinuos's claim is that IBM stole the disputed code during
Project Monterey and has reused it multiple times ever since.  (Compl. ¶ 36.)  While it may have
been packaged in different products over time, the allegedly infringing code is the same code
allegedly stolen more than two decades ago, and the same code litigated and covered by releases
in *SCO v. IBM*.

[7] *See, e.g.*, *Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 193 (S.D.N.Y. 2022)
(finding limitation on damages for claims that "relate to" the agreement includes trademark
infringement and explaining that "[t]he Second Circuit has defined 'related to' as 'equivalent to
the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with
respect to' and 'with reference to'" (omitting internal quotation)); *Fleisig v. Man Cap. Mkts.,
Inc.*, No. 19cv8217 (DLC), 2021 WL 2678675, at *8-9 (S.D.N.Y. June 30, 2021) (applying
contractual limitations period for actions "arising out of or relating to" agreement to fraud and
negligence claims); *Turtur v. Rothschild Registry Intern., Inc.*, 26 F.3d 304, 309-10 (2d Cir.
1994) (applying choice of law provision for claims "arising out of or relating to" agreement to
fraud claim).

Xinuos's copyrights unless it took the code in breach of the JDA.[8]

Xinuos purports to distinguish the cases Defendants cited applying limitations provisions in similar matters.  But the supposed distinctions are without a difference.[9]  Xinuos's framing of its claim as copyright infringement does not change that the gravamen of the claim is that IBM stole code during Project Monterey, or that it is necessarily "related to" a breach of the JDA.

### D.    Plaintiff's Continuing Violation Theory Lacks Merit.

As a final fallback position, Xinuos argues that its claims are not time-barred altogether because IBM continues to use the disputed code such that Xinuos has "continually-accruing claims" that are "actionable with a three-year lookback from the date of filing the lawsuit". (Opp. at 18.)  That is wrong.  The accrual provision in the JDA expressly sets the relevant date of accrual, for claims relating to "a breach" of the JDA, as the date of the alleged breach, which is when IBM began using the disputed code more than two decades ago (¶¶ 11, 149).

Xinuos seeks to avoid the limitations period by arguing that its claims are timely because "'a breach' [is] possible at any time, not just at the end of Project Monterey", which would only "limit bringing a claim for that particular breach within two years".  (Opp. at 19.)  But in so doing, Xinuos misreads the JDA, which states that the action must be brought within two years of "the breach", meaning the *relevant breach*, which in Xinuos's case (and according to its own

---

[8] Xinuos suggests that what defendants describe as a breach of the JDA was merely a failure to trigger a condition precedent to a license.  (Opp. at 17-18.)  That is wrong.  As Xinuos's cited cases make clear, "'conditions precedent are not readily assumed' . . . [and] must be 'expressed in unmistakable language'".  *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020).  Xinuos has pointed to no such language here.  And again, SCO retained the right to litigate the breach/license issue and has forever released it.

[9] In both cases, the court emphasized that it was the factual allegations underlying the claims rather than their formalistic labels that dictated whether the claims were "related to" certain agreements.  *See L'Objet, LLC v. Limited*, No. 11 Civ. 3856(LBS), 2011 WL 4528297, at *2 (S.D.N.Y. Sept. 29, 2011); *My Play City, Inc. v. Conduit Ltd.*, 589 F. App'x 559, 562 (2d Cir. 2014).  Plaintiffs also ignore the many cases in addition to *My Play City* applying such language outside of the arbitration context.  *See supra* n.6.

Complaint) occurred when Project Monterey was terminated. (Compl. ¶ 58.)

Xinuos's claim that applying the limitations provision as written would render it unenforceable is also baseless, as is its claim that enforcing the provision would contravene the Copyright Act.[10] Contrary to Xinuos's contention, courts have consistently held that agreed-upon limitations periods are enforceable, including in copyright infringement cases.[11]

Finally, Xinuos has no answer for the discovery rule. Unable to dispute that IBM's use of the disputed code and SCO's allegations of infringement have been a matter of public record for decades, Xinuos contends that Defendants' arguments are based only on "speculation" and that Xinuos did not have a "general duty to police the internet". (Opp. at 23.) Neither speculation nor general policing of the internet was required to put Xinuos on notice. As a preliminary matter, Xinuos stands in the shoes of SCO, the very party with whom IBM litigated the claim Xinuos seeks to assert; SCO knew its own filings and Xinuos is charged with that understanding. Moreover, Xinuos cannot reasonably plead ignorance of those claims, given that they were explicitly carved out of the 2011 APA Xinuos negotiated, and their significant overlap with the claim Xinuos now seeks to assert. (¶¶ 32, 71-77.)

## III. THE BANKRUPTCY COURT APPROVALS UNDERCUT XINUOS'S CLAIMS.

Xinuos does not dispute that the bankruptcy court approved the APA on the understanding the transferred assets were fairly valued at $600,000. Nor does it dispute that

---

[10] Xinuos's claim that the Limitations Period expired before it could bring suit also rings hollow, given that SCO *did* assert a claim against IBM for infringing the post-1995 copyrights Xinuos acquired based on precisely the same conduct Xinuos now complains of. (¶¶ 21-22, 73.)

[11] *See, e.g.*, *NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*, No. 1:12-CV-02808-AT, 2013 WL 12098772, at *10-11 (N.D. Ga. Aug. 29, 2013) (one-year limitation for copyright claim); *Ashland, Inc. v. Achiever Bus. Sols. Inc.*, No. C2-05-247, 2005 WL 8161380, *3-4 (S.D. Ohio Dec. 20, 2005) (same); *Entous v. Viacom Intern., Inc.*, 151 F. Supp. 2d 1150, 1155-56 (C.D. Cal. 2001) (six-month limitation for copyright claim). Xinuos misplaces reliance on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014), which did not involve a contractual agreement to modify an accrual or limitations rule.

Xinuos values its claim in the many hundreds of millions of dollars.  Xinuos simply dismisses these facts as "nonsensical and irrelevant" because, it says, "Xinuos did not purchase SCO's rights to sue IBM for IBM's past conduct".  (Opp. at 14.)  While it is true that Xinuos did not purchase the right to sue IBM for past conduct, that is no help to Xinuos here, as that is exactly what Xinuos's claim seeks to do (*e.g.*, Compl. ¶ 56-57 (basing claim on allegedly stolen code)).  Moreover, Xinuos elides the fact that it now claims the assets it purchased allow it to assert claims valued at far more than the bankruptcy court ever imagined.

Lastly, Xinuos argues that "the bankruptcy court did not grant defendants permission to infringe Xinuos' copyrights with impunity".  (Opp. at 24.)  That is yet another straw man.  Defendants do not contend that the bankruptcy court purported to rule that the Settlement released Xinuos's copyright claim.  Defendants contend that the bankruptcy court's approval of the Settlement forecloses Xinuos's claim by its terms:  the Settlement released a claim—that IBM stole the disputed code and used it without license—without which Xinuos's copyright claim crumbles as a matter of law.  That is especially so when the court both overruled Xinuos's objection to the Settlement and rejected the language proposed by Xinuos in an effort to salvage its claim.[12]  (¶¶ 82-92.)  The bankruptcy court necessarily found that SCO owned the claim to be released; if SCO did not have the right to release the claim, then it would have been in breach of its representation that it was "duly authorized to enter" the Settlement (¶ 79).

## CONCLUSION

Summary judgment should be granted in favor of Defendants, and Xinuos's copyright claim should be dismissed with prejudice.  Two decades of litigation on this issue is sufficient.

---

[12] Additionally, Xinuos's argument that "TSG simply had no legal authority to settle copyright claims that accrued during Xinuos's ownership of the copyrights at issue" (Opp. at 25 n.25) misses the mark, given that the claim accrued decades ago and was retained by SCO and never transferred to Xinuos.

DATED:  March 6, 2023

Respectfully submitted,

/s/ David R. Marriott

**CRAVATH, SWAINE & MOORE LLP**
David R. Marriott
Michael J. Zaken
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
dmarriott@cravath.com
mzaken@cravath.com

*Attorneys for Defendants International Business
Machines Corp. and Red Hat, Inc.*