**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XINUOS, INC., | |
| Plaintiff, | |
| - against - | CASE NO. 7:22-cv-09777-CS |
| INTERNATIONAL BUSINESS MACHINES CORPORATION and RED HAT, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF XINUOS'S MOTION FOR RECONSIDERATION OF THE COURT'S BENCH RULING GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIM**

**Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................... 4

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT .................................................................................................................................... 5

I.     The Court Erred in Characterizing Xinuos's Copyright Infringement Claim as an Ownership
      Claim, Leading to the Erroneous Conclusion that the Claim Is Time-Barred. .......................... 5

     A.    IBM Does Not Claim to Have an Ownership Interest in Xinuos's Copyrights or Source
         Code. ...................................................................................................................................... 6

     B.    The Court Erred by Broadening the Second Circuit's Ownership-Infringement Doctrine
         to Encompass a License Dispute. .......................................................................................... 8

     C.    The Court's Conflation of Ownership and Licensing Interests Infected Its Evaluation of
         the *Walker* Factors. ........................................................................................................... 10

     D.    The Court's Reliance on *Roberts I* to Expand the Ownership-Infringement Doctrine to
         Encompass a License Dispute Was Misplaced. .................................................................. 12

II.    The Court Should Reverse Its Summary Judgment Ruling and Deny Defendants' Motion for
      Partial Summary Judgment. .................................................................................................... 12

CONCLUSION ............................................................................................................................... 14

### Table of Authorities

**Cases**

*Baker v. Weber*,
No. 19 Civ. 1093, 2021 WL 4480998 (S.D.N.Y. Sept. 30, 2021) ........................................ 11

*Big E. Entmt., Inc. v. Zomba Enters.*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006) ................................................................................... 3

*Boisson v. Banian, Ltd.*,
273 F.3d 262 (2d Cir. 2001) .................................................................................................. 7

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) .................................................................................................... 4

*DeJean v. County of Nassau*,
No. 06-CV-6317, 2007 WL 4555897 (E.D.N.Y. Dec. 18, 2007) ......................................... 2

*Di Pompo v. Mendelson*,
No. 21-CV-1240 (CS), 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022) ................................... 1

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................................... 2

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
80 F. Supp. 3d 535 (S.D.N.Y. 2015) .................................................................................... 4

*Kwan v. Schlein*,
634 F.3d 224 (2d Cir. 2011) .............................................................................................. 3, 9

*PK Music Performance, Inc. v. Timberlake*,
No. 16-CV-1215 (VSB), 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ............................. 4

*Reddy v. Salvation Army*,
No. 06-CV-5176, 2008 WL 4755733 (S.D.N.Y. Oct. 27, 2008) .......................................... 2

*Roberts v. BroadwayHD LLC*,
518 F. Supp. 3d 719 (S.D.N.Y. 2021) .............................................................................. 6, 9

*Roberts v. BroadwayHD LLC*,
No. 19 Civ. 9200 (KPF), 2022 WL 976872 (S.D.N.Y. Mar. 31, 2022) ................... 5, 6, 7, 8

*SCO Grp., Inc. v. Int'l Bus. Machines Corp.*,
879 F.3d 1062 (10th Cir. 2018) ...................................................................................... 4, 10

*Spinelli v. Nat'l Football League et al.*,
903 F.3d 185 (2d Cir. 2018) ............................................................................................... 11

*Walker v. Carter*,
210 F. Supp. 3d 487 (S.D.N.Y. 2016) ............................................................................... 7, 8

<u>Other Authorities</u>

Local Civil Rule 6.3 ................................................................................................................... 1

Plaintiff Xinuos, Inc. ("Xinuos") respectfully submits this memorandum in support of its motion for reconsideration of the Court's bench ruling of January 22, 2024, granting the Motion for Partial Summary Judgment on Plaintiff's Copyright Claim (ECF 121) filed by Defendants International Business Machines Corp. ("IBM") and Red Hat, Inc. ("Red Hat") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Respectfully, the Court clearly erred by characterizing Xinuos's copyright infringement claim as an ownership claim, which led the Court to erroneously conclude that the claim was time-barred. *IBM has not claimed to own the asserted copyrights or the source code they protect*.  Instead, IBM has claimed only that it holds a *nonexclusive license* to use the copyrighted works, which explains why IBM did not argue in support of its summary judgment motion that Xinuos's copyright infringement claim was a time-barred ownership claim.  Even were it otherwise, it is well-settled that a nonexclusive license does *not* convey an ownership interest either in the licensed copyright or the underlying work.  Indeed, at least one of the cases on which the Court relied turned on exactly that issue, holding that a dispute over whether allegedly infringing activity was within the scope of a defendant's license constituted an infringement claim, not an ownership claim.  The Court's characterization of Xinuos's copyright infringement claim as an ownership claim is thus contrary to both fact and law, and therefore warrants reconsideration and reversal.

## LEGAL STANDARD

This Court explained the legal standard that applies to a motion for reconsideration in *Di Pompo v. Mendelson*, No. 21-CV-1240 (CS), 2022 WL 1093500, at *2 (S.D.N.Y. Apr. 7, 2022) (granting in part and denying in part motion for reconsideration).  As set forth therein, "[m]otions for reconsideration are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the district court."  *Reddy v. Salvation Army*, No. 06-CV-5176, 2008 WL 4755733, at *1 (S.D.N.Y.

Oct. 27, 2008).   A court may grant reconsideration where the moving party demonstrates "an intervening change in controlling law, the availability of new evidence, *or the need to correct a clear error* or prevent manifest injustice."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (emphasis added), *aff'd sub nom.*, *Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122 (2d Cir. 2016).   Reconsideration of a prior order is "an extraordinary remedy to be employed sparingly," and "[t]he burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision."  *Facebook*, 43 F. Supp. 3d at 373 (citations omitted).

"The purpose of a motion to reconsider is to allow the court to correct its own mistake, by calling to its attention a factual matter or a controlling precedent previously advanced by the parties, but overlooked by the court."  *DeJean v. County of Nassau*, No. 06-CV-6317, 2007 WL 4555897, at *1 (E.D.N.Y. Dec. 18, 2007).   Consequently, "[a] party seeking reconsideration may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the Court.'"  *Facebook*, 43 F. Supp. 3d at 373 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

## ARGUMENT

I.      **The Court Erred in Characterizing Xinuos's Copyright Infringement Claim as an Ownership Claim, Leading to the Erroneous Conclusion that the Claim Is Time-Barred.**

In its bench ruling, the Court framed the central issue arising from IBM's summary judgment motion as follows:

> If this case presents an ownership claim, it occurred only once when the code's owner was on notice that defendant was exercising the right incompatible with its ownership, which would be when defendant started using the code it allegedly stole in 2001. In that event the claim belongs to SCO, which owned the copyright, then retained the claim by carving it out of the APA, and tried to assert the claim in 2004 in the Utah litigation. If this is an infringement claim, plaintiff can sue for any product defendant released going back three years from when it filed suit.

Tr. of Bench Ruling, Jan. 22, 2024, at 30 (Ex. A) (hereinafter, "Tr."). Xinuos agrees that the foregoing accurately describes the analytical framework for a case in which there is uncertainty as to whether an asserted copyright claim is either an infringement claim or an ownership claim, but there should have been no such uncertainty here. More importantly, the Court clearly erred in its application of the infringement-ownership analysis by treating a dispute over an alleged nonexclusive license as an ownership dispute.

### A.   IBM Does Not Claim to Have an Ownership Interest in Xinuos's Copyrights or Source Code.

At least for purposes of their motion, Defendants did not argue that they were entitled to summary judgment because Xinuos's copyright infringement claim is actually a copyright *ownership* claim that accrued many years ago and is now time-barred.[1] Instead, Defendants moved for summary judgment based on the following alternative theories: (1) SCO retained any and all claims against IBM concerning the Monterey Code, and subsequently released those claims; or (2) Xinuos's copyright infringement claim relates to a breach of the JDA, and therefore was subject to the two-year limitations period under the Project Monterey JDA. *See* Defs.' Opening Mem. at 7-10, 21-24. The first time the ownership-infringement issue was raised as a basis for granting summary judgment on Xinuos's copyright infringement claim was in the Court's bench ruling.

In contrast to the Court's characterization of this case as presenting an ownership claim, *IBM has not disputed Xinuos's ownership of either the copyrights at issue or the underlying source code—* both of which Xinuos acquired from SCO through the Asset Purchase Agreement of January 19,

---

[1] Defendants cited two ownership-infringement cases in their opening memorandum—*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011) and *Big E. Entmt., Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788 (S.D.N.Y. 2006)—but only in support of their argument that the contractual two-year limitations period of the Project Monterey JDA barred Xinuos's copyright infringement claim. *See* Mem. of Law in Supp. of Defs.' Mot. for Partial Summ. J. on Pl.'s Copyright Claim, 16 and n.5 (ECF 122) ("Defs.' Opening Mem.").

2011.   Far from asserting any ownership rights, IBM claims only that it holds a perpetual, nonexclusive, royalty-free license to use the copyrighted code, purportedly granted to IBM as part of Project Monterey.  In the words of IBM:

> It is undisputed that IBM obtained the disputed code as part of Project Monterey.  (¶ 48.)  The only dispute is whether IBM obtained a license to the code or used it without permission. (¶¶ 19-20, 44.)  *IBM contends it obtained a license to the code, and if that is true, then Xinuos's infringement claim necessarily fails, as a person with a license does not infringe.*

Defs.' Opening Mem. at 15 (emphasis added); *see also* Tr. at 6-8 (recounting disputed facts regarding alleged license), 30-31 (summarizing parties' dispute over alleged license); *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1072 (10th Cir. 2018) (finding that a reasonable jury could conclude that IBM failed to satisfy the contractual requirements for a royalty-free license).

Given these facts, copyright ownership *is not and could not be* at issue.  It is well-settled that "[a] non-exclusive license conveys no ownership interest." *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007).  As such, a dispute over whether IBM is licensed under Xinuos's copyrights, by definition, is *not* an ownership dispute.  And as a practical matter, just as the court observed in *PK Music*, "it makes little sense to construe Plaintiff's infringement claim against Defendants as an ownership claim when none of the parties assert that Defendants have any ownership rights in [the copyrighted work]." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *6 (S.D.N.Y. Sept. 30, 2018) (declining to construe claim as ownership claim for statute of limitations purposes); *accord Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 543 (S.D.N.Y. 2015) ( "It makes no sense to say that Flo and Eddie's cause of action against Sirius accrued when it became aware of its disputed ownership rights against Sirius, because Sirius does not claim ownership of the copyrights and there is no ownership dispute between Flo and Eddie and Sirius.").

**B.      The Court Erred by Broadening the Second Circuit's Ownership-Infringement Doctrine to Encompass a License Dispute.**

Consistent with how Defendants positioned their motion, the Court recognized that "ownership is not precisely what is at issue here, but rather the question is whether defendant obtained a license that gave it the right to use the code."  Tr. at 30.  Nevertheless, the Court determined that "the analysis ought to be the same," and proceeded to treat the license dispute as an ownership dispute for purposes of characterizing Xinuos's copyright claim.  *Id*.  That determination was erroneous—courts in the Second Circuit have consistently held that a dispute over whether use of a copyrighted work was authorized under a license is an infringement issue, not an ownership issue.  *See, e.g.*, *Roberts v. BroadwayHD LLC*, No. 19 Civ. 9200 (KPF), 2022 WL 976872, at *9 (S.D.N.Y. Mar. 31, 2022) ("*Roberts II*") (cataloging cases).

*Roberts II*, which the Court discussed in its bench ruling, is on all fours with the present case. There, the parties were not disputing who owned the copyrights at issue; rather, the plaintiff's claim was that the defendants had exceeded the scope of their limited license to perform and record the copyrighted vocal arrangements by sublicensing others to do so.  *Roberts II*, 2022 WL 976872, at *9. Notwithstanding the Court's observation that the facts here only "bear superficial similarity to *Roberts II*," Tr. at 33, Xinuos respectfully submits that the material facts are virtually indistinguishable.  Xinuos does not dispute that IBM had a legitimate license to use the copyrighted code for the limited purpose of developing an IA-64 operating system during Project Monterey, but contends that IBM exceeded the scope of that limited license by copying the code into various operating system products after Xinuos purchased the code and the associated copyrights.  *See* ECF 126 (Xinuos's Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J.), at 3-4 ("In order to receive a continuing license to use the code for an IA-64 product, IBM was required to complete a 'general availability' release of the IA-64 product. . . .  IBM's purported release lacked any of the hallmarks

of a 'general availability release' under the JDA.") (citations to Xinuos's Responses to Defendants' Rule 56.1 Statement (ECF 128) omitted).

Faced with the materially similar facts in *Roberts II*, Judge Failla accurately observed that "[c]ourts have recognized similar allegations as stating a claim for copyright infringement." *Roberts II*, 2022 WL 976872, at *9 (citing cases). Notably, none of the cases cited in the Court's bench ruling, or any other controlling authority that Xinuos's counsel has been able to locate, has held that a dispute over a nonexclusive license *in the absence of an express or implied claim of ownership by the defendant* constitutes an ownership claim, not an infringement claim.

Likewise, the district court's determination that the license issues in *Roberts I* (the precursor to *Roberts II*) supported a finding of an ownership claim is fully consistent with the holding in *Roberts II*. There, the plaintiff originally alleged that certain defendants had exceeded the scope of their license to the copyrighted work by reassigning their license rights among themselves and granting a license to another defendant. *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 731 (S.D.N.Y. 2021) ("*Roberts I*"). But it was not the fact that the defendants had allegedly acted outside the scope of their license that warranted characterizing the case as an ownership claim, but rather the fact that the defendants were allegedly acting as though they, and not the plaintiff, owned the copyrights by transferring the licenses among themselves and granting licenses to others – actions that only an owner would ordinarily take. *Id.* at 731-32 (holding that "Plaintiff has pleaded an ownership claim that accrued in 1999, when the L&S Defendants allegedly granted BTN an all-encompassing license to record and distribute the Musical"); *see also Roberts II*, 2022 WL 976872, at *9 (explaining that Roberts successfully converted his pled cause of action from an ownership claim to an infringement claim by amending his complaint to state that the defendants were "aware that Plaintiff was the exclusive owner" when they licensed others to use the copyrighted work). Again, a dispute over whether a licensee has exceeded the scope of its license in the absence of an

express or implied claim of ownership by the licensee constitutes an infringement issue, not an ownership issue. *Id.* (citing cases).

C.    **The Court's Conflation of Ownership and Licensing Interests Infected Its Evaluation of the *Walker* Factors.**

The Court's characterization of IBM's license defense as an ownership claim fatally infected the Court's evaluation of the various factors that courts in the Second Circuit commonly consider in ownership-infringement analyses:

> [1] whether the plaintiff concedes in any filings that questions of ownership and authorship are at the heart of the claim, [2] whether the plaintiffs [sic] copyright ownership is conceded by the defendant, [3] whether the plaintiff alleges anything specific about the means of infringement, and [4] whether the lawsuit is between two parties who claim ownership of the copyrights.

Tr. at 29-30 (citing *Walker v. Carter*, 210 F. Supp. 3d 487, 505 (S.D.N.Y. 2016)) (reference numbers added).  Respectfully, a legally correct evaluation of the factors listed by the Court compels a finding that Xinuos's complaint states an infringement claim, not an ownership claim.

As to the first *Walker* factor, far from conceding that "questions of ownership and authorship" are at the heart of its copyright infringement claim, Xinuos contends that ownership and authorship as between Xinuos and IBM have *nothing* to do with this dispute, save for Xinuos's ownership of the asserted copyrights being a required element of its infringement claim. *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  And as to the second factor, as discussed above, IBM did not dispute Xinuos's ownership of the copyrights at issue, at least for purposes of its motion, and instead claimed only to have a nonexclusive license to the copyrighted works.  Defs.' Opening Mem. at 15.  Thus, on their face, these factors squarely favor a finding that Xinuos's complaint presents an infringement claim, not an ownership claim.  The Court appears to have reached the contrary conclusion by "reframing" these factors to focus on "right to use" instead of "ownership," albeit without citing any supporting

authority.  Tr. at 30-31.  And it was only that reframing of these factors to eliminate any reference to "ownership," and not the nature of the actual dispute between the parties, that resulted in them favoring an "ownership claim."  The same is true for the fourth factor, which the Court likewise reframed by replacing "ownership" with "right to use."  *See* Tr. at 33.

Finally, in support of its finding that the third factor favored an ownership claim, the Court stated that "not only does plaintiff not allege any specific [sic] about the means of infringement beyond saying defendant incorporated into its products code that it stole, but defendant does not seem to dispute that the code is, in fact, incorporated into its product."  Tr. at 31.  As an initial matter, whether or not IBM disputes that Xinuos's copyrighted code is in its products should be immaterial to this analysis, since the third *Walker* factor is directed only to "whether *the plaintiff* alleges anything specific about the means of infringement."  *Walker*, 210 F. Supp. 3d at 505 (citing *Newsome v. Brown*, 01 Civ. 2807, 2005 WL 627639, at *5-6 (S.D.N.Y. Mar. 16, 2005)) (emphasis added).  And as to Xinuos's allegations, the Court appears to have overlooked the three full pages of allegations in the Complaint where Xinuos (i) explains how IBM obtained access to the copyrighted code, (ii) identifies specific IBM operating system products in which the copied code appears, (iii) points to IBM product literature acknowledging the copying of at least some of Xinuos's code, and (iv) describes the advantageous features and functions that the copied code provides, further evidencing the infringement.  *See* ECF 1 (Complaint), ¶¶ 55-69.  Xinuos respectfully submits that it *has* provided specific allegations about the means of IBM's infringement, particularly given that IBM filed its summary judgment motion before Xinuos had an opportunity to take any fact discovery.  *See Roberts II*, 2022 WL 976872, at *9 n.8 (observing that cases addressing the "ownership-infringement divide" are typically decided later in the case, based on a "more robust factual record").  Thus, this factor also supports a finding that Xinuos's complaint presents an infringement claim, not an ownership claim.

D.      **The Court's Reliance on *Roberts I* to Expand the Ownership-Infringement Doctrine to Encompass a License Dispute Was Misplaced.**

The Court's extension of the concept of "ownership" to encompass alleged license rights appears to have been based on the following statement in *Roberts I*: "a copyright infringement claim is an ownership claim when it does not involve the nature, extent, or scope of copying but instead focuses on competing assertions of ownership *or rights in the work at issue*."  Tr. at 28 (quoting *Roberts I*, 518 F. Supp. 3d at 730-31) (emphasis added).  The first part of the statement in *Roberts I* was actually quoting the Second Circuit's opinion in *Kwan*, where the appellate court held that a dispute between the parties over which of them was the author of the copyrighted work constituted an ownership claim:

> Unlike *Bright Tunes*, the dispute over FIOL does not involve the nature, extent or scope, of copying, and therefore, ownership forms the backbone of the "infringement claim" at issue here.  That is, the dispute involves who wrote FIOL in the first place—whether Kwan's editorial contributions to FIOL were significant enough to qualify her as the author *and therefore the owner of the copyright*.

*Kwan*, 634 F.3d 224, 229 (2d Cir. 2011) (emphasis added).  However, the addition of the clause "or rights in the work at issue" appears to be the district court's own expansion of the Second Circuit's holding—one that finds no support in *Kwan* itself.  In fact, *Kwan* uniformly refers only to disputes over *ownership* as the harbinger of an ownership claim, and not disputes over license rights.  *See, e.g.*, *Kwan*, 634 F.3d at 229 (holding that "[w]here, as here, the ownership claim is time-barred, *and ownership is the dispositive issue*, any attendant infringement claims must fail") (emphasis added).

II.     **The Court Should Reverse Its Bench Ruling and Deny Defendants' Motion for Partial Summary Judgment.**

For the reasons set forth above, Xinuos respectfully submits that the Court clearly erred in granting Defendants' motion for summary judgment on Xinuos's copyright infringement claim, warranting reconsideration and reversal.  In addition, since Defendants' motion was based on entirely different legal theories than the one on which the Court's erroneous decision relied, Xinuos reiterates

that Defendants have failed to justify summary judgment under those theories.  *See generally* Defs.'
Opening Mem. at 8-25.

As noted above, IBM argued that it was entitled to summary judgment either because SCO
allegedly retained any and all claims against IBM concerning the Monterey Code and subsequently
released those claims or, alternatively, because Xinuos's copyright infringement claim allegedly
relates to a breach of the JDA that is now time-barred according to the two-year limitations period
specified in that contract.  *See* Defs.' Opening Mem. at 7-10, 21-24.  The common thread running
through these theories is IBM's claim that it holds a perpetual, nonexclusive, royalty-free license that
permitted it to continue using the Monterey Code after termination of Project Monterey, allegedly
defeating any possible claim of copyright infringement by Xinuos targeting IBM's use of the code
after Xinuos acquired the code and the associated copyrights in September of 2011.  *See, e.g.*, *id.* at
15 ("IBM contends that it obtained a license to the code, and if that is true, then Xinuos's infringement
claim necessarily fails, as a person with a license does not infringe.").  But as both this Court and the
Tenth Circuit in the SCO-IBM litigation recognized, whether IBM satisfied the contractual
requirements for an ongoing license is a disputed issue of fact.  *See* Tr. at 6-8, 30-31; *see also SCO
Grp. v. IBM*, 879 F.3d at 1072.  That dispute was never resolved in the prior litigation, nor was there
any purported grant (or even acknowledgment) of IBM's alleged license rights included in the
Settlement and Release resolving that litigation.  *See generally* SCO-IBM Settlement and Release
(ECF 124-45).

SCO's release of its asserted misappropriation claim and any unasserted copyright
infringement claims against IBM plainly was not a resolution of those claims (or the underlying
factual disputes) in IBM's favor.  *See id.* ¶ 4.1 (stating that "[t]his Settlement Agreement involves
allegations that are denied by the Parties, and nothing contained herein shall be construed as an
admission by the Parties of any liability of any kind with respect thereto").  IBM makes much of the

- 13 -

release it secured from SCO, but it is equally notable that IBM released its counterclaim against SCO for alleged breach of contract due to not honoring the license that IBM claimed to have under the JDA. *Id.* ¶ 3.2 (detailing "IBM's Releases"); *see also SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, No. 2:03-CV-00294-DN, ECF 127 (IBM's Second Amended Counterclaims Against SCO), ¶ 116 (D. Utah Mar. 29, 2004) (alleging that "SCO has breached its express duties and obligations . . . by, among other things, purporting to terminate IBM's irrevocable and perpetual UNIX rights . . . .").

If the Court reverses its bench ruling and allows the copyright infringement claims to proceed, IBM will have the burden of *proving* that it holds a license under the copyrights that SCO sold to Xinuos in 2011 in order to establish a license defense to Xinuos's infringement claim. *Spinelli v. Nat'l Football League et al.*, 903 F.3d 185, 197 (2d Cir. 2018) ("The existence of a license is an affirmative defense, placing upon the party claiming a license 'the burden of coming forward with evidence' of one.") (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)); *accord Baker v. Weber*, No. 19 Civ. 1093, 2021 WL 4480998, at *6 (S.D.N.Y. Sept. 30, 2021). For now, the factual disputes concerning the alleged license warrants denying Defendants' motion even under the theories the Court did not credit in its bench ruling.

### CONCLUSION

As the Court correctly observed, "[i]f this is an infringement claim, plaintiff can sue for any product defendant released going back three years from when it filed suit." Tr. at 30. For the reasons discussed above, this case indeed presents an infringement claim. Xinuos should therefore be permitted to litigate that claim alongside its pending antitrust claim.

For the foregoing reasons, Xinuos respectfully requests that the Court reconsider and reverse its grant of summary judgment in favor of Defendants, and instead deny Defendants' motion for partial summary judgment on Xinuos's copyright infringement claim.

- 14 -

Dated: February 5, 2024                    Respectfully submitted,

                                            _/s/ Mark M. Supko_
                                            Mark M. Supko
                                              msupko@crowell.com
                                            Mark A. Klapow
                                              mklapow@crowell.com
                                            Kyle N. Pham*
                                              kpham@crowell.com
                                            CROWELL & MORING LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC 20004-2595
                                            Telephone: 202-624-2500

                                            Warrington S. Parker*
                                              wparker@crowell.com
                                            Molly A. Jones*
                                              mojones@crowell.com
                                            Joachim B. Steinberg
                                              jsteinberg@crowell.com
                                            Jacob S. Canter*
                                              jcanter@crowell.com
                                            CROWELL & MORING LLP
                                            3 Embarcadero Center, 26th Floor
                                            San Francisco, California 94111
                                            Telephone: 415-986-2800

                                            (*Admitted pro hac vice)
                                            Attorneys for Plaintiff Xinuos, Inc.