# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

XINUOS, INC.,

                               *Plaintiff*,

             -against-

INTERNATIONAL BUSINESS MACHINES
CORP. and RED HAT, INC.,

                             *Defendants*.

Case No. 7:22-cv-09777-CS-VR

Judge Cathy S. Seibel

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants International
Business Machines Corp. and Red Hat, Inc.*

February 20, 2024

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

CITATION FORMS ........................................................................................................... vii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .....................................................................................................................2

I.    XINUOS BORE A HEAVY BURDEN TO JUSTIFY RECONSIDERATION,
      AND IT CAME NOWHERE CLOSE TO MEETING THAT BURDEN .........................2

II.   THIS COURT PROPERLY CHARACTERIZED XINUOS' PURPORTED
      CLAIM AS AN OWNERSHIP CLAIM BELONGING TO, AND RELEASED
      BY, SCO .................................................................................................................4

      A.    The Claim Does Not Involve the Nature, Extent or Scope of Copying..................5

      B.    IBM Has Asserted a Competing Interest in the Bundle of Copyright
            Ownership Rights...............................................................................................6

      C.    Whether SCO or Xinuos Has the Right to Sue IBM for Infringement Poses
            An Independently Dispositive Ownership Dispute.................................................9

      D.    Xinuos' Claim That This Court Wrongly Broadened the Second Circuit's
            Ownership-Infringement Doctrine Is Mistaken. ..................................................12

      E.    Xinuos Wrongly Contends That This Court Misapplied the *Walker*
            Factors.............................................................................................................14

III.  EVEN IF XINUOS' PURPORTED CLAIM WERE NOT AN OWNERSHIP
      CLAIM FOR ACCRUAL PURPOSES (AND IT IS), IT IS FORECLOSED FOR
      MULTIPLE, INDEPENDENT REASONS ......................................................................16

      A.    Santa Cruz and IBM Agreed in the JDA That the Claim Accrued More
            Than Two Decades Ago.....................................................................................16

      B.    The Copyright Claim Necessarily Depends on a Contractual Right
            Retained and Released by SCO. ........................................................................18

      C.    SCO and Xinuos Agreed, with Bankruptcy Court Approval, That SCO
            Retained the Claim...........................................................................................21

CONCLUSION...................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*,
   296 F. Supp. 3d 627 (S.D.N.Y. 2017) ........................................................................5

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ...............................................................................3, 4

*Bathla v. 913 Mkt., LLC*,
   200 A.3d 754 (Del. 2018) ................................................................................22

*Big E. Ent., Inc. v. Zomba Enters., Inc.*,
   453 F. Supp. 2d 788 (S.D.N.Y. 2006), *aff'd*, 259 F. App'x 413 (2d Cir. 2008) .......................7

*Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   817 F.2d 499 (9th Cir. 1987) ..............................................................................9

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   650 F. Supp. 3d 228 (S.D.N.Y. 2023) ...................................................................14

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) .............................................................................6, 9

*Davis v. Norwalk Econ. Opportunity Now, Inc.*,
   534 F. App'x 47 (2d Cir. 2013) ..........................................................................21

*Digit. Dynamics Software, Inc. v. Eclipse Gaming Sys., LLC*,
   No. 18 C 892, 2018 WL 2463378 (N.D. Ill. June 1, 2018) ..............................................21

*Faulkner v. Nat'l Geographic Enters. Inc.*,
   409 F.3d 26 (2d Cir. 2005) ...............................................................................7

*Flo & Eddie, Inc. v. SiriusXM Radio Inc.*,
   80 F. Supp. 3d 535 (S.D.N.Y. 2015) ................................................................12, 14

*Fogel v. Chestnutt*,
   668 F.2d 100 (2d Cir. 1981) ...........................................................................4, 13

*Gibbs v. Hawaiian Eugenia Corp.*,
   966 F.2d 101 (2d Cir. 1992) ..............................................................................20

*Griffin Indus., Inc. v. Petrojam, Ltd.*,
   72 F. Supp. 2d 365 (S.D.N.Y. 1999) ......................................................................4

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
  780 F.2d 189 (2d Cir. 1985), *abrogated on other grounds by eBay, Inc. v.
  MercExchange, LLC*, 547 U.S. 388 (2006)...................................................................20

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
  08 M.D.L. No. 1963 (RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009) ............................3

*In re C-TC 9th Ave. P'ship*,
  182 B.R. 1 (N.D.N.Y. 1995) ........................................................................................4

*In re Capmark Fin. Grp. Inc.*,
  438 B.R. 471 (Bankr. D. Del. 2010) .........................................................................23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  43 F. Supp. 3d 369 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley
  & Co. LLC*, 841 F.3d 122 (2d Cir. 2016)................................................................2, 3

*In re Key3Media Grp., Inc.*,
  336 B.R. 87 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL
  2842462 (D. Del. Oct. 2, 2006).................................................................................23

*Kwan v. Schlein*,
  634 F.3d 224 (2d Cir. 2011)................................................................................. passim

*L'Objet, LLC v. Limited*,
  No. 11 Civ. 3856 (LBS), 2011 WL 4528297 (S.D.N.Y. Sept. 29, 2011) .................................17

*Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*,
  232 F. Supp. 3d 384 (S.D.N.Y. 2017), *aff'd*, 738 F. App'x 722 (2d Cir. 2018)................10, 12

*Merced Irrigation Dist. v. Barclays Bank PLC*,
  178 F. Supp. 3d 181 (S.D.N.Y. 2016)....................................................................................3

*My Play City, Inc. v. Conduit Ltd.*,
  589 F. App'x 559 (2d Cir. 2014)............................................................................17

*Narrative Ark Ent. LLC v. Archie Comic Publ'ns, Inc.*,
  No. 16-cv-06109 (VB), 2019 WL 4142362 (S.D.N.Y. Aug. 29, 2019) .................................15

*Novellino v. Life Ins. Co. of N. Am.*,
  216 A.2d 420 (Del. 1966) .........................................................................................22

*Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*,
  615 N.Y.S.2d 160 (App. Div. 4th Dep't 1994) ......................................................16

*Pickwick Commc'ns, Inc. v. Weinberg*,
  No. 91 Civ. 1642 (AGS), 1994 WL 620950 (S.D.N.Y. Nov. 8, 1994), *aff'd*, 89
  F.3d 825 (2d Cir. 1995)...........................................................................................19

iv

*PK Music Performance, Inc. v. Timberlake*,
   No. 16-CV-1215 (VSB), 2018 WL 4759737, (S.D.N.Y. Sept. 30, 2018) .............................14

*Putrelo Constr. Co. v. Town of Marcy*,
   964 N.Y.S.2d 812 (App. Div. 4th Dep't 2013) ..........................................................................16

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
   55 A.3d 330 (Del. 2012) ...........................................................................................................22

*Roberts v. BroadwayHD LLC*,
   No. 19 Civ. 9200 (KPF), 2022 WL 976872 (S.D.N.Y. Mar. 31, 2022)....................................13

*Roberts v. BroadwayHD, LLC*,
   518 F. Supp. 3d 719 (S.D.N.Y. 2021)...................................................................5, 12, 13, 14

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
   477 F.3d 383 (6th Cir. 2007)....................................................................................................11

*Schonberger v. Serchuk*,
   742 F. Supp. 108 (S.D.N.Y. 1990) .............................................................................................3

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*,
   879 F.3d 1062 (10th Cir. 2018)..................................................................................10, 19, 20

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*,
   No. 2:03-cv-00294-DN (D. Utah ) .........................................................................................8, 9

*Sequa Corp. v. GBJ Corp.*,
   156 F.3d 136 (2d Cir. 1998)........................................................................................................3

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*,
   733 F.3d 1251 (9th Cir. 2013)............................................................................................10, 13

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995).........................................................................................................3

*Simmons v. Stanberry*,
   810 F.3d 114 (2d Cir. 2016)................................................................................................11, 18

*State of Ill., Dep't of Pub. Aid v. Schweiker*,
   707 F.2d 273 (7th Cir. 1983).....................................................................................................14

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
   936 F.2d 692 (2d Cir. 1991)......................................................................................................17

*Urbont v. Sony Music Ent.*,
   831 F.3d 80 (2d Cir. 2016)........................................................................................................10

*Walker v. Carter*,
  210 F. Supp. 3d 487 (S.D.N.Y. 2016)...............................................7, 10, 12, 14, 15

*Webster v. Dean Guitars*,
  955 F.3d 1270 (11th Cir. 2020).............................................................10, 13, 14, 15

*White v. Higgins*,
  116 F.2d 312 (1st Cir. 1940) ............................................................................4

*Zdanok v. Glideen Co.*,
  327 F.2d 944 (2d Cir. 1964)..............................................................................4

**Statutes & Rules**

17 U.S.C. § 106...........................................................................................................6

17 U.S.C. § 205(e) ....................................................................................................20

Fed. R. Civ. P. 59 .......................................................................................................2

Local Civil Rule 6.3 ...................................................................................................2

## <u>CITATION FORMS</u>

| <u>Citation</u> | <u>Source</u> |
|---|---|
| "Mot." | Plaintiff's Memorandum of Law in Support of Motion for Reconsideration of the Court's Bench Ruling Granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim (ECF No. 146). |
| "MPSJ" | Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim (ECF No. 122). |
| "Opp'n" | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment (ECF No. 126). |
| "Reply" | Reply Memorandum in Further Support of Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim (ECF No. 130). |
| "Tr." | The Court's Bench Ruling Granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim. |
| "¶ __" | Defendants' Local Civil Rule 56.1 Statement of Facts in Support of Their Motion for Partial Summary Judgment on Plaintiff's Copyright Claim (ECF No. 123). |
| "Ex. __" | Specific Exhibit to Affirmation of Emma Kolesar in Support of Motion for Partial Summary Judgment (ECF No. 124). |

Defendants International Business Machines Corporation ("IBM") and Red Hat, Inc. ("Red Hat") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the motion of Plaintiff Xinuos, Inc. ("Xinuos" or "Plaintiff") for reconsideration of this Court's bench ruling granting Defendants' motion for partial summary judgment on Plaintiff's copyright claim.

## PRELIMINARY STATEMENT

Xinuos seeks reconsideration of this Court's summary judgment decision concerning a claim that involves a project ("Project Monterey") that ended nearly 25 years ago, was litigated by IBM and SCO (Xinuos' purported predecessor-in-interest) for nearly 18 years and that this Court carefully considered (with full briefing) for nearly a year.  Xinuos' motion should be denied.

As an initial matter, a party seeking to relitigate a claim that has been decided after full briefing bears a heavy burden.  Xinuos has not met that burden.  It does not proffer any new evidence; it does not point to any change in the law; and its assertion of clear error is not only unsupported, but also clearly wrong.  (*See* Section I.)

Contrary to Xinuos' contention, the Court correctly concluded that Xinuos' purported copyright claim ("the Claim") accrued once, when owned by SCO, and was retained by SCO and not sold to Xinuos in their 2011 Asset Purchase Agreement ("the APA").  Rather, the Claim was released by SCO when it settled nearly two decades of litigation with IBM in 2021.  As this Court ruled, the Claim is an ownership claim for accrual purposes, because it does not focus on "the nature, extent, or scope" of copying.  The Claim is also an ownership claim because it concerns classic copyright ownership rights associated with the source code from Project Monterey ("the Code" or "the Monterey Code") that have been a matter of controversy for more than two decades.  What's more, the central question in IBM's summary judgment

motion was whether SCO or Xinuos *owned* the Claim. Xinuos' contentions to the contrary are misplaced: they mischaracterize the Court's ruling, misstate the controlling law and elide undisputed facts that are dispositive. (*See* Section II.)

While Xinuos' motion for reconsideration can and should be denied for the reasons set out in the Court's ruling, the motion should also be denied (and Defendants' motion for partial summary judgment granted) for reasons not reached by the Court. *First*, however the Claim is labeled, the parties to the Joint Development Agreement ("JDA") that governed Project Monterey agreed that the Claim accrued upon IBM's alleged breach of the JDA (a decade before Xinuos purports to have acquired rights from SCO). *Second*, the Claim necessarily depends on an alleged breach of contract that was unquestionably retained, litigated by SCO (without objection by Xinuos) and released by SCO in 2021 with bankruptcy court approval. *Third*, even if the Claim did not accrue by both operation of law and agreement two decades ago, SCO retained the Claim under the plain terms of the APA. Thus, Xinuos' motion should be denied—and summary judgment was proper—for multiple independent reasons. (*See* Section III.)

## ARGUMENT

### I.   XINUOS BORE A HEAVY BURDEN TO JUSTIFY RECONSIDERATION, AND IT CAME NOWHERE CLOSE TO MEETING THAT BURDEN

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (citation omitted), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016). Pursuant to Local Civil Rule 6.3 and Fed. R. Civ. P. 59, the movant must "demonstrate[] an 'intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (citation omitted). Xinuos has failed to do so.

As stated, Xinuos does not proffer any new evidence.  Nor does it point to any change in the law.  Rather, Xinuos contends that this Court committed clear error in characterizing the Claim as an ownership claim and not as an infringement claim.  (*See* Mot. at 4.)  However, Xinuos' motion falls far short of establishing clear error.

The Second Circuit has observed that "the standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  "A party seeking reconsideration may [not] repeat 'arguments already briefed, considered and decided.'"  *In re Facebook*, 43 F. Supp. 3d at 373 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Yet, that is precisely what Xinuos does.  Xinuos points to the same cases cited in the parties' summary judgment papers and the Court's bench ruling and argues that the Court misunderstood them.  (*See generally* Mot. at 7-12; Tr. 27:15-33:21.)  Xinuos does not identify any "controlling decisions or data that the court overlooked."  *In re Facebook*, 43 F. Supp. 3d at 373 (citation omitted).  Courts in this district have routinely found that the "re-presentation of case law previously considered by the Court does not suffice to establish clear error or manifest injustice."  *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 184 (S.D.N.Y. 2016); *In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 08 M.D.L. No. 1963 (RWS), 2009 WL 2168767, at *1 (S.D.N.Y. July 16, 2009) ("A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." (citation omitted)).

Xinuos' contention that Defendants did not argue that the Claim is an ownership claim is not only mistaken, *see infra* Section II.B, but also irrelevant to whether the strict standard for reconsideration is met.  So too is Xinuos' contention that the cases cited by the Court are distinguishable.  The Court's characterization of the Claim as an ownership claim is well grounded in Second Circuit caselaw.  (Tr. 28:13-29:2, 32:5-17 (citing *Kwan v. Schlein*, 634 F.3d 224, 228-30 (2d Cir. 2011)).)  Clear error requires more than the "doubt" Xinuos seeks to foster or mere "disagree[ment] with the Court's prior decision"; the court must be persuaded of "a clear conviction of error."  *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (quoting *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940); *Zdanok v. Glideen Co.*, 327 F.2d 944, 953 (2d Cir. 1964)); *In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y. 1995).  This standard is "strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (citation omitted), and is not met here.  *See Tonga Partners*, 684 F.3d at 52.

## II.   THIS COURT PROPERLY CHARACTERIZED XINUOS' PURPORTED CLAIM AS AN OWNERSHIP CLAIM BELONGING TO, AND RELEASED BY, SCO

Even if the Court undertakes to reconsider its decision, the ultimate result should be the same:  partial summary judgment should be entered in favor of Defendants and against Xinuos.  The Court correctly concluded that the Claim is an ownership claim (for accrual purposes) that accrued once (long before Xinuos purports to have acquired certain rights from SCO), that SCO owned, litigated and released and that may not now be asserted by Xinuos.  The Claim is an ownership claim for accrual purposes because (1) it does not focus on "the nature, extent, or scope" of copying, as the Court stated; (2) it concerns classic ownership rights (*e.g.*, the right to use and the right to prepare derivative works); and (3) the central question on IBM's

summary judgment motion was whether SCO or Xinuos *owned* the Claim.  Xinuos' contentions
to the contrary are mistaken.

> ### A.   The Claim Does Not Involve the Nature, Extent or Scope of Copying.

As this Court recognized, "a copyright infringement claim is an ownership claim
when it does not involve the nature, extent, or scope of copying but instead focuses on competing
assertions of ownership or rights in the work at issue."  (Tr. 32:5-9 (quoting *Roberts v.
BroadwayHD LLC*, 518 F. Supp. 3d 719, 730-31 (S.D.N.Y. 2021) ("*Roberts I*")).)  There is no
question that the dispute in this case does not involve "the nature, extent, or scope of copying."
*Kwan*, 634 F.3d at 229.

Where the issue is the difference between the rights in the work that the defendant
possessed and the rights in the work that the defendant exercised, then a dispute may implicate
"the nature, extent, or scope" of copying and the plaintiff has asserted an infringement claim.  *Cf.
Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 296 F. Supp. 3d 627, 641 (S.D.N.Y. 2017)
("A licensee's use of a license cannot give rise to a claim of copyright infringement, but a
licensee's use of copyright rights *beyond* the scope of its license can.").  But where the issue is
whether the defendant possessed any right in the work at all, then a dispute does not implicate
"the nature, extent, or scope of copying"; the dispute is about what rights in the work the
defendant possesses, and the plaintiff has asserted an ownership claim.  *See Kwan*, 634 F.3d at
229.

Here, the Claim centers not on whether or how or to what extent IBM used the
Monterey Code; IBM openly acknowledges that it acquired the code through Project Monterey
and used the code in its own products.  (¶ 10.)  Rather, as the Court properly pointed out, "the
crux of the dispute . . . is clearly whether defendants has had rights to the code."  (Tr. 31:6-8.)
Faced with this reality, Xinuos now attempts to reframe the dispute, newly asserting that it "does

not dispute that IBM had a legitimate license to use the copyrighted code for the limited purpose

of developing an IA-64 operating system during Project Monterey."  (Mot. at 8.)  In fact, Xinuos

has repeatedly disputed whether IBM had *any* license to the Monterey Code from the very

beginning of this litigation.  (*See* Compl. ¶¶ 33, 57-58; Opp'n at 2 (claiming that "no court has

ever determined IBM was entitled to any license to any code"), 16 n.15; Mot. at 14.)  Xinuos

plainly contends IBM did not have a license to use the Code in the only way that matters here.

In sum, this dispute "does not involve the nature, extent, or scope, of copying, and

therefore, ownership forms the backbone of the 'infringement' claim at issue here."  *Kwan*, 634

F.3d at 229.  Because Xinuos' claim is an ownership claim, the Claim "occurred only once . . . in

2001" and thus "the claim belongs to SCO."  (Tr. 30:3-7; *see* Mot. at 5.)  Xinuos cannot sue on a

claim that belongs to someone else.[1]

### B.    IBM Has Asserted a Competing Interest in the Bundle of Copyright Ownership Rights.

The nature of copyright ownership also makes clear that IBM has asserted

competing interests in the ownership rights associated with the Monterey Code.  Copyright

ownership, after all, "is a 'bundle of discrete rights' regarding the owner's ability to use his

property," *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007), including the rights to reproduce,

prepare derivative works, distribute and perform the copyrighted work, and these discrete rights

can be transferred individually without also transferring ownership of the copyright, 17 U.S.C. §

---

[1] Xinuos fails to even mention this Court's ultimate conclusion that "the claim belonged
to SCO, and SCO has released defendants from it."  (Tr. 34:7-8.)  Xinuos instead suggests that
this Court granted summary judgment because it erroneously concluded "that the claim is time-
barred."  (Mot. at 5; *see also id.* at 6.)  While it is true that an ownership claim brought more than
three years after it accrued is time-barred, *see Kwan*, 634 F.3d at 229, this Court's decision was
based primarily on the fact that the claim belonged to SCO, not that it is time-barred (though it
is).  (*See* Tr. 27:15-19, 34:6-11.)

106; *see Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 35 (2d Cir. 2005).  That disputes over individual rights in this "bundle" may give rise to ownership claims—and that a dispute over title to the copyright embodying *all* rights is not the sole basis of an ownership claim—is made apparent by *Kwan*.  While the central dispute in *Kwan* was about copyright ownership *qua* ownership, the Second Circuit's discussion of the distinction between ownership and infringement claims refers not only to ownership *in toto* but also to the individual rights inherent to copyright ownership.  For example, the Second Circuit states that "an ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right'" in the work.  *Kwan*, 634 F.3d at 228 (citation omitted).  *Kwan* also notes that "the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are at issue," and not just when copyright ownership is at issue.  *Id.* at 229 (quoting *Big E. Ent., Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 795 (S.D.N.Y. 2006), *aff'd*, 259 F. App'x 413 (2d Cir. 2008)); *see also Walker v. Carter*, 210 F. Supp. 3d 487, 505 (S.D.N.Y. 2016) (finding that the plaintiff "himself has placed the ownership of the [copyrighted work] at the center of this litigation" by asserting that "none of the defendants own any copyright rights" in the work).

Xinuos contends that Defendants did not dispute Xinuos' ownership of its purported copyrights in seeking summary judgment.  (*See* Mot. at 6.)  While Defendants assumed for purposes of their motion that Xinuos owned the copyrights in question, they did not in any way assume or agree that IBM lacked ownership rights with respect to the copyrights or the code at issue.  On the contrary, IBM has asserted ownership rights regarding the Code for more than two decades—including in seeking summary judgment here.  (*See* MPSJ at 15, 17; *see also id.* at 16 (citing *Kwan*, 634 F.3d at 228-30).)  Whether or not Xinuos owns the copyrights in

question, IBM has ownership rights in the Code, and the parties' dispute is fundamentally an ownership dispute.  IBM has long had the right to use the Code and has done so openly for decades.  For example, IBM unquestionably owns the various works, including numerous iterations of the AIX operating system, that it created (using the Monterey Code) as allegedly impermissible derivative works.  (*See*, *e.g.*, ¶¶ 11, 33.)  Xinuos' argument that IBM did not have a right to use the Code necessarily presents a dispute over IBM's ownership of its own proprietary works, too.

What's more, Xinuos purports to stand in the shoes of SCO and Santa Cruz.  The only ownership rights it has over the Monterey Code are those that SCO and Santa Cruz could give it.  Those are the rights IBM contested for nearly two decades in response to allegations that it misappropriated and misused the Code in breach of the JDA.  In the Utah litigation, "SCO alleged that IBM had infringed copyrighted code that SCO's predecessor [Santa Cruz] had obtained from Novell, Inc., in 1995."  (Tr. 9:17-19.)  Specifically, SCO claimed that it "own[ed] all right, title and interest in and to UNIX and UnixWare operating system source code," which Santa Cruz had shared with IBM via Project Monterey.  (Ex. 16 ¶ 2; *see also id.* ¶¶ 31, 59, 183-84, 194.)  IBM not only denied all such claims, *see generally* Answer to Second Amended Complaint, *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, No. 2:03-cv-00294-DN (D. Utah Mar. 26, 2004) ("Answer"), but also specifically disputed SCO's claims to ownership of the Monterey Code because, IBM argued, Novell, Inc. ("Novell") "purports to have registered copyrights relating to" the Code and "has the right to waive and has properly waived the purported breaches by IBM."  *Id.* ¶¶ 199-200.  That led to a separate lawsuit about copyright ownership, also in Utah:  "SCO was [also] litigating with Novell over which party owned the Unix and UnixWare copyrights that SCO's predecessor had allegedly purchased from Novell in 1995."  (Tr. 10:5-7;

¶ 26; Ex. 31 at 2-3.)  And IBM brought counterclaims against SCO specifically disputing

ownership of the source code at issue and asserting IBM's rights to the code.  *See* Answer to

Amended Complaint at 32, 34, *SCO Grp, Inc. v. Int'l Bus. Machs. Corp.*, No. 2:03-cv-00294-DN

(D. Utah Aug. 6, 2003).

In short, contested assertions of ownership rights in the Code are at the heart of

allegations about Defendants' purported misuse of the Code, just as they had been in previous

litigation between IBM and SCO (Xinuos' alleged predecessor in interest).

**C.   Whether SCO or Xinuos Has the Right to Sue IBM for Infringement Poses
An Independently Dispositive Ownership Dispute.**

In the present case, in dispute was not only whether IBM has rights in the

Monterey Code, *see supra* Section II.B, but also who owned the right to sue for infringement of

the Monterey Code in light of the APA, *see infra* Section III.C.  The latter dispute, *i.e.*, whether

SCO or Xinuos owned the infringement claim and could sue IBM, is independently dispositive:

if "the claim belongs to SCO . . . plaintiff cannot sue on it now."  (Tr. 27:16-18.)  The Claim

unquestionably implicates a copyright ownership interest, as only the owner of a copyright or an

exclusive licensee (who also has an ownership interest) can sue for infringement.  *Davis*, 505

F.3d at 101; *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 504 (9th Cir.

1987).

That Defendants do not themselves assert a competing claim of ownership *qua*

ownership concerning the copyrights covering every line of code is immaterial for reasons

independent of the fact that IBM claims ownership rights (*e.g.*, the rights to use and to prepare

derivative works).  In assessing whether a copyright claim implicates primarily questions of

ownership or infringement, courts have concluded that "Defendants' [asserted] ownership of the

copyright is irrelevant; instead, the question is whether the *plaintiff* is 'seeking a declaration of

sole ownership.'"  *Walker*, 210 F. Supp. 3d at 507 (quoting *Big E. Ent.*, 453 F. Supp. 2d at 794);

*see also Urbont v. Sony Music Ent.*, 831 F.3d 80, 84-85, 88 (2d Cir. 2016).  That is what Xinuos

seeks:  a declaration that it alone has the right to litigate the Claim against IBM.  (*See* Opp'n at

10 ("[H]ere, [SCO] did not retain ownership or any exclusive right and thus lacks standing to sue

on the copyrights.").)  Courts in the Second Circuit and elsewhere have deemed copyright claims

to be ownership claims where, as here, Defendants countered that a third party is the true owner

of the copyright interest.  *See, e.g.*, *Walker*, 210 F. Supp. 3d at 507; *Webster v. Dean Guitars*,

955 F.3d 1270, 1276 (11th Cir. 2020); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 232

F. Supp. 3d 384, 387, 389-90 (S.D.N.Y. 2017), *aff'd*, 738 F. App'x 722 (2d Cir. 2018); *Seven

Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254-55 (9th Cir. 2013).

        SCO made clear it had a competing ownership interest in the Claim by openly

litigating it for years.  (Tr. 13:5-14:25.)  In 2011, SCO asked the Utah district court to reopen its

case against IBM (which had been administratively closed after SCO filed for bankruptcy) so it

could proceed with litigating its claims that IBM improperly used the Monterey Code.  (¶ 41.)

The Utah district court did so in June 2013, and SCO and IBM litigated whether IBM had

misappropriated the Monterey Code for years after.  (¶¶ 42, 44, 47-48.)  In 2015, the parties in

*SCO v. IBM* submitted a status report, explaining that SCO's unresolved claims "concern[] the

Project Monterey joint venture" and, specifically, allegations that IBM had misappropriated the

Monterey Code.  (Ex. 21 at 3.)  In 2016, SCO expressly asked the Tenth Circuit to revive its

claim of copyright infringement against IBM relating to the Monterey Code.  *SCO Grp., Inc. v.

Int'l Bus. Machs. Corp.*, 879 F.3d 1062, 1075 (10th Cir. 2018).  SCO's prosecution and release

of its claims in the Utah litigation,[2] which incorporated "the copyright infringement [claim as] a lesser included claim of the unfair competition claim," was a clear assertion of its ownership of the same claim Xinuos now brings.  (Tr. 15:17-19.)

Any ownership dispute between SCO and Xinuos accrued in 2011, when SCO asked to reopen the Utah litigation, *see Kwan*, 634 F.3d at 228 (noting that "an express assertion of sole . . . ownership" triggers the accrual of an ownership claim), or—at the very latest—by February 2016, when SCO appealed to the Tenth Circuit challenging the district court's summary judgment ruling as to its claims concerning Project Monterey.  (*See* Ex. 33.)  Thus, even if the present case involved alleged infringement (as Xinuos argues), the Claim is time-barred.  Where a dispute presents issues of both ownership and infringement, "the infringement claim is timely only if the corresponding ownership claim is also timely."  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389-90 (6th Cir. 2007) (citation omitted); *see also Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (barring plaintiff's copyright claim despite "defendants' continued exploitation of the copyright within three years of his filing suit" because it implicated a "time-barred claim of ownership of a copyright interest").  And here, the corresponding ownership claim is not timely; any associated infringement claim is therefore also untimely.

---

[2] This Court has noted that "Xinuos never raised any objections to SCO's continued assertion of its Project Monterey claim against IBM" even though "*SCO v. IBM* garnered media attention, including regarding the Project Monterey claim."  (Tr. 16:5-8.)  Xinuos cannot claim that it stayed silent because it was unaware of SCO's conduct, as "plaintiff must have done its due diligence before entering into the APA and familiarized itself with the Utah litigation."  (*Id.* 34:2-5.)  Xinuos' inaction means that its claim also fails because of the discovery rule.  (*See* MPSJ at 23-24; Reply at 9.)

**D.    Xinuos' Claim That This Court Wrongly Broadened the Second Circuit's Ownership-Infringement Doctrine Is Mistaken.**

Xinuos argues that this Court erred in categorizing disputes about rights to use as ownership claims.  (Mot. at 8.)  But Xinuos' argument misstates the full scope of the dispute in this case and ignores controlling Second Circuit precedent.  As discussed, it is clear from both *Kwan* and from the nature of the "bundle" of rights associated with copyright ownership that ownership claims cover disputes of not only ownership *qua* ownership, but also the associated "rights in the work at issue."  *Roberts I*, 518 F. Supp. 3d at 730-31; *see also Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 543 (S.D.N.Y. 2015) (noting that ownership claims are those where "ownership of a copyright (*or other entitlement*) was the principal fact in issue" (emphasis added)).

Xinuos misconstrues the relevant caselaw when it claims that "none of the cases cited in the Court's bench ruling, or any other controlling authority that Xinuos's counsel has been able to locate, has held that a dispute over a nonexclusive license *in the absence of an express or implied claim of ownership by the defendant* constitutes an ownership claim, not an infringement claim."  (Mot. at 9.)  As stated, this case does involve competing claims of ownership rights.  Moreover, an express or implied claim of ownership by the defendant is *not* a prerequisite for an ownership claim, where (as here) the defendant asserts that a third party is the true owner of the relevant copyright interest.  *See, e.g.*, *Walker*, 210 F. Supp. 3d at 507, 508 & n.9 (characterizing claim as an ownership claim where Defendants asserted a right to use the work but did "not present evidence that they own or co-own the copyrighted item"); *Latin Am. Music Co.*, 232 F. Supp. 3d at 389-90.  While the Second Circuit has not addressed this precise issue, other circuits have—and have also found copyright claims to be about ownership even in

the absence of an express or implied claim of ownership by the defendant.  *See*, *e.g.*, *Webster*, 955 F.3d at 1276; *Seven Arts Filmed*, 733 F.3d at 1254-55.

        Nor is *Roberts II* of any help to Xinuos.  *See Roberts v. BroadwayHD LLC*, No. 19 Civ. 9200 (KPF), 2022 WL 976872 (S.D.N.Y. Mar. 31, 2022) ("*Roberts II*").  Although Xinuos "submits that the material facts [in *Roberts II*] are indistinguishable" from the facts in this case, it fails to address or even mention the key fact identified by this Court in concluding that this case only "bear[s] superficial similarity to *Roberts II*."  (Mot. at 8; Tr. 33:2-3.)  "[T]he plaintiff [in *Roberts II*] acknowledged that the defendant had a legitimate license and alleged that defendant went beyond what the license allowed [whereas] [h]ere plaintiffs argue . . . [that IBM] had and has no right to use the code at all."  (Tr. 33:3-9 (internal citations omitted).)  That is, the key question in *Roberts II*, as Xinuos recognizes, was whether "the defendants had exceeded the scope of their limited license."  (Mot. at 8 (citing *Roberts II*, 2022 WL 976872, at *9).)  By contrast, the crux of Xinuos' argument here is not that IBM has exceeded the scope of its license, but that IBM was not "entitled to any license to any code," thus focusing in on the question of "whether defendants has had rights to the code."  (Opp'n at 2; Tr. 31:7-8.)  Xinuos contends IBM had no right at all to use the disputed code in IBM's AIX for Power products.  (*See* Compl. ¶ 33.)  That Xinuos fails to even acknowledge the reasoning underlying the Court's conclusion is fatal to its claim that this Court erred in analogizing this case to *Roberts I* instead of *Roberts II*.

        Even the more restrictive reading of *Kwan* suggested by Xinuos—that it "refers only to disputes over *ownership* as the harbinger of an ownership claim"—does not support a claim of clear error.  (Mot. at 12 (citing *Kwan*, 634 F.3d at 229).)  As stated, "mere doubt . . . is not enough to open the point for full reconsideration."  *Fogel*, 668 F.2d at 109 (citation omitted).  And Xinuos does not even offer grounds for that.  While disputes about "rights in the work"

were not expressly included in the definition of ownership claims in *Kwan*, it does not follow

that such disputes are excluded.  *Cf. State of Ill., Dep't of Pub. Aid v. Schweiker*, 707 F.2d 273,

277 (7th Cir. 1983) ("Not every silence is pregnant.").  Xinuos has not pointed to any Second

Circuit cases standing for that proposition in its motion.[3]  *See CBF Industria de Gusa S/A v.*

*AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 244 (S.D.N.Y. 2023) ("In the absence of [binding]

precedent, the Court does not conclude that [the prior] holding was 'clear error' or presented a

manifest injustice.").  Nor has Xinuos identified any case stating or even suggesting that

*Roberts I* was wrongly decided.  The Court properly followed Judge Failla's reasoning—

especially as this case, like *Roberts I*, does not implicate a dispute about the "nature, extent, or

scope of copying."  *Kwan*, 634 F.3d at 229.

### E.    Xinuos Wrongly Contends That This Court Misapplied the *Walker* Factors.

Finally, Xinuos suggests that this Court misapplied the *Walker* factors but fails to

identify any clear error in this Court's reasoning.  (Mot. at 10-11.)  With respect to the first,

second and fourth factors, this Court correctly considered the parties' arguments as to IBM's

"ownership or rights in the work" at issue; Xinuos' assertion that the analysis should be limited

to ownership alone, and should not include the attendant ownership rights, has no merit, as

discussed *supra* Section II.B.

---

[3] The cases cited by Xinuos are neither controlling nor analogous.  (*See* Mot. at 7.)  In *PK Music Performance, Inc. v. Timberlake*, the Court found that "Defendants have asserted no more than 'unsupported defects in ownership.'"  No. 16-CV-1215 (VSB), 2018 WL 4759737, at *6 (S.D.N.Y. Sept. 30, 2018) (quoting *Flo & Eddie*, 80 F. Supp. 3d at 543).  And in *Flo & Eddie*, the defendant offered "not a scintilla of evidence to support any [] assertions . . . that other people might have claims to ownership."  80 F. Supp. 3d at 543.  By contrast, Defendants here have provided extensive evidence that it was SCO, not Xinuos, that owned the Claim.  (MPSJ at 7-21; *see* Tr. 13:5-14:25.)  While Xinuos may rely on *PK Music Performance* and *Flo & Eddie* to argue that such assertions of third-party ownership do not present an ownership dispute, that position is at odds with other courts in this district and does not justify reconsideration.  *See*, *e.g.*, *Walker*, 210 F. Supp. 3d at 507.

With respect to the third factor, Xinuos claims that the Court wrongly "overlooked the three full pages of allegations in the Complaint . . . about the means of IBM's infringement." (*Id.* at 11.)  But this Court did not ignore Xinuos' allegations; rather, it rightly recognized that the relevance of the third factor—"whether the plaintiff alleges anything specific about the means of infringement"—is at a nadir where the means of infringement is not in dispute. *Walker*, 210 F. Supp. 3d at 505.  That is the clear import of this Court's observation, in its analysis of the third *Walker* factor, that "defendant does not seem to dispute that the code is, in fact, incorporated in its product."  (Tr. 31:23-24; *see also id.* 32:1-3.)  After all, a copyright dispute that does not involve a dispute about whether the work was used presents a paradigmatic ownership claim, since "the nature, extent, or scope of copying" is not at issue.  *See Kwan*, 634 F.3d at 229.  By contrast, specific allegations about the means of infringement are relevant where the parties *do* dispute whether or to what extent the defendant has used the copyrighted work— questions that are not at issue in this case.  (Tr. 31:23-32:3.)

Ultimately, the "substance of the claim" is what matters most in determining when a copyright claim accrues, *Walker*, 210 F. Supp. 3d at 505, not a formulaic recitation of the *Walker* factors, which are simply a collection of the possible indicia of an ownership claim that courts consider.  *See also Narrative Ark Ent. LLC v. Archie Comic Publ'ns, Inc.*, No. 16-cv-06109 (VB), 2019 WL 4142362, at *4 (S.D.N.Y. Aug. 29, 2019) (characterizing the *Walker* factors as "[s]alient" and not prerequisites).  That this Court found the third factor to be irrelevant where "ownership forms the backbone of the 'infringement' claim at issue" is in line with Second Circuit precedent.  *Kwan*, 634 F.3d at 229.

III.    EVEN IF XINUOS' PURPORTED CLAIM WERE NOT AN OWNERSHIP
        CLAIM FOR ACCRUAL PURPOSES (AND IT IS), IT IS FORECLOSED FOR
        MULTIPLE, INDEPENDENT REASONS

        While this Court properly characterized Xinuos' purported copyright claim as an

ownership claim belonging to, and retained and released by, SCO, the Claim also fails for

reasons not addressed in the Court's bench ruling.  Each separately merits denial of Xinuos'

motion for reconsideration.

        A.      Santa Cruz and IBM Agreed in the JDA That the Claim Accrued More Than
                Two Decades Ago.

        In arguing that the Claim did not accrue before the APA was signed, Xinuos

disregards the plain language of the JDA, which governs Project Monterey and the disputed

code.  Indeed, any claim that IBM infringed one of the asserted copyrights based on IBM's use

of the Monterey Code accrued nearly a decade before SCO is alleged to have sold the asserted

copyrights to Xinuos—not only because any such claim presents an ownership dispute, *see supra*

Section II, but also because of the agreement between IBM and Santa Cruz (Xinuos' alleged

predecessor before SCO).

        Under New York law, which governed the JDA (¶ 8), the parties to a contract

may agree upon an accrual method that differs from otherwise applicable accrual provisions.

*See*, *e.g.*, *Putrelo Constr. Co. v. Town of Marcy*, 964 N.Y.S.2d 812, 813 (App. Div. 4th Dep't

2013); *see also Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*, 615 N.Y.S.2d 160, 161

(App. Div. 4th Dep't 1994) (ruling that a contract provision prescribing "when the period of

limitations will commence will . . . govern in the absence of duress, fraud or misrepresentation"

(citations omitted)).  That is exactly what IBM and Santa Cruz agreed to do in connection with

Project Monterey and the code at issue:  they "agreed under Section 22.3 of the JDA that any

16

legal action related to a breach of the JDA had to be commenced no later than two years from the date of the breach." (Tr. 7:7-10; *see also* ¶ 8.)

There is no question Xinuos' purported copyright claim "relates to" an alleged breach of the JDA.[4]  (*See* Tr. 15:8-11 (noting that the Tenth Circuit has already found that "the misappropriation claim was related to a breach of the JDA").)  Courts have interpreted "related to" language (like that in Section 22.3 of the JDA) to incorporate non-contractual claims.  *See, e.g.*, *L'Objet, LLC v. Limited*, No. 11 Civ. 3856 (LBS), 2011 WL 4528297, at *2 (S.D.N.Y. Sept. 29, 2011) (finding copyright claim fell within a clause stipulating that "[a]ny controversy or claim arising out of or related to" the contract must be arbitrated); *see also My Play City, Inc. v. Conduit Ltd.*, 589 F. App'x 559, 563 (2d Cir. 2014) ("The infringing conduct was a continuation of the very conduct that [the defendant] undertook in performing the contract.  Claims based on that conduct therefore *relate to* the agreements." (emphasis added)).

It is undisputed that IBM obtained the disputed code as part of Project Monterey. (*See* ¶ 48.)  The dispute is whether IBM owned "the right to use the code" or used it without permission.  (Tr. 30:17; *see also* ¶¶ 19-20, 44.)  IBM contends it had rights in the code, both to use it and to create derivative works, and if that is true, then Xinuos' infringement claim necessarily fails.  *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991).  Although Xinuos had nothing to do with Project Monterey, it contends IBM used the

---

[4] While Xinuos asserts that the JDA does not apply to its copyright claim because it is "suing on, quote, code developed outside of the JDA and Project Monterey, unquote . . . there's *no support* cited for that proposition." (Tr. 26:10-14 (emphasis added).)  As this Court noted, Xinuos "has identified no code on which it is suing other than that which IBM allegedly stole during Project Monterey," and the Monterey Code is unquestionably governed by and related to the JDA.  (*Id.* 27:2-4.)

code without permission, *i.e.*, that IBM used the code in breach of the JDA.  (Compl. ¶¶ 2, 56-58.)  Xinuos' purported copyright claim necessarily relates to an alleged breach of the JDA.

As a result, the Claim is subject to the accrual and limitations provisions in Section 22.3 of the JDA and accrued when IBM took the code and used it in its products in 2001, with IBM's release of AIX version 5L 5.0.[5]  (¶ 11.)  Hence, the Claim belonged to SCO at the time it entered into the APA in 2011 and fell squarely within the definition of an "Excluded Asset" under the APA, which "include those [claims] that had accrued to SCO that it would have the right to assert in the future."  (Tr. 27:12-14.)  Accordingly, there is no reason SCO could not do what it did:  retain any claim that IBM stole code as part of Project Monterey and used it without authorization.  That claim turns on a discrete issue—whether IBM obtained a right in the copyrighted works at issue from Santa Cruz (the then-owner of the Code) as part of Project Monterey—and not on allegations of recent infringement.  *See also Simmons*, 810 F.3d at 116.

**B.    The Copyright Claim Necessarily Depends on a Contractual Right Retained and Released by SCO.**

Even if Santa Cruz and IBM had not reached an agreement (under the JDA) as to when any claim for copyright infringement concerning the disputed code would accrue, Xinuos' purported claim and motion for reconsideration still fail.  Xinuos' copyright claim depends on separate claims, rights and issues that were retained and settled by SCO and thus cannot be relitigated by Xinuos.

---

[5] Notably, the JDA states that the action must be brought within two years of "the breach," meaning the *relevant breach*, which in Xinuos' case (according to its own Complaint) occurred when Project Monterey was terminated. (Compl. ¶ 58.)  There is no basis for Xinuos' claim of "continually-accruing" breaches of the JDA that continually re-set the limitations clock. (*See* Opp'n at 18-19.)

Xinuos insists that the Claim is really about whether "IBM exceeded the scope of [the] limited license [from Project Monterey] by copying the code into various operating system products." (Mot. at 8.)  Assuming that is true, the Claim still depends entirely on a dispute about "whether IBM satisfied the contractual requirements for an ongoing license," *i.e.*, whether IBM stole the code in breach of the JDA (as Xinuos incorrectly alleges) or obtained a license to the code under the JDA.  (*Id.* at 13; *see also* Compl. ¶¶ 56-58 (basing claim on alleged theft of code in 2001).)  That dispute is identical to the dispute at the heart of SCO's misappropriation claim in the Utah litigation.  *See SCO Grp.*, 879 F.3d at 1072.  And it is undisputed that (i) SCO retained the right to pursue its misappropriation claim (and other claims) against IBM for misusing the disputed code in breach of the JDA, (ii) actually litigated such claims and underlying issues with IBM for nearly two decades and (iii) then settled them in a court-approved settlement.  (*See* Tr. 12:17-20, 13:5-15:23, 16:20-17:3.)  Thus, even if Xinuos could assert a copyright claim against IBM (notwithstanding the JDA's accrual provision), it could never succeed on the claim because it turns on a dispute about IBM's alleged license rights that SCO retained in the APA and forever released with court approval in *SCO v. IBM*.

Xinuos attempts to skirt this obstacle by arguing that there was no "purported grant (or even acknowledgment of) IBM's alleged license rights" in the Settlement Agreement. (Mot. at 13.)  But Xinuos' reading of the Settlement Agreement is contrary to its plain language, *see Pickwick Commc'ns, Inc. v. Weinberg*, No. 91 Civ. 1642 (AGS), 1994 WL 620950, at *12 (S.D.N.Y. Nov. 8, 1994) (citation omitted), *aff'd*, 89 F.3d 825 (2d Cir. 1995), which released "any and all claims against IBM, including claims, quote, concerning, related to, arising out of, or arising from the Utah litigation, the proof of claim for IBM's relationship with (SCO or its predecessors), Project Monterey, or IBM's relationship with SCO."  (Tr. 16:21-17:3; *see* ¶ 80.)

19

Xinuos appears to suggest that the Agreement released only those claims that are expressly

named—rather than, as the Agreement clearly states, "any and all claims against IBM."  As this

Court has already noted, claims against IBM arising out of or from the Utah litigation necessarily

included the "lesser-included claim" that IBM did not obtain a license to use the code at issue.

(*See* Tr. 15:8-23; *see also* ¶¶ 87-92; Ex. 20 at 18-19.)  In fact, SCO's unfair competition claim,

which relied upon the allegation that IBM had misused the Monterey Code without a valid

license, was SCO's *only* remaining claim at the time of the Settlement Release.  *See SCO Grp.*,

879 F.3d at 1075.  Thus, the suggestion that the Settlement Agreement did not release SCO's

allegations about IBM's alleged license rights, which SCO litigated for years, *id.* at 1072, is

baseless and should be rejected.

Moreover, just as Xinuos could take no more than SCO could give, *see*, *e.g.*,

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 194 (2d Cir. 1985), *abrogated on other*

*grounds by eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), Xinuos necessarily

purchased the copyrights from SCO subject to any legal claim or right reserved by SCO—

including SCO's reservation of the right to pursue its claim that IBM breached the JDA and

misused the Monterey Code without the necessary license.  *See also* 17 U.S.C. § 205(e).  Xinuos

cannot split that claim, reserving for itself the right to dispute IBM's alleged license rights after

2011 while leaving SCO the right to prosecute and release a claim for the exact same factual

predicate before 2011,[6] especially where the alleged breach and misuse that forms the nucleus of

---

[6] Xinuos' argument that the release "was not a resolution of those claims . . . in IBM's favor" is a red herring.  (Mot. at 13.)  Defendants do not contend that the bankruptcy court's approval of the settlement and overruling of Xinuos' objection resolved the merits of the Claim; Defendants contend simply that the Agreement released a claim without which Xinuos' claim crumbles as a matter of law.  *Cf. Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992) (noting "any defenses that are valid against [a party in a prior suit] are also applicable against" a future party who stands in the shoes of the prior party).

the claim happened only once, in 2001.  *See Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534

F. App'x 47, 48 (2d Cir. 2013) (barring later-filed suit brought under distinct statute where "both

actions share a common inquiry"); *see also Digit. Dynamics Software, Inc. v. Eclipse Gaming*

*Sys., LLC*, No. 18 C 892, 2018 WL 2463378, at *5, *7 (N.D. Ill. June 1, 2018).  Xinuos' theory

of the case depends on a legal impossibility.

### C.   SCO and Xinuos Agreed, with Bankruptcy Court Approval, That SCO Retained the Claim.

Finally, although Xinuos had nothing to do with Project Monterey and was not a

party to the JDA, Xinuos claims to have acquired the right to assert a copyright claim concerning

the Monterey Code under the APA.  However, the APA is clear that SCO did not sell, but rather

expressly retained, *all* claims, rights and remedies against IBM—even claims that had not

accrued by then.[7]  That includes the copyright claim Xinuos seeks to resurrect here.

"In connection with SCO's bankruptcy proceeding, SCO and Xinuos entered into

an asset purchase agreement or APA on January 19, 2011." (Tr. 10:12-14.)  The "Sale and

Purchase of Acquired Assets" provision of the APA "granted Xinuos certain, quote, acquired

assets, unquote, but carved out, quote, excluded assets, unquote, from the transfer."  (*Id.* 10:14-

16.)   As this Court has noted, "Section 2.1(c) [attached to the APA] reinforced that the excluded

assets did not fall within the definition of acquired assets." (Tr. 10:20-21.)  The Excluded Assets

were defined as including, among other things, any rights and remedies against IBM and Red

Hat and relating to claims arising from Unix or UnixWare intellectual property:

> all of Seller's claims, causes of action and other legal or equitable rights and
> remedies (A) against Buyer with respect to the transactions contemplated by this
> Agreement and (B) relating to all rights and interests in all litigation claims

---

[7] To be clear, Defendants do not suggest "that the APA carved out any conceivable claim
SCO or its successor could ever have against IBM or Red Hat." (Tr. 27:7-9.)  Rather, the APA
clearly carved out only claims related to or arising out of the Monterey Code.

> pending or that may be asserted in the future, against International Business
> Machines Corporation, Novell, Inc., SUSE Linux GmbH or others, and
> (C) relating to every claim of any nature whatsoever, known or unknown that has
> been or may be asserted against RedHat, Inc. or others relating to or arising from
> all licensing, covenant not to sue rights, releases or other claims relating to any
> allegations that Linux violates SCO's Unix or UnixWare intellectual property,
> contract or other rights;

(¶ 34; *see* Tr. 11:8-13.)  As plainly stated, all Unix-related claims against IBM and Red Hat were

expressly carved out of the sale transaction and thus remained an asset of the bankruptcy estate.

(¶ 34.)

       Where, as here, the language of an agreement is clear and unambiguous—in this

case showing that SCO retained *any and all* rights to sue IBM relating to Project Monterey—it is

determinative as to the parties' intent and justifies the entry of summary judgment.  *See*, *e.g.*,

*Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759-60 (Del. 2018) (affirming summary judgment based

on plain language of purchase agreement, observing that "[i]n interpreting a contract, the Court

must give priority to the parties' intentions as reflected in the four corners of the agreement,"

interpreting "clear and unambiguous terms according to their ordinary meaning" (internal

quotation marks and citations omitted)); *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55

A.3d 330, 337 (Del. 2012) (affirming grant of summary judgment based on unambiguous

language of release between the parties); *Novellino v. Life Ins. Co. of N. Am.*, 216 A.2d 420, 423

(Del. 1966) (affirming summary judgment where contract language was plain on its face).

"Any" means "any", and "all" means "all"; it does not mean "any and all claims except those

Xinuos now wishes to assert."

       That the APA carved out the copyright claim is also established by the resolution

of the Utah litigation.  In 2021, when the district court in that case approved SCO's settlement

with IBM, it necessarily found that SCO owned the claim to be released; if SCO did not have the

right to release the claim, then it would have been in breach of its representations under the

22

Settlement Agreement that it was "duly authorized to enter" the agreement.  It cannot be that the bankruptcy court approved as "fair and equitable" a settlement that SCO had no right to enter into and that would have allowed continued litigation of the supposedly released claim.  *See*, *e.g.*, *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (a court may approve a settlement in bankruptcy that it deems "fair and equitable" after "appris[ing] itself of all facts necessary to form an intelligent and objective opinion of . . . factors relevant to a full and fair assessment of the claims" (cleaned up)); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006) (approving settlement that was "fair, equitable, and in the best interest of the bankruptcy estate").

## <u>CONCLUSION</u>

For the reasons above, Defendants respectfully request that this Court deny

Xinuos' motion for reconsideration.

Dated:      February 20, 2024
            New York, New York

                                    Respectfully submitted,


                                    */s/ David R. Marriott*
                                    _____

                                    **CRAVATH, SWAINE & MOORE LLP**
                                    David R. Marriott
                                    Michael J. Zaken
                                        Worldwide Plaza
                                            825 Eighth Avenue
                                                New York, New York 10019
                                                    (212) 474-1000
                                                        dmarriott@cravath.com
                                                        mzaken@cravath.com

                                    *Attorneys for Defendants International*
                                    *Business Machines Corp. and Red Hat, Inc.*

24

**<u>CERTIFICATE OF SERVICE</u>**

It is hereby certified that on this 20th day of February, 2024, I caused the

foregoing MEMORANDUM OF LAW to be filed electronically with the Clerk of Court via the

Court's CM/ECF system.  Counsel for all parties in this case are registered CM/ECF users and

will be served by the CM/ECF system.


*/s/ David R. Marriott*
David R. Marriott