UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XINUOS, INC.,<br><br>                             Plaintiff,<br><br>              v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP. and RED HAT, INC.,<br><br>                             Defendants. | Case No. 7:22-cv-09777-CS-VR<br><br>**ORDER GOVERNING ELECTRONIC DISCOVERY** |

**1. PURPOSE, JOINT STATEMENT, CLAIMS AMOUNT, & CERTIFICATION**

This Order governs discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

Xinuos, Inc. ("Xinuos") has sued International Business Machines Corp. ("IBM") and Red Hat, Inc. ("Red Hat") (together, "Defendants") for violating Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and the Virgin Islands Antimonopoly Law. Xinuos contends Defendants conspired to divide and control the alleged paid Unix and Linux server operating system market. Defendants' motion to dismiss these claims was denied by the Court. Xinuos brought a copyright claim against only IBM, but that claim was dismissed on summary judgment. Xinuos has filed a motion to reconsider the summary judgment decision, which has been denied.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

3.  **COMPETENCE**

    Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

4.  **PRESERVATION**

    a)  The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to scope and methods for preservation including the following: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; and identification of computer system(s) utilized. The parties have not agreed on, but commit to further meet and confer regarding, temporal limitations (if any) on ESI to be preserved.

    b)  To reduce the costs and burdens of discovery, the parties represent that these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). ESI from these sources will be preserved to the extent it is preserved in the normal course of business, but they need not be collected, searched, reviewed, or produced, except for good cause shown:

        i.  backup systems used for disaster recovery purposes only or that are substantively duplicative of data that is more accessible to the party in control of such backup system elsewhere;

        ii.  systems, server, and network logs;

        iii.  systems and archives no longer in use that cannot be accessed without undue effort;

        iv.  automatically saved interim versions of documents;

  v. deleted, slack, fragmented, or other data accessible only by forensics;

  vi. random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

  vii. on-line access data such as temporary internet files, history, cache, and cookies;

  viii. dynamic fields of databases or log files that are not retained in the usual course of business; and

  ix. voice messages.

**5. SEARCH & REVIEW**

 a) The parties agree that, prior to undertaking an electronic search for ESI, a producing party shall specify the technique or techniques it will use to search for that material (the "Search Protocol"):

  i. A party that intends to use search terms will describe a protocol that will include: (1) the universe of ESI to which search terms will be applied (*e.g.*, custodians, non-custodial sources, date ranges), and (2) the search terms to be applied to that universe of ESI, and provide industry standard hit reports for such terms including showing hits, hits with families, and unique hits for each term applied, and the reference number of documents before search terms were applied.

  ii. A party that intends to use technology assisted review ("TAR") or any other type of AI to eliminate documents from attorney review will describe a protocol that will include: (1) the TAR software or system to be used; (2) the universe of ESI to which TAR is to be applied (*e.g.*, custodians, non-custodial sources, date ranges); (3) a description of the method for training the TAR model and identifying responsive ESI; and (4) a description of the method for validating the results of the TAR model.

    iii.  The Parties shall timely meet and confer in good faith regarding any disputes regarding their respective search methodologies.

**6. PROCESSING SPECIFICATIONS**

  a) Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

  b) Each party shall take reasonable steps to produce only a single copy of a responsive document by removing documents identified as duplicative based on MD5 or SHA-1 hash values at the document level across custodians. Documents within a document family shall be considered duplicative of other documents only if all documents within each document's document family are duplicative. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. A producing party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or AllCustodian. In the event of rolling productions of documents or ESI items, the producing party will, as needed, supplement the load files with updated DuplicateCustodian or AllCustodian information. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing party after the party has substantially completed its production of ESI. A producing party may use other commercially acceptable and reasonable methods to remove duplicate documents from production provided that method is disclosed to

the requesting party.

c) Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and its attachments and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Lesser included emails are not required to be separately listed in any privilege log.

**7. PRODUCTION FORMATS**

a) **General Form of Production.** The parties agree that all documents existing in electronic and paper format, except those to be produced as native files, as set forth in Section 7(f) below, shall be produced as black and white Group IV single-page TIFF image files with the associated text and metadata specified in this Section. The parties are under no obligation to enhance an image beyond how it was kept in the ordinary course of business. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

b) **Image Requirements.** TIFF image files shall be of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each TIFF image file will use the Bates number of the page as its unique file name. The Bates stamp must: (1) be sufficiently descriptive to identify the party producing the document (the "Producing Party"); (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; and (3) be sequential within a given document. Images shall show all text and images that would be visible in the original native format. Original document orientation as displayed in the native file should be maintained in the TIFF image (*e.g.*, portrait to portrait and landscape to landscape).

      c)      **Load File Requirements.** The parties shall provide image load files in Concordance (.OPT) format so as to facilitate the use of the produced images by a document management or litigation support system. The parties shall provide text files for each document containing searchable text with a filename that is the Bates number of the first page of the document. The extracted, relevant metadata should be provided in a Concordance .DAT in UFT8 format or other standard, compatible file format and extension as the receiving party specifies.

      d)      **Text Requirements.** All ESI and paper documents shall be produced with a corresponding multipage text file (*i.e.*, one .TXT file per electronic file or paper document as opposed to one text file per page). The text file for ESI shall be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI. The parties shall use reasonable efforts to create text files for paper documents using industry standard OCR technology. Each text file shall be named with the beginning Bates number of the electronic file or paper document to which the text file relates.

      e)      **Hard Copy Files.** The parties agree that all documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. Reasonable efforts are to be employed not to merge distinct documents into a single record, or split single documents into multiple records.

      f)      **Native Files.** The parties agree through the pendency of this litigation to exercise reasonable efforts to maintain all collected native files that may be relevant to this litigation in a manner that does not materially alter or modify the files or the metadata. The parties agree to produce Microsoft Excel or other spreadsheet files (including .csv and similar files), audio or

video files such as .wav or .mpeg files, and Microsoft PowerPoint files in their native electronic format and should contain the Bates number and confidentiality designation of the file in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains "File Produced in Native," the beginning Bates number and confidentiality designation. If redactions of slide presentation files are necessary, then these files may be produced in TIFF in accordance with Section 6(a) so long as the files are TIFFed in a manner that will yield production of all non-redacted content. If redactions of any other types of ESI produced natively are necessary, the parties shall meet and confer regarding how to implement redactions. Wherever reasonable and feasible, the producing party shall include accompanying metadata in the load file. Either party may request the production of file or files in native format where appropriate. If a dispute arises with regard to requests for the production of files in native format, the parties will meet and confer in good faith to try to resolve the dispute.

      g) **Structured Data and Source Code.** This Order does not govern the production format in which structured data or highly confidential technical documents such as source code or detailed processor architecture designs and diagrams shall be made available for production or inspection. The parties shall meet and confer, as necessary, regarding issues related to the production or inspection format of these sources of information. To the extent a request for production calls for the production of structured data stored in a database, the parties agree to meet and confer to discuss methods for identifying, extracting, and producing the structured data in a format that is reasonably usable to the receiving party.

      h) **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a document and any attachments to that document are produced in the same

production set and are identifiable as parent and child.

  i)  **Embedded Objects.** Certain documents may be embedded within other documents (*e.g.*, a spreadsheet embedded within a Microsoft PowerPoint document).  Where reasonably and technically feasible, and not subject to claims of privilege, as applicable, non-image embedded files shall be extracted as separate files and shall be treated as attachments to the file in which they were embedded.  The Parties shall take reasonable steps not to produce embedded images (*e.g.*, logos, signature blocks) as separate Documents.  The receiving party may request production of particular embedded files as separate file attachments, and the producing party shall not unreasonably deny such requests.

  j)  **Metadata Fields**.  Each of the metadata and coding fields set forth below that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, such data need not be produced.  Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

- BEGBATES
- ENDBATES
- BEGATTACH
- ENDATTACH
- PAGECOUNT
- HASHVALUE
- CUSTODIAN
- ALLCUSTODIAN

- DOCUMENTTYPE
- SENTDATE
- SENTTIME
- RECEIVEDATE
- RECEIVETIME
- BEGINDATE
- BEGINTIME
- ENDDATE
- ENDTIME
- TIME ZONE
- NATIVE FILE LINK
- AUTHOR
- FROM
- CC
- TO
- BCC
- SUBJECT
- TITLE
- FILENAME
- FILEEXT
- FILESIZE
- DATECREATED
- CREATETIME

- DATELASTMOD
- TIMELASTMOD
- TEXT
- ORIGINALFILEPATH
- ATTACHMENT COUNT
- CONFIDENTIALITY
- REDACTED

k) **Color.** Documents containing color need not be produced in color in the first instance, except any Microsoft PowerPoint documents that are not produced in native must be produced in color in the first instance. However, the receiving party may request production of certain documents in color, and the producing party shall not unreasonably deny such requests.

l) **Re-Productions.** Notwithstanding any provisions to the contrary, a set of Documents previously produced in another litigation, arbitration, government inquiry or other matter that is re-produced in this matter may be re-produced in the same manner and form as originally produced in the other matter, provided that the receiving party may seek re-production of documents in a different format (including metadata or text that would have been produced under the ESI Protocol) for good cause shown.

## 8. PRIVILEGE LOGS

a) If any party withholds any document that is responsive to a discovery request, and is otherwise discoverable under the Federal Rules of Civil Procedure, on the basis of the attorney-client privilege, work product doctrine, or any other discovery privilege, that party shall prepare a privilege log (Fed. R. Civ. P 26(b)(5)) setting forth the privilege relied upon and specifying separately for each document or for each category of similarly situated documents.

   b)  A party is not required to log redacted documents provided that (1) a metadata field is provided indicating what documents are redacted and reason for the redaction (*e.g.*, privilege, personal identifiable information), (2) the redacted document states the reason for the redaction in the text of the redaction box (*e.g.*, privilege, personal identifiable information) and (3) the producing party agrees to provide additional information in response to reasonable, individualized requests where the basis for a privilege redaction is unclear on the face of the redacted document itself.

   c)  A single document containing multiple email messages (*i.e.*, an email chain) may be logged as a single entry with sender and recipient information for only the most inclusive email message if the entire chain is privileged.  A document family (*e.g.*, an email and its attachments) may be logged as a single entry so long as the entire family is privileged and the log entry accurately describes both the parent and its attachment(s).

   d)  Privilege logs will be produced in Microsoft Excel format.

   e)  Attorneys or their staff must be identified in the log with an asterisk and a separate listing of such attorneys identifying for each their respective law firms or the corporate legal department where the attorney worked must accompany the log.

   f)  Privilege logs will be produced on a rolling basis, no later than forty-five (45) days after the date of each document production.

   g)  Following receipt of a privilege log, the receiving party may challenge any entry on the log.  Such challenge shall be made in writing.  The parties will meet and confer on any challenge within twenty-one (21) days.  If the parties are unable to resolve any dispute, the challenging party may submit the dispute to the Court pursuant to the Local Rules.

**9. REDACTION**

   To protect against potentially improper disclosure of information subject to the attorney-

client privilege, work product doctrine, or other recognized litigation privilege, the parties may redact materials that contain information protected from disclosure under the attorney-client privilege, work product doctrine, or any other recognized litigation privilege.  The parties may also redact sensitive personally identifying information (*e.g.*, credit card numbers, account passwords, SSNs) so long as that information is not responsive to any requests for production.  Such redactions in the text and in an accompanying metadata field shall indicate the reason for the redaction, such as, for example, "REDACTED: PRIVILEGE" or "REDACTED: PII."

## 10. INADVERTENT PRODUCTION/CLAW-BACK

Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents.  The production of privileged or work-product protected documents, ESI or information, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding, as set forth in the Proposed Rule 502(d) Order.  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or other information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. This protocol shall be interpreted consistent with the Proposed Rule 502(d) Order to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  If any producing party learns that material over which it claims privilege or protection has been produced, it must promptly notify any party that has received the material in writing.  Upon receiving such notification, a receiving party shall immediately destroy or sequester such material and certify that destruction or sequestration to the producing party.  Within 7 days of the producing party's notification to the receiving party that privileged and/or protected information has been disclosed, the producing party must provide a complete privilege log entry for each such document clawed back in whole and/or a

replacement production for those documents clawed back in part and redacted. Any motion to compel production by the receiving party must be made within 7 days of receiving the privilege log entry and shall not rely on any portion of the document(s) at issue other than the information disclosed in the producing party's privilege log.

If a receiving party identifies a document that appears on its face or in light of facts known to the party to be subject to another party's claim of privilege, the receiving party identifying the potential claim of privilege is under a good-faith obligation to notify the party holding the potential claim of privilege. Such notification will not waive the receiving party's ability to subsequently challenge any assertion of privilege with respect to the identified document. If the party holding the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice within 7 days of receiving notice from the receiving party.

## 11. REPLACEMENT PRODUCTION

If a producing party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with a load file necessary to link the replacement file to other previously produced document family members. The replacement document shall bear the same Bates number or, if agreed by the parties, a Bates stamp suffix reflecting that the document is a replacement.

## 12. ROLLING PRODUCTIONS

The parties agree to produce documents in response to discovery requests pursuant to Fed. R. Civ. P. 34 on a rolling basis.

## 13. DOCUMENTS PROTECTED FROM DISCOVERY

Communications involving trial counsel that post-date the filing of the complaint in this matter, and attorney-work product that post-dates the filing of the complaint in this matter, need not be placed on a privilege log. Communications and work product may be identified on a

privilege log by category, rather than individually, if appropriate.

## 14. PRODUCTION

a) The parties agree that they will undertake reasonable diligence to identify potential source(s) of ESI, timely disclose such sources to one another, and meet and confer on the sources to be searched.

b) The parties agree to meet and confer in good faith regarding the scope of search and production, including but not limited to: (i) the number of custodians; (ii) the identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery); and (v) information in the possession, custody, or control of non-parties.

c) The parties agree that they will provide this ESI Order to any non-parties that are served subpoenas or that otherwise produce documents as part of this case and that they will direct the non-party to comply with this ESI Order.

## 15. COSTS OF PRODUCTION

The parties agree to bear their own costs related to the production of documents and to work collaboratively to identify cost saving mechanisms that both parties agree to follow. Nothing in this Order prevents either party from later making arguments for the recovery or sharing of costs related to the collection, review or production of relevant ESI.

## 16. MODIFICATION

This Stipulated Order may be modified by written agreement of the parties or by the Court for good cause shown.

**IT IS SO ORDERED**

**Dated:** April 19, 2024

_____
Hon. Victoria Reznik
United States Magistrate Judge