**Crowell**

June 28, 2024

The Hon. Judge Victoria Reznik
U.S. District Court for the Southern District of New York

**Re:   Joint Letter Detailing Requests for Production Relevant to Xinuos' Code-Copying Allegations and Related Burden and Proportionality Arguments –** *Xinuos, Inc. v. IBM Corp. et. al.*, **Case No. 7:22-cv-09777-CS-VR (S.D.N.Y.)**

To the Honorable Judge Reznik:

Pursuant to Your Honor's Minute Order entered on June 21, 2024, Plaintiff Xinuos, Inc. ("Xinuos") and Defendants IBM Corp. ("IBM") and Red Hat, Inc. ("Red Hat") (collectively, "Defendants") jointly submit this letter identifying Xinuos' Requests for Production ("Requests" or "RFPs") that relate to Xinuos' anticompetitive code-copying allegations and addressing burden and proportionality.

In Section I, the parties identify the Requests that they agree relate to Project Monterey and/or Xinuos' code-copying allegations. In Section II, Xinuos identifies additional Requests that it contends could require productions of documents related to Project Monterey and/or Xinuos' code-copying allegations. In Sections III and IV, the parties set out their respective burden and proportionality arguments.

**I.   Requests that Explicitly Relate to Project Monterey or Xinuos' Code-Copying Allegations**

The Parties agree that four of Xinuos' Requests relate to Project Monterey/Xinuos' code-copying allegations. These are RFPs 58 and 59, which seek source code, and RFPs 80 and 91, which explicitly request documents relating to Project Monterey. These four requests are set forth in Appendix A.

**II.  Requests that Will Likely Involve Production of Documents Related to Project Monterey and Xinuos' Code-Copying Allegations**

**Xinuos' Statement:** Xinuos interprets several of its other Requests to potentially require production of certain documents and communications relating to Xinuos' code-copying allegations, including its allegations concerning Project Monterey. Xinuos also interprets Defendants' responses to these Requests, which each include an objection that some responsive documents would be "irrelevant to the remaining Claims in this Action," to suggest that Defendants have objected to the production of certain documents because they relate to the code-copying conduct, as the copyright infringement claim related to Project Monterey is the only claim that has been dismissed in this Action. The relevant Requests are set out in Appendix B.[1]

---

[1] Pursuant to the Court's June 21, 2024 Minute Order, the parties will further meet and confer regarding the temporal scope of Xinuos' Requests, including those set forth herein. Defendants

**Defendants' Statement:** Defendants do not agree that these Requests relate to Project Monterey or Xinuos' allegations of code copying. There is nothing on the face of these Requests that relates to Project Monterey or the code copying allegations in the Complaint. These requests seek documents relating to Defendants' marketing and advertising, competition, customer communications, Red Hat's software, the corporate structure of IBM and Red Hat and complaints from software developers. Setting aside the extraordinary breadth of these requests, which Defendants have separately objected to, none of these topics relates in any way to Xinuos' code copying allegations or to Project Monterey.

### III.    Defendants' Statement Regarding Burden and Proportionality

As an initial matter, Judge Seibel already granted summary judgment concerning these allegations, which were the subject of more than a decade of litigation between IBM and SCO (from which Xinuos claims rights), and denied as baseless Xinuos' motion for reconsideration. Additionally, she made clear that she considered the allegations beyond the scope of discovery. Xinuos' continued quest for such documents not only ignores Judge Seibel's ruling, but also directly undermines it by defeating its primary objective: to remove stale and previously-litigated allegations from dispute.

Xinuos cannot be heard to contend that it may pursue discovery concerning the conduct underlying the dismissed claim because it somehow relates to remaining claims. Project Monterey aside, SCO expressly retained (and did not transfer to Xinuos) any and all rights to sue IBM, and those claims were released when the litigation between IBM and SCO was settled. What's more, the discovery Xinuos seeks concerns conduct long predating Xinuos' existence, making it all the more inappropriate.

Even if Xinuos had not already lost summary judgment, even if Judge Seibel had not already ruled out the disputed discovery and even if it did not concern alleged conduct that has been released and that long predated Xinuos' existence, Xinuos' request are far over the top. Project Monterey ended more than two decades ago. The people involved are nearly all (if not all) long gone from IBM. Any production would require IBM to sift through decades-old documents for relevance, privilege, third party confidentiality and commercial sensitivity. This process would be time-consuming, expensive and disruptive of Defendants' on-going business. And doing so is unnecessary as the basic history of the project is a matter of public record, which Xinuos relied on in framing its now-dismissed claim.

Without citation, Xinuos suggests that production of source code would entail "virtually no burden". Not so. Xinuos seeks every iteration of Defendants' source code for a period of 28 years, consisting of millions of lines of code, which would create significant technical and logistical challenges, not to mention serious confidentiality issues. Moreover, that IBM has previously collected documents in the *SCO* litigation does not lessen the substantial burden required to locate, search and review such documents in this matter.

---

believe that it would be unduly burdensome and not proportional to the needs of the case for each of these requests to extend back to 1996.

      The substantial discovery that Defendants have produced or committed to provide, which already includes all materials that Defendants produced to the DOJ during its investigation of IBM's acquisition of Red Hat as well as new documents responsive to 168 additional requests, is more than sufficient to shed light on Xinuos' claims. If Defendants were engaged in anticompetitive conduct as Xinuos alleges (they are not), then there would be ample evidence of it in the many years for which Defendants have already agreed to provide discovery.

      While entirely misguided, Xinuos alleges ongoing misconduct. What matters most to evaluating those allegations is discovery of Defendants' present and recent activities. There's no basis for Xinuos' insistence on a scorched earth trip back in time, the sole result of which would be to impose an expense on Defendants.

## IV.    Xinuos' Statement Regarding Burden and Proportionality

      When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). All these factors weigh in Xinuos' favor. "'General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'" *Go New York Tours, Inc.*, 2023 WL 9111158 at *1 (S.D.N.Y. Dec. 20, 2023) (citation omitted). Rather, IBM, as the party objecting to discovery, bears the burden of showing "how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87–88 (S.D.N.Y. 2016). "In antitrust cases, 'where the proof is largely in the hands of the alleged conspirators,'" *Hospital Bldg. Co. v. Rex Hosp.*, 425 U.S. 738, 746 (1976) (citation omitted), "discovery is broadly permitted, and the burden or cost of providing the information sought is less weighty a consideration than in other cases." *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 592 (S.D.N.Y. 1973).

      Xinuos has already explained the relevance to Xinuos' antitrust claim of documents related to Defendants' code-copying. *See* ECF No. 172 at 3; ECF No. 172-5 at 4–5. Defendants therefore bear the heavy burden to show why documents relevant to these allegations should not be produced. IBM, a Fortune 100 corporation with more than $62 billion in annual revenue, has the resources to collect and produce these documents. *See, e.g.*, *Kamradt v. Esurance Ins. Co.*, 2023 WL 8355892, at *4 (W.D. Wash. Dec. 1, 2023) (rejecting discovery burden argument by Defendant with "over $50 billion in consolidated revenues"). That is especially the case because, as IBM has repeated multiple times (*see* ECF No. 122 at 1, 3–5, 11; ECF No. 175 at 3), IBM has been engaged in litigation on similar code-copying allegations before, using the same counsel who collected and produced many of the same documents. Moreover, IBM—through the same counsel—likely collected many of the documents requested by the Requests in Appendix B to produce to DOJ during its investigation into IBM and RedHat's anticompetitive merger. The burden of collecting and producing previously-produced documents is, at best, minimal. *See U.S. v. Anthem, Inc.,* No. 20-cv-2593-ALC-KHP, 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024); *Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG-LJC, 2023 WL 3751797, at *7–8 (N.D. Cal. May 31, 2023). Moreover,

as to Defendants' source code, which is indisputably relevant to Xinuos' code-copying allegations, there is virtually no burden to produce it.  Source code is routinely produced in litigation.

In sum, Xinuos' Requests related to its code-copying allegations are proportional to the needs of this case and must be produced.

CROWELL & MORING LLP

By: */s/ Justin D. Kingsolver*
    Mark A. Klapow
    mklapow@crowell.com
    Justin D. Kingsolver
    jkingsolver@crowell.com
    CROWELL & MORING LLP
    1001 Pennsylvania Ave. NW
    Washington, D.C. 20004
    T: (202) 624-2500
    F: (202) 628-5116

    Molly A. Jones
    mojones@crowell.com
    CROWELL & MORING LLP
    3 Embarcadero Center, 26th Floor
    San Francisco, CA 94111
    T: (415) 986-2800
    F: (415) 986-2827

*Attorneys for Plaintiff Xinuos, Inc.*

CRAVATH, SWAINE & MOORE LLP

By: */s/ Michael J. Zaken*
    David R. Marriott
    dmarriott@cravath.com
    Michael J. Zaken
    mzaken@cravath.com
    CRAVATH, SWAINE & MOORE LLP
    Two Manhattan West
    375 Ninth Avenue
    New York, NY 10001
    T: (212) 474-1000
    F: (212) 474-3700

*Attorneys for Defendants International Business Machines Corp. and Red Hat, Inc.*

# Appendix A

Requests that Parties Agree Relate to Project Monterey or Xinuos' Code-Copying Allegations

**REQUEST NO. 58:** SOURCE CODE for the IBM SOFTWARE that is sufficient to DESCRIBE its Unix architecture, from January 1, 1996, to the present.

**REQUEST NO. 59:** SOURCE CODE for the RED HAT SOFTWARE that is sufficient to DESCRIBE its Linux architecture, from January 1, 1996, to the present.

**REQUEST NO. 81:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO the sale, distribution, or license of ANY SERVER OPERATING SYSTEM RELATING TO PROJECT MONTEREY.

**REQUEST NO. 90:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO the development of any PROJECT MONTEREY technology.

crowell.com



# Appendix B

Requests that Plaintiff Believes Will Likely Involve Production of Documents Related to Project Monterey and Xinuos' Code-Copying Allegations

**REQUEST NO. 31:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO COMPETITORS' SERVER OPERATING SYSTEMS, INCLUDING prospective or potential COMPETITORS from January 1, 1996 to the present.

**REQUEST NO. 33:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO competitive intelligence or research RELATING TO SERVER OPERATING SYSTEMS from January 1, 1996, to the present.

**REQUEST NO. 40:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO similarities or differences between, on the one hand, IBM SOFTWARE and open source SERVER OPERATING SYSTEMS, from January 1, 1996, to the present.

**REQUEST NO. 46:** ALL marketing and advertising RELATING TO similarities or differences between Unix and Linux, from January 1, 1996, to the present.

**REQUEST NO. 47:** ALL marketing and advertising RELATING TO similarities or differences between Unix and Linux, from January 1, 1996, to the present.

**REQUEST NO. 48:** ALL marketing and advertising RELATING TO similarities or differences between IBM SOFTWARE and ANY other SERVER OPERATING SYSTEMS, INCLUDING open source options, from January 1, 1996, to the present.

**REQUEST NO. 49:** ALL marketing and advertising RELATING TO similarities or differences between RED HAT SOFTWARE and ANY other SERVER OPERATING SYSTEMS, INCLUDING open source options, from January 1, 1996, to the present.

**REQUEST NO. 60:** ALL DOCUMENTS provided to and COMMUNICATIONS with customers or prospective or potential customers RELATING TO IBM SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 61:** ALL DOCUMENTS provided to and COMMUNICATIONS with customers or prospective or potential customers RELATING TO `RED HAT SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 62:** ALL marketing and advertising RELATING TO IBM SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 63:** ALL marketing and advertising RELATING TO RED HAT SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 64:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO competitive intelligence or research RELATING TO the market in which IBM SOFTWARE competes, INCLUDING characteristics about the market, COMPETITORS in the market,



prospective or potential COMPETITORS, and barriers to entry into the market, from January 1, 1996, to the present.

**REQUEST NO. 65:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO competitive intelligence or research RELATING TO the market in which RED HAT SOFTWARE competes, INCLUDING characteristics about the market, COMPETITORS in the market, prospective or potential COMPETITORS, and barriers to entry into the market, from January 1, 1996, to the present.

**REQUEST NO. 66:** ALL DOCUMENTS provided to and COMMUNICATIONS RELATING TO the development of software programs or applications for IBM SOFTWARE, from January 1, 1996, to the present.

**REQUEST NO. 67:** ALL DOCUMENTS provided to and COMMUNICATIONS RELATING TO the development of software programs or applications for RED HAT SOFTWARE, from January 1, 1996, to the present.

**REQUEST NO. 71:** ALL DOCUMENTS provided to and from and COMMUNICATIONS between IBM and RED HAT RELATING TO IBM SOFTWARE from January 1, 1996, to July 9, 2019.

**REQUEST NO. 72:** ALL DOCUMENTS provided to and from and COMMUNICATIONS between IBM and RED HAT RELATING TO RED HAT SOFTWARE from January 1, 1996, to July 9, 2019.

**REQUEST NO. 73:** ALL DOCUMENTS provided to and from and COMMUNICATIONS between IBM and RED HAT RELATING TO IBM SOFTWARE COMPETITORS, from January 1, 1996, to July 9, 2019.

**REQUEST NO. 74:** ALL DOCUMENTS provided to and from and COMMUNICATIONS between IBM and RED HAT RELATING TO RED HAT SOFTWARE COMPETITORS, from January 1, 1996, to July 9, 2019.

**REQUEST NO. 79:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO the sale, distribution, or license of IBM SOFTWARE, from January 1, 1996, to the present.

**REQUEST NO. 83:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO IBM SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 84:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO RED HAT SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 85:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO preserving or growing YOUR share in the market in which IBM SOFTWARE competes, from January 1, 1996, to the present.



**REQUEST NO. 86:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO preserving or growing YOUR share in the market in which RED HAT SOFTWARE competes, from January 1, 1996, to the present.

**REQUEST NO. 89:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO strategies, plans, policies, or practices RELATING TO XINUOS, from January 19, 2011, to the present.

**REQUEST NO. 92:** DOCUMENTS sufficient to show the corporate and management structure of PERSONS at IBM who do work RELATING TO SERVER OPERATING SYSTEMS, from January 1, 1996, to the present.

**REQUEST NO. 94:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO IBM corporate meetings RELATING TO strategies, plans, policies, or practices RELATING TO the sale, license, or distribution of IBM SOFTWARE, INCLUDING minutes from ANY such corporate meeting, from January 1, 1996, to the present.

**REQUEST NO. 132:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO complaints from IBM SOFTWARE COMPETITORS, from January 1, 1996, to the present.

**REQUEST NO. 133:** ALL DOCUMENTS and COMMUNICATIONS RELATING TO complaints from RED HAT SOFTWARE COMPETITORS, from January 1, 1996, to the present.