

| | |
|---|---|
| **Justin Kingsolver**<br>JKingsolver@crowell.com<br>(202) 624-2927  direct | Crowell & Moring LLP<br>1001 Pennsylvania Ave. NW<br>Washington, DC 20004<br>+1.202.624.2500  main |

October 9, 2024

**RE:   Xinuos' Request to Compel Production of Defendants' Source Code Repositories that are Central Evidence to Its Antitrust Claims (*Xinuos v. IBM et al.*, No. 7:22-cv-09777)**

To the Honorable Judge Reznik:

The Court directed Xinuos to explain "how Defendants' alleged continued use of the code created an anticompetitive environment and what evidence, not including Project Monterey, Plaintiff believes it needs to make that showing."  ECF No. 208.  This submission does so.  But first, a word on burden: in stark contrast to the representations that Defendants' counsel has made to Xinuos' counsel and to the Court, it would pose little burden – and certainly no *unreasonable* burden – to produce full source code repositories for each of the products at issue in this case.  **Exhibit 1** to this submission is a declaration from Xinuos' source-code expert, Ron Schnell, who has reviewed IBM's full source code repositories for other products in other litigation, explaining (among other things) why Defendants' burden arguments are meritless.  *See* **Exhibit 1** at ¶¶ 5–8.

On relevance, below is a detailed explanation of why Defendants' source code is the best evidence, and in some cases the only evidence, of certain elements of Xinuos' antitrust claims.  For these reasons, it would be severely and unreasonably prejudicial to Xinuos' ability to prosecute those claims if Xinuos were not allowed to receive—subject to appropriate confidentiality provisions and pursuant to a reasonable review protocol—full source code repositories for each of Defendants' products that may be within the relevant market this case, including AIX for Power, z/OS mainframe, i midrange, and Red Hat Enterprise Linux server operating systems.[1]

**I.    Market Power & Anticompetitive Effects**:  **Defendants' Code Will Show Whether Defendants Have Created and/or Reinforced an "Applications Barrier to Entry."**

Barriers to entry make it harder for rivals to enter and compete, so monopolists use them as tools to obtain or maintain market power.  *U.S. v. Microsoft Corp.*, 253 F.3d 34, 55 (D.C. Cir. 2001) (A barrier to entry is a "structural barrier that protects the company's future position.").  Entry barriers also show anticompetitive effects caused by monopolistic conduct.  *See U.S. v. Google LLC*, 1:20-cv-03010, 2024 WL 3647498, at *109–14 (D.D.C. Aug. 5, 2024).  Barriers to entry are key to any Sherman Act Section 2 claim (*id.* at *76–80, 91–92, 109–14; *Microsoft*, 253 F.3d at 51–56), and if erected post-merger, would be significant evidence for Clayton Act Section 7 claims.  *See, e.g.*, *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 925 (N.D. Cal. 2023).

Xinuos expects Defendants' source code will provide substantial evidence of intentional

---

[1] Xinuos had floated a compromise "two snapshots-in-time" proposal for Defendants' source code in response to a question from the Court, based on a good-faith belief in Defendants' assertions regarding their burden to produce code repositories.  Defendants rejected that proposal.  But even if they hadn't, Xinuos would no longer agree to it, since in the intervening time, Xinuos' source code expert has explained that it would be substantially less burdensome to collect the entire code repository for the relevant products rather than snapshots-in-time.  *See* **Exhibit 1** at ¶¶ 5–8.

barriers Defendants erected to obtain and maintain monopoly power. One such barrier is an "applications barrier to entry," recognized in the seminal *Microsoft* antitrust case. In *Microsoft*, the court explained this "applications barrier" in the operating system ("OS") market: "(1) most consumers prefer [OSs] for which a large number of applications have already been written; and (2) most developers prefer to write for [OSs] that already have a substantial consumer base." *Id*. Xinuos alleges *exactly that* here: Defendants built up and took advantage of the "applications barrier" in the OS market.[2] Defendants' source code repositories (also called "codebases") will show how Defendants have done that in at least three ways:

- *First*, they will show that Defendants have developed cross-compatible products. Xinuos alleges Defendants jointly developed their OS code so that apps originally written for IBM's OSs also operate on Red Hat's OS, and vice versa. This "cross-platform functionality" expands the consumer base for a developer's app, and thus both increases the incentives for app developers to write apps for IBM or Red Hat and decreases incentives for app developers to write for rivals. In other words, evidence of cross-compatibility in either of Defendants' respective codebases supports Xinuos' argument that an "applications barrier" exists.

- *Second*, they will show the amount of cross-compatibility that Red Hat and IBM have written into their codebase for each other's OS products. Defendants' OS code may show that only simple apps originally written for Red Hat can also run on IBM, or Defendants' code may show that complicated apps originally written for IBM can also run on Red Hat. The more sophisticated the cross-compatibility, the stronger the barrier. This *degree* of compatibility—especially compared against Xinuos (a competitor outside of the alleged conspiracy)—can only be assessed in the code itself.

- *Third*, they will show whether IBM or Red Hat made additional OS code changes to reinforce the "applications barrier." Defendants could have changed code to make it easier to write apps for an OS, while at the same time sacrificing end-user security or degrading their user experience. Evidence of IBM or Red Hat actively reinforcing the "applications barrier" at the cost of other important business goals would be strong evidence of anticompetitive conduct. *See In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) ("anticompetitive conduct" is "conduct without a legitimate business purpose that makes sense only because it eliminates competition").

It makes no difference if IBM or Red Hat made these code changes before, during, or after Project Monterey or whether they utilized wrongfully-obtained code. What matters is *that these changes were made at all* (and, as for certain claims, if the changes were made before or after the merger).

Finally, the "high level" design documents that Defendants offer in lieu of code access will not provide the information that Xinuos needs. First, Defendants purport to not understand the relevance of technical information to Xinuos' antitrust claims, which itself undermines the practicability of its proposal to unilaterally select a subset of documents "sufficient to show" the relevant aspects of their products' design elements. Second, these "design documents" are not

---

[2] *See* ECF No. 1 ¶¶ 144–45 (due to the alleged IBM-Red Hat conspiracy, "application developers invested in developing and updating applications for RHEL and AIX, thereby disincentivizing developers to continue developing for UnixWare and OpenServer[, which . . .], in turn, creates practically unscalable barriers which squeeze existing participants like Xinuos out . . . , making it impossible for rivals to entice customers away from IBM and Red Hat").



nearly detailed enough to provide adequate discovery on the issues outlined herein. *See* **Exhibit 1** at ¶¶ 3–4. Design documents provide high-level (and often only *aspirational*) descriptions about how systems operate. Such documents will not include the detailed information described above that Xinuos needs to show that the entry barriers exist. That detail exists only in the code itself.

### II. Market Power & Anticompetitive Effects: Defendants' Code Will Show Whether Defendants Have Created and/or Reinforced a "Hardware Barrier to Entry."

Defendants' source code will also show the "hardware barrier to entry," which Xinuos alleges functions the same as the "applications barrier" on the other side of the market. *See* ECF No. 1 ¶¶ 144–45 (alleging that due to Defendants' anticompetitive agreement, "hardware manufacturers invested in developing and updating drivers for RHEL and AIX, but no longer for UnixWare and OpenServer."). Thus, in the OS market where Xinuos and Defendants operate, (1) most consumers prefer operating systems for which many hardware manufacturers have developed compatible hardware; and (2) most hardware manufacturers prefer to develop hardware for OSs that already have a substantial consumer base. Like with the "applications barrier," Defendants' source code will show Defendants have created and reinforced a "hardware barrier."[3]

### III. Anticompetitive Conduct: Defendants' Code Will Show How IBM and Red Hat Foreclosed Market Rivals from Access to Potential Customers.

Foreclosure occurs when a monopolist's conduct makes it harder for rivals to enter a market, harder for rivals to access customers, or raises the costs a rival must spend to compete—*i.e.*, when "the opportunities for other traders to enter into or remain in [the] market [are] significantly limited." *Microsoft*, 253 F.3d at 69. Xinuos alleges that Defendants provided each other with unfair preferential treatment, took intentional steps to make it harder for rivals to access potential customers that currently license IBM or Red Hat products, and increased the costs for consumers to migrate off IBM or Red Hat products. *See* ECF No. 1 ¶¶ 89–103, 118–32, 138–53. These are all foreclosure theories, and each can be proven through evidence of how Defendants' code operates—evidence that is only available in IBM and Red Hat's source code repositories, which contain detailed records of specific code changes.[4]

### IV. Conclusion and Relief Requested

In sum, there is no undue or unreasonable burden here for Defendants to produce their readily-accessible source code repositories, which contain some of the most important evidence in this antitrust case. Defendants should be ordered to produce them.

---

[3] ***First***, it will show that Defendants have developed their OSs so that hardware originally built for one of the operating systems can also work for the other. ***Second***, it will show the *degree* of compatibility that has been built to allow hardware compatibility across both products. And ***third***, it will show what other sacrifices Defendants made to OS quality and performance in order to improve the hardware-OS compatibility.

[4] For example, the code repositories will show whether Defendants made it harder for developers to write apps that operate on both Defendants' OSs and rival OSs. Also, the code repositories will show whether Defendants made it harder for manufacturers to develop drivers that can run rival OSs in addition to Defendants' OSs. Also, the code repositories will show whether Defendants made it harder for the parties' business consumers to migrate their enterprise resources onto rival OSs, for example, through code changes that make it harder to move large amounts of data to a new OS, or that make it harder to manage the data migration process while still running business operations.



Respectfully submitted,

**CROWELL & MORING LLP**

By: _____

Mark A. Klapow
mklapow@crowell.com
Justin D. Kingsolver
jkingsolver@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
T: (202) 624-2500
F: (202) 628-5116

Molly A. Jones
mojones@crowell.com
Jacob Canter
jcanter@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
T: (415) 986-2800
F: (415) 986-2827

*Attorneys for Plaintiff Xinuos, Inc.*