# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
XINUOS, INC.,                                            :
                                                         :
                    Plaintiff,                           :   Civil Action No. 7:22-cv-09777-CS-VR
                                                         :
         -against-                                       :
                                                         :
INTERNATIONAL BUSINESS MACHINES                          :
CORPORATION and RED HAT, INC.,                           :
                                                         :
                    Defendants.                          :
                                                         :
-------------------------------------------------------- x
```

## DECLARATION OF RON SCHNELL IN SUPPORT OF
PLAINTIFF XINUOS, INC.'S LETTER BRIEF REGARDING REQUEST TO
REVIEW DEFENDANTS' SOURCE CODE

I, Ron Schnell, hereby declare as follows:

1. I am a consultant and expert in the area of software and source-code review and analysis with the global consulting firm BRG, and I have been retained by Plaintiff Xinuos, Inc. ("Xinuos") to offer opinions in this matter. I base this declaration on my personal knowledge and extensive professional and expert experience with software, applications, source code, operating systems, programming languages, architecture, and computer programs of all types. My CV is available here: https://media.thinkbrg.com/wp-content/uploads/2020/06/22061326/CV_Schnell_-Ron_2024.05.pdf.

2. Prior to my work with BRG, I had extensive experience running technology organizations, from early-stage startups to large divisions of S&P 500 corporations. Most notably, I was the chief executive of the monitoring organization responsible for auditing and enforcing Microsoft's compliance with the consent decree in the largest antitrust case in U.S. history, *United States v. Microsoft Corp.* and *New York et al. v. Microsoft Corp*.

3. I have provided source code review and analysis in at least 100 cases. I have been made aware that Defendants are resisting the production of their source code and are suggesting that production of certain technical design documents would suffice. Defendants' suggestion is incorrect.

4. Technical design documents are not an adequate substitute for the production of source code. There are too many reasons to list within a few pages, but at a high level: Technical overview documents and schematics are far more general than the details in the source code itself. Thus, those documents provide substantially less than the full picture. Technical documents also do not relate to or describe every part of the functionality that later becomes source code, and, indeed, often deviate substantially from the actual functionality of the products as engineered by the product developers. For example, technical documents may reveal design *aspirations* at a single point in time, but programmers often make or change their decisions about how products should be configured. In some cases, the design document may reflect design elements that never make it into the finished product, and equally as often, elements of the source code arise without ever having been memorialized in a design document. Further, the project documentation, by definition, need not go into the specific details about how algorithms work. For example, if a design document states that there should be the ability for third parties to execute some functionality, it need not say what to do about marketing and competition decisions relating to that functionality, which can get decided later by non-technical people, and often change over time.

5. I have been made aware that Defendants are suggesting production of source code would be quite burdensome, while the production of the technical overview documents would not. But the suggestion that source code is difficult to produce is simply not correct.

2

6. From my experience, making source code available in litigation is commonplace and a relatively straightforward process. Software companies like IBM and Red Hat typically maintain their source code in repositories like Git or SVN. Although such repositories can be cloud-based (e.g., GitHub or Bitbucket) to allow engineers across the organization to work on it, it is my experience that such environments are almost always cloned wholesale during the ordinary course of development, and can easily be put onto a review computer unconnected to the Internet. Cloning the source code onto a computer in the usual manner preserves the historical version control that software developers use to understand what changes are made to the software and when they were made.

7. In fact, I have experience reviewing IBM's source code in prior litigation.[1] In that case involving an accusation that IBM failed to properly deliver all of the source code for their Watson products to Nuance, IBM made its 40 million lines of source code for all of its Watson suite of products available for my inspection according to the parties' agreed-upon source code review protocol.

8. I have also been made aware that IBM has touted the number of lines of code as determinative of the burden of creating a copy of that source code on a source code review computer. I disagree with this assertion. While it is undoubtedly true that IBM's code contains a large number of "lines" of code, the burden of making that code available is unrelated to the number of lines. The process of creating a clone to review in litigation is simple, does not take long, and is automated in such a way that the size is not a factor towards the burden. Thus, even if there is a large amount of code involved in these products, this would not meaningfully

---

[1] *Nuance v. IBM*, S.D.N.Y Case No. 7:16-cv-05173.

increase the burden of collection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of October, 2024, in Miami, Florida.

_____

Ron Schnell